UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JERRY ROGERS, JR., <br><br> Plaintiff <br><br> v. <br><br> SHERIFF RANDY SMITH, DANNY CULPEPER, and KEITH CANIZARO, <br><br> Defendants | Case No. 2:20-cv-00517 |

# COMPLAINT

## I.   INTRODUCTION

1. In 2019, St. Tammany Parish Sheriff Randy Smith directed that Plaintiff Jerry Rogers be arrested for "criminal defamation" because of his criticism of a St. Tammany Parish Sheriff's Office ("STPSO") unsolved murder investigation.

2. But as Sheriff Randy Smith publicly acknowledged, "some courts" have ruled that statute to be unconstitutional as applied to speech about public officials. Those "some courts" include the Louisiana Supreme Court and the U.S. Supreme Court.

3. STPSO was even advised that it would be unconstitutional to arrest Jerry Rogers for criminal defamation. But they arrested him anyway.

4. Thus, Sheriff Smith used public resources to retaliate against one of his critics. That is public corruption. It is illegal.

5. As Judge Africk explained in a nearly-identical case involving a sheriff's use of the Louisiana criminal defamation statute against a critic of law enforcement, "**Some qualified immunity cases are hard. This case is not one of them**."[1]

---

[1] *Anderson v. Sheriff Larpenter*, 16-cv-13733-LMA-JVM (E.D. La. July 19, 2017) at *1. Just like this case, *Anderson* involved a Louisiana sheriff obtaining a warrant for criminal defamation against a person he believed was lying about his office under a fictitious name. Judge Africk denied qualified immunity, and the case settled.

## II. JURISDICTION

6. Plaintiff's claims arise under the laws of the United States and Louisiana. This Court has jurisdiction over Plaintiff's claims of federal rights violations. This Court has supplemental jurisdiction over Plaintiff's Louisiana state law claims in accordance with 28 U.S.C. § 1367.

7. The venue is proper in the Eastern District of Louisiana under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in St. Tammany Parish, situated in the Eastern District of Louisiana.

## III. THE PARTIES

8. Plaintiff **JERRY ROGERS** is of suitable age and capacity to file this suit. At all relevant time during this suit, he was a resident of St. Tammany Parish in the Eastern District of Louisiana.

9. Defendant **SHERIFF RANDY SMITH**, who upon information and belief, is an individual of the age of majority, a resident of St. Tammany Parish and a citizen of the State of Louisiana. He is sued in both his individual and official capacities. In his official capacity, Sheriff Smith is the decision maker and highest authority as Sheriff of the St. Tammany Parish Sheriff's Office.

10. Chief **DANNY CULPEPER,** who upon information and belief, is an individual of the age of majority, a resident of St. Tammany Parish and a citizen of the State of Louisiana. He is sued in both his individual and official capacities. He is sued both for his personal actions and his failure to intervene in the unconstitutional actions he witnessed.

11. Sergeant **KEITH CANIZARO**, who upon information and belief, is an individual of the age of majority, a resident of St. Tammany Parish and a citizen of the State of Louisiana. He is sued in both his individual and official capacities.

## IV.   FACTS

**A.   Sheriff Smith targeted Jerry Rogers for criticizing him and STPSO.**

12.    Jerry Rogers worked for with the St. Tammany Parish Sheriff's Office (hereinafter "STPSO") from 1998 to 2009. He is currently an investigator for the United States Department of Housing and Urban Development, Office of Inspector General. After leaving STPSO, he continued to reside in St. Tammany Parish and kept in touch with former collogues.

13.    On July 14, 2017, Nanette Krentel, a retired pre-school teacher, died.[2] She was found inside the burned remains of her home in St. Tammany Parish, but the autopsy report stated she died of a gunshot wound to the head and ruled the death was a homicide.[3] The St. Tammany Sheriff's Office took up the investigation of the homicide. To this day, the case remains unsolved.[4]

14.    Jerry Rogers followed the news coverage of Nanette Krentel's homicide. He felt sympathy for the family members and, when he read the articles, he disagreed with some of the choices made by STPSO in their investigation.

15.    On or about December 29, 2017, Jerry Rogers created an email account called "justicenanette@yahoo.com." Jerry Rogers created the email address to communication with Kim Watson, the sister of Nanette Krentel. He sent Kim approximately ten emails. The last communication by Jerry Rogers to Ms. Watson was June 29, 2019.

16.    In his emails, Jerry Rogers expressed criticisms of the public employees of STPSO based on his personal experience and opinions formed during his time working for STPSO.

17.    At some point prior to August 13, 2019, STPSO discovered the emails and began

---

[2] Obituary of Nanette Watson Krentel, Legacy.com (accessed on January 7, 2020), found at https://obits.nola.com/obituaries/nola/obituary.aspx?n=nanette-watson-krentel&pid=186134668&fhid=17420
[3] Sara Pagones, New Details Add Contect in Death of Nanette Krentel, Wife of St. Tammany Fire Chief, The Advocate (Feb. 20, 2018), found at https://www.nola.com/news/communities/st_tammany/article_5b6460dd-8af0-5d14-b350-06be307211e0.html
[4] Sara Pagones, Who Killed Nanette Krentel? Unsolved Death Joins Other Mysterious North Shore Cases,The Advocate (July 21, 2019), found at https://www.nola.com/news/crime_police/article_b81a670c-a402-11e9-8328-af1f44c970cd.html

to investigate the author and whether the source of information about the Krentel investigation came from STPSO.[5]

18. On August 13, 2019, Lieutenant Alvin Hotard and Detective Daniel Buckner of STPSO came to Jerry Rogers' place of employment and spoke to him about the investigation. Detective Daniel Buckner was the lead investigator of the Krentel investigation. Jerry Roger's emails expressed criticism of him.

19. STPSO consulted with the St. Tammany Parish District Attorney's Office. The District Attorney's Chief of Trials, Colin Sims, advised STPSO that Louisiana's criminal defamation law had been declared unconstitutional as to public officials, and so charges against Jerry Rogers could not be pursued on that basis.

20. But Sheriff Smith directed that Jerry Rogers be arrested for criminal defamation anyway.

21. On September 16, 2019, Sergeant Keith Canizaro with the St. Tammany Sheriff's Office certified under oath that: "The emails contained…derogatory statements regarding the lead investigator and others involved in the investigation…The unknown author provided the family member with false information regarding the lead investigator's experience and ability to investigate homicides. *Exhibit A*, Affidavit for Arrest Warrant. The unknown author referred to the lead investigator as 'clueless', and 'anything is better than' the lead investigator." *Id.*. Based on this information, Sergeant Keith Canizaro requested that an arrest warrant be issued for Jerry Rogers "for the violation of the crime, as described in La. R.S. 14:47, relative to Defamation." *Id.* La. R.S. 14:47 was the only crime identified in the affidavit. *See id.* He obtained the arrest warrant. *See id.*

---

[5] St. Tammany Parish Sheriff's Office, Federal Law Enforcement Agent Arrested for Defamation (Sept. 16, 2019), found at https://www.stpso.com/homepage/federal-law-enforcement-agent-arrested-for-defamation/

22. The warrant application contained false information, including that family members "requested [that the lead investigator] find the identity of the unknown author." *Ex. A*.

23. On or about September 16, 2019, STPSO arrested Jerry Rogers for criminal defamation under Louisiana Revised Statute 14:47 at the direction of Sheriff Randy Smith. Prior to the ultimate decision, multiple people, including Major Crimes Supervisor Steven Gaudet and Collin Sims, Chief Assistant District Attorney at the Criminal Division of the 22nd Judicial District Attorney's Office, advised that Louisiana Revised Statute 14:47 is unconstitutional as applied to allegedly defamatory statements about public officials. Sheriff Smith ordered Chief Danny Culpepper to have Jerry Rogers arrested despite knowing that the arrest was unconstitutional.

24. The same day, Mr. Rogers was arrested by St. Tammany deputies and booked with criminal defamation. Jerry Rogers posted $3,500 bail on the same day.

25. Also on the same day, the STPSO issued a press release announcing the arrest of Jerry Rogers for defamation. *Exhibit B*, Press Release by STPSO.

26. Apparently unsatisfied with the media coverage of Jerry Roger's arrest, Sheriff Randy Smith published his own press release on October 28, 2019 re-announcing the arrest of Jerry Rogers for defamation and clearly identifying that he <u>knew</u> La. R.S. 14:47 was ruled unconstitutional by "some courts." *Ex. C,* Press Release by Sheriff Smith. In this press release, Sheriff Smith attacked Jerry Rogers for being politically aligned with his opponent, outrageously published personal, private information about Jerry Rogers with cruel commentary, and egged on the media to "share it with the public." *Id*.

27. On November 8, 2019, on a motion for preliminary examination in Jerry Rogers' criminal case, Judge Scott Gardner found there was no probable cause for Roger's arrest and

released him from his $3,500 bond.[6] *Exhibit. D*, Minutes from Preliminary Hearing.

28.     The St. Tammany Parish District Attorney's Office recused itself from the prosecution of Jerry Rogers. For that reason, decisions about prosecution fell to the Louisiana Department of Justice to decide.

29.     On January 8, 2019, the Louisiana Department of Justice declined the criminal charge under La. R.S. 14:47. *Exhibit E*, Declination of Charges. Assistant Attorney General M. Joseph LeBeau and Director of the Criminal Division Pat Magee wrote

> The Louisiana Supreme Court held Criminal Defamation is unconstitutional insofar as it applies to statements made in reference to public figures engaged in public affairs. Determining whether an individual is a public figure requires a case-by-case, fact specific analysis. In this case, the subject of the statement is considered a public figure, as the statements made by Jerry Rogers were aimed directly towards a public function of a member of state government. Because the alleged conduct under these specific facts involve statements aimed at a public official performing public duties, this office is precluded by law from moving forward with any criminal action.

*Id*.

**B.     More than a half-century ago, Louisiana's Criminal Defamation Statute was ruled unconstitutional as applied to speech concerning public officials.**

30.     It is black-letter law that Louisiana's criminal defamation statute, La. R.S. 14:47, is unconstitutional as applied to speech concerning public officials.

31.     Sheriff Smith knows this. In his October 28, 2019, press release, he stated that "[r]egarding the constitutionality of the LSA-14:47, the statue [*sic*] that Mr. Rogers was charged with violating, I am aware that some courts have ruled that the statute may be unconstitutional insofar as it relates to any public expressions about public officials."

32.     One of the "some courts" that Sheriff Smith references is the U.S. Supreme Court, which held in 1964 that "[a]pplying the principles of the *New York Times* case, we hold that the

---

[6] Katie Moore and Sara Pagones, *Judge Finds No Probable Cause of Arrest of Federal Agent who Criticized St. Tammany Sheriff's Office*, NOLA.com (Nov. 8, 2019) found at
https://www.nola.com/news/crime_police/article_0973db26-0248-11ea-8f38-3fb0e05008d8.html

Louisiana statute, as authoritatively interpreted by the Supreme Court of Louisiana, incorporates constitutionally invalid standards in the context of criticism of the official conduct of public officials." *Garrison v. State of La.*, 379 U.S. 64, 77 (1964).

33. Another one of the "some courts" is the Louisiana Supreme Court who expanded the *Garrison* holding to state that "R.S. 14:47, 48, and 49 [are] unconstitutional insofar as they attempt to punish public expression and publication concerning public officials, public figures, and private individuals who are engaged in public affairs." *State v. Snyder*, 277 So. 2d 660, 668 (La. 1972). In other words, as per the Louisiana Supreme Court, the criminal defamation statute and all related statutes are unconstitutional as applied to speech not only about public officials, but also private individuals who are engaged in public affairs.

34. As Judge Africk explained, *Snyder* expanded the *Garrison* opinion even further by holding that "§ 14:47 in its current form cannot apply to any 'expression and publication concerning public officials, public figures, or private individuals who are engaged in public affairs,' regardless of the speaker's veracity or *mens rea*."[7] As such, even a charge that alleges defamation with actual malice is still unconstitutional.[8]

35. Nine years later, the Louisiana Supreme Court reiterated the rule, holding that "LSA-R.S. 14:47 is unconstitutional insofar as it punishes public expression about public officials." *State v. Defley*, 395 So. 2d 759, 761 (La. 1981). Sheriff Smith is not only aware of the rule of these cases, but his language in his press release tracks *Defley* almost verbatim.

36. Accordingly, the Law Institute's Criminal Code and Code of Criminal Procedure Committee has recommended[9] that the legislature direct the Law Institute to direct the printer to

---

[7] *Anderson v. Sheriff Larpenter*, 16-cv-13733-LMA-JVM (E.D. La. July 19, 2017) at *25 (quoting *State v. Snyder*, 277 So. 2d 660, 668 (La. 1972).
[8] Still, the arrest warrant for Jerry Rogers did not even allege facts to support a finding of actual malice.
[9] Louisiana State Law Institute Constitutional Law Committee, *Unconstitutional Statutes Biennial Report to the Legislature,* (March 13, 2018), at page 32.

add a validity note following R.S. 14:47 to read as follows:

> In *State v. Snyder*, 277 So. 2d 660, 668 (La. 1972), the Louisiana Supreme Court held that R.S. 14:47 is unconstitutional insofar as it attempts to punish public expression and publication concerning public officials, public figures, and private individuals who are engaged in public affairs. *See also State v. Defley*, 395 So. 2d 759, 761 (La. 1981) and *Garrison v. State of La.*, 379 U.S. 64, 77 (1964).

37.     Indeed, if one looks up R.S. 14:47 on the Louisiana State Legislature's website, there is a notation: "This provision of law was included in the Unconstitutional Statutes Biennial Report to the Legislature, dated March 14, 2016."[10] *See* Figure 1, *infra*.



*Figure 1*, Screenshot of Louisiana State Legislature, found at https://www.legis.la.gov/legis/Law.aspx?d=78544 (red circle emphasis added).

38.     In 2014, STPSO was reminded of the status of Louisiana's criminal defamation law in a newspaper article entitled "*Unconstitutional laws still on the books to get fresh look*," which explained, "Another example is Louisiana's law banning criminal defamation…Parts of that law have been found unconstitutional by various courts over decades."[11]

---

[10] http://www.legis.la.gov/legis/Law.aspx?d=78544, last visited November 10, 2019.
[11] Ben Wallace, *Unconstitutional laws still on the books to get fresh look*, The Advocate (Nov. 16, 2014).

39. In that article, the president of the Louisiana Sheriff's Association "described arresting anyone for an alleged violation of an unconstitutional law as a waste of time and resources."[12]

40. In 2017, the Eastern District of Louisiana ruled regarding a search warrant premised on Louisiana's criminal defamation statute. Judge Africk held that "no law enforcement officer in Sheriff Larpenter's position would have an objectively reasonable belief, in light of clearly established law, that probable cause existed to support a search warrant for the Andersons' home" because it was based on criticism of a public official.[13]

41. Sheriff Smith's treatment of Jerry Rogers is not unique; the Sheriff has exhibited a pattern of antipathy for First Amendment rights. After Sheriff Smith was elected in 2015, he fired ten deputies who had campaigned for his opponent. *Moore v. Smith*, 2:17-cv-05219, R. Doc. 1 (E.D. La., May 25, 2017). That lawsuit is currently ongoing. According to Plaintiffs in that case, Sheriff Smith told former Sheriff Strain that he would not be renewing the commission of some of those deputies "because of their support for Sheriff Strain during the campaign." *Id*. at 10. Similarly, at a rally where three deputies were wearing a t-shirt of his rival, Sheriff Smith walked up to them and said, "You're fired." *Id*. at 12.

## V.     CLAIMS FOR RELIEF

### Count One – First Amendment Retaliation
### (All Defendants)

42. "[T]he law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions…for speaking out." *Hartman v. Moore*, 547 U.S. 250, 256 (2006); *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002) (First Amendment prohibits "adverse governmental action taken against an individual in

---

[12] *Id.*
[13] *Anderson v. Sheriff Larpenter*, 16-cv-13733-LMA-JVM (E.D. La. July 19, 2017) at *24.

9

retaliation" for protected activities.)

43. As a result, even some government actions that would be otherwise lawful become prohibited if in response to protected speech or petition. "Because government retaliation tends to chill an individual's exercise of his First Amendment rights, public officials may not, as a general rule, respond to an individual's protected activity with conduct or speech even though that conduct or speech would otherwise be a lawful exercise of public authority." *Bd. of County Comm'rs v. Umbehr*, 518 U.S. 688 (1996). The First Amendment thus bars officials' actions where they "caused [the speaker] to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity" and were "substantially motivated against the plaintiffs' exercise of constitutionally protected conduct." See Keenan, 290 F.3d at 258.

44. Sheriff Smith committed a retaliatory arrest when he ordered the arrest of Jerry Rogers by STPSO on September 16, 2019.

45. Sheriff Smith's actions were intended to deter and chill Jerry Rogers' exercise of his First Amendment right to express his opinion about STPSO.

46. As a direct and proximate result of Sheriff Smith's actions and decisions, Jerry Rogers was arrested, detained, hired a criminal lawyer, posted bail, and otherwise damaged.

### Count Two – Unlawful Seizure
### (All Defendants)

47. Sheriff Smith caused an illegal seizure when he caused STPSO to seize Jerry Rogers for an unconstitutional – and unenforceable – crime. Chief Culpeper caused an illegal seizure when he transmitted Sheriff Smith's illegal order. And Sgt. Canizaro caused an illegal seizure when he carried out Sheriff Smith's illegal order.

48. This was an illegal seizure because the arrest had no probable cause and Jerry Rogers committed no crime.

### Count Three – False Arrest
### (All Defendants)

49. Sheriff Smith caused a false arrest when he instructed STPSO to arrest Jerry Rogers on the basis that he violated the unconstitutional and unenforceable crime of criminal defamation. Chief Culpeper caused a false arrest when he transmitted Sheriff Smith's illegal order. And Sgt. Canizaro caused a false arrest when he carried out Sheriff Smith's illegal order.

50. It is true that a neutral magistrate signed a warrant for Jerry Rogers' arrest. However, "[t]he fact that a neutral magistrate issues a warrant is *not* dispositive of whether [Sheriff Larpenter's] underlying actions were objectively reasonable." *Winfrey v. San Jacinto Cnty.*, 481 Fed. App'x 969, 978 (5th Cir. 2012) (emphasis added); see also *Messerschmidt v. Millender*, 565 U.S. 535, 547 (2012) ("[T]he fact that a neutral magistrate has issued a warrant authorizing the allegedly unconstitutional search or seizure does not end the inquiry into [an officer's] objective reasonableness."). "Qualified immunity will not attach if a 'reasonably well-trained officer in [Sheriff Smith's] position would have known that [the] affidavit [in support of the search warrant] failed to establish probable cause.'" *Winfrey*, 481 Fed. App'x at 978 (*quoting Malley v. Briggs*, 475 U.S. 335, 345 (1986)); see also *Messerschmidt*, 565 U.S. at 547 (*quoting Malley*, 475 U.S. at 341) (observing that a warrant will not shield an officer from suit where "it is obvious that no reasonably competent officer would have concluded that a warrant should issue"). *See also Anderson v. Sheriff Larpenter*, 16-cv-13733-LMA-JVM, p.26 (E.D. La. July 19, 2017).

### Count Four - Violation of the Louisiana Constitution
### (All Defendants)

51. Defendants' actions in conducting and causing the seizing, detaining, and arresting Plaintiff as described above interfered with their exercise of fundamental rights as guaranteed by Article 1, §7 of Louisiana's Constitution.

### Count Five – State Law Malicious Prosecution
### (All Defendants)

52. The Louisiana Supreme Court has articulated a six-part test for stating a claim of

malicious prosecution: "(1) the commencement or continuance of an original criminal or civil judicial proceeding; (2) its legal causation by the present defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; and (6) damage conforming to legal standards resulting to plaintiff." *Lemoine v. Wolfe*, 168 So.3d 362, 367 (La. 2015).

53. Here, Sheriff Smith caused the commencement of a criminal proceeding against Jerry Rogers when he instructed STPSO to arrest him for criminal defamation.

54. Chief Culpeper caused the commencement of a criminal proceeding against Jerry Rogers when he transmitted Sheriff Smith's order.

55. Sergeant Canizaro caused the commencement of a criminal proceeding against Jerry Rogers when he sought and obtained a criminal arrest warrant for Mr. Rogers.

56. The criminal defamation charge was terminated in Jerry Roger's favor when the Louisiana Department of Justice declined the criminal charge under La. R.S. 14:47.

57. There can be no probable cause for such a proceeding because the crime itself of criminal defamation is not constitutional.

58. Defendants acted with malice. Sheriff Smith acted with malice because he acted in retaliation to Jerry Roger's criticisms of his own office. Sheriff Smith's October press release clearly laid out his feelings towards Jerry Rogers, accusing him of political favoritism and hounding the press for being on Jerry's side.

### Count Six – Abuse of Process
### (All Defendants)

59. "The requirements for abuse of process and for malicious prosecution are distinguishable and distinguished." *Succession of Cutrer v. Curtis*, 341 So.2d 1209 (La.App. 1 Cir.1976).

60. An abuse of process claim has two essential elements: (1) the existence of an ulterior purpose and (2) a willful act in the use of the process not proper in the regular prosecution

of the proceeding. *Waguespack, Seago and Charmichael v. Lincoln*, 99–2016 (La.App. 1 Cir. 9/22/00), 768 So.2d 287, 290–91.

61. Ulterior motive is presumed when there is a finding of an irregular use of process. *See Weldon v. Republic Bank,* 414 So.2d 1361 (La.App. 2nd Cir.1982).

62. Sheriff Smith committed an abuse of process when he knowingly used a unenforceable criminal code article to prosecute Jerry Rogers.

63. Chief Culpeper committed an abuse of process when he knowingly transmitted an order to use an unenforceable criminal code article to prosecute Jerry Rogers.

64. Sergeant Canizaro committed an abuse of process when he knowingly sought an arrest warrant for an unenforceable criminal code article to prosecute Jerry Rogers.

65. Sergeant Canizaro also committed an abuse of process when he testified to a probable cause affidavit relying on the fact that "[o]ne of the family members contacted the lead investigator, regarding the emails, and requested he find the identity of the unknown author." Upon information and belief, this statement is false. Basing a probable cause affidavit on false information is abuse of process.

## VI.   **RELIEF REQUESTED**

66. Wherefore Plaintiff requests judgment be entered against Defendants and that the Court grant the following:

   a. Declaratory relief;

   b. Judgment against Defendants for Plaintiff's asserted causes of action;

   c. Award of compensatory damages;

   d. Award of special damages;

   e. Award costs and attorney's fees;

   f. Interest;

   g. Order such other and further relief, at law or in equity, to which Plaintiff may be justly

entitled.

        Respectfully submitted, Jerry Rogers, through counsel,

        */s/ William Most*_____
        Law Office of William Most
        William Most (La. Bar No. 36914)
        Amanda Hass (La. Bar No. 37718)
        David Lanser (La. Bar No. 37764)
        201 St. Charles Ave., Ste. 114, # 101
        New Orleans, LA 70170
        T: (504) 509-5023
        Email: williammost@gmail.com