**From:**       Thurman, Grey J. <GreyThurman@stpso.com>
**Sent:**       9/3/2019 3:35:18 PM
**To:**         Canizaro, Keith A. <KeithCanizaro@stpso.com>
**Cc:**         Hotard III, Alvin A. <AlvinHotard@stpso.com>;
**Subject:**    FW: Defamation

**Attachments:** image001.png ,866_F.3d_682 on Defamation.pdf

---

Respectfully,
Detective Grey Thurman III #7113
Criminal Investigations Division
Major Crimes Unit
S.W.A.T.
Desk: (985)726-7833
Departmental Cell: (985)788-0050
[SWAT]

From: Harold S. Bartholomew [mailto:hbartholomew@22da.com]
Sent: Monday, April 01, 2019 2:00 PM
To: Thurman, Grey J.
Subject: Defamation

Attached

Harold S. Bartholomew, Jr.
Assistant District Attorney
Office of Warren Montgomery
22nd Judicial District Attorney
Direct Dial: (985) 809-8360.
Email: hbartholomew@22da.com



**682**      **866 FEDERAL REPORTER, 3d SERIES**

the infliction of physical or emotional pain on another.

## III.  CONCLUSION

For the foregoing reasons, we VACATE and REMAND for resentencing.



**Royce Denton MCLIN, Plaintiff–Appellant**

**v.**

**Jason Gerald ARD, In his Individual and Official Capacity as Sheriff of Livingston Parish; Benjamin Thomas Ballard, In his Individual and Official Capacity as a Livingston Parish Sheriff's Office Detective; Jack R. Alford, Jr., In his Individual and Official Capacity as a Livingston Parish Sheriff's Office Detective; Stan Carpenter, In his Individual and Official Capacity as a Livingston Parish Sheriff's Office Major; Brian P. Smith, In his Individual and Official Capacity as a Livingston Parish Sheriff's Office Lieutenant Colonel; Bonita G. Sager, In his/her Individual and Official Capacity as a Livingston Parish Sheriff's Office Detective; William Dorsey, In his Individual and Official Capacity as a Livingston Parish Sheriff's Office Deputy, also known as Willie; James R. Norred, Jr., In his Individual and Official Capacity as a Councilman, also known as Jim; Cynthia G. Wale, In her Individual and Official Capacity as a Councilwoman, also known as Cindy; Chance McGrew Parent, In his Individual and Official Capacity as a Councilman, Defendants–Appellees**

No. 16–30201

United States Court of Appeals,
Fifth Circuit.

FILED August 8, 2017

**Background:** Arrestee brought § 1983 action against Louisiana parish council members and officers from sheriff's office, alleging a conspiracy to arrest and maliciously prosecute arrestee for criminal defamation, in retaliation for his criticism of council members on social networking website. The United States District Court for the Middle District of Louisiana, Shelly Deckert Dick, J., 2013 WL 5798989 and 2014 WL 545743, dismissed in part. Defendants appealed. The Court of Appeals, 611 Fed.Appx. 806, remanded. On remand, the District Court, Shelly Deckert Dick, J., 2016 WL 482046, dismissed remaining claims. Arrestee appealed.

**Holdings:** The Court of Appeals, Stephen A. Higginson, Circuit Judge, held that:

(1) arrestee sufficiently alleged that arrest warrants were tainted by false and misleading affidavits;

(2) arrestee, who voluntarily surrendered because arrest warrants had been issued, was seized for Fourth Amendment purposes;

(3) arrestee sufficiently alleged that probable cause did not exist to arrest him for criminal defamation;

(4) it was not clearly established in August 2012 that a person who voluntarily surrendered after learning that warrants had been issued for his arrest was seized for Fourth Amendment purposes, and thus, defendants were entitled to qualified immunity; and

(5) arrestee's allegation that he suffered "great personal damage" did not allow inference that his speech was actually chilled, as would be required to state a

MCLIN v. ARD **683**
Cite as 866 F.3d 682 (5th Cir. 2017)

claim for retaliation in violation of First Amendment.

Affirmed.

**1. Federal Courts ⇐3587(1)**

The Court of Appeals reviews de novo the District Court's grant of a motion to dismiss for failure to state a claim. Fed. R. Civ. P. 12(b)(6).

**2. Federal Civil Procedure ⇐1772, 1835**

To survive a motion to dismiss for failure to state a claim, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Fed. R. Civ. P. 12(b)(6).

**3. Federal Civil Procedure ⇐1829**

On a motion to dismiss for failure to state a claim, the court draws all inferences in favor of the nonmoving party, and views all facts and inferences in the light most favorable to the nonmoving party. Fed. R. Civ. P. 12(b)(6).

**4. Federal Civil Procedure ⇐1835**

On a motion to dismiss for failure to state a claim, legal conclusions are not entitled to an assumption of truth and must be supported by factual allegations. Fed. R. Civ. P. 12(b)(6).

**5. Federal Civil Procedure ⇐1772**

A claim has facial plausibility, as required to survive a motion to dismiss for failure to state a claim, when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Fed. R. Civ. P. 12(b)(6).

**6. Public Employment ⇐993**

When the motion to dismiss for failure to state a claim raises the defense of qualified immunity for a public official, the plaintiff must plead specific facts that allow the court to draw the reasonable inference that the defendant is liable for the harm alleged, and must plead with equal

specificity facts that defeat a qualified immunity defense. Fed. R. Civ. P. 12(b)(6).

**7. Public Employment ⇐900**

The doctrine of qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal.

**8. Civil Rights ⇐1376(1, 2), 1407**

To defeat a claim of qualified immunity for a public official, the plaintiff has the burden to demonstrate the inapplicability of the defense by showing that: (1) the official violated a statutory or constitutional right, and (2) the right was clearly established at the time of the challenged conduct.

**9. Civil Rights ⇐1376(1)**

Courts have discretion to decide which prong of the qualified immunity analysis for public officials to address first.

**10. False Imprisonment ⇐12**

If facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision to issue an arrest warrant breaks the chain of causation for false arrest, insulating the initiating party. U.S. Const. Amend. 4.

**11. False Imprisonment ⇐12**

The initiating party for an arrest warrant may be liable for false arrest if the arrestee shows that the deliberations of the intermediary who issued the warrant were in some way tainted by the actions of the initiating party. U.S. Const. Amend. 4.

**12. False Imprisonment ⇐12**

Because the intermediary's deliberations in issuing an arrest warrant protect even police officers with malicious intent from liability for false arrest, an arrestee must show that the officer's malicious motive led the officer to withhold relevant

information or otherwise misdirect the independent intermediary by omission or commission.  U.S. Const. Amend. 4.

**13. False Imprisonment ⬅20(1)**

While mere allegations that an arrest warrant was tainted by the initiating party are insufficient at the summary judgment stage of an action for false arrest, such allegations may be adequate to survive a motion to dismiss for failure to state a claim, where the complaint alleges other facts supporting an inference of taint. U.S. Const. Amend. 4; Fed. R. Civ. P. 12(b)(6), 56.

**14. Civil Rights ⬅1088(4)**

Arrestee sufficiently alleged, as required to survive motion to dismiss for failure to state a claim, that arrest warrants were tainted by false and misleading affidavits, so that magistrate's issuance of warrants did not insulate Louisiana parish council members and officers from sheriff's office from liability for false arrest; arrestee alleged that after he made comments on social networking website criticizing council members, members and officers, acting with knowledge that arrestee's speech was constitutionally protected, conspired to create false and misleading affidavits, which were the basis for issuance of arrest warrants.  U.S. Const. Amend. 4; 42 U.S.C.A. § 1983.

**15. Arrest ⬅60.4(1)**

A person is "seized" for Fourth Amendment purposes when the officer, by means of physical force or show of authority, has in some way restrained the liberty of the person.  U.S. Const. Amend. 4.

> See publication Words and Phrases for other judicial constructions and definitions.

**16. Arrest ⬅60.4(1)**

A seizure occurs, for Fourth Amendment purposes, only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.  U.S. Const. Amend. 4.

**17. Arrest ⬅60.4(1)**

The reasonable-person test for a seizure under the Fourth Amendment is objective and ensures that the scope of Fourth Amendment protection does not vary with the state of mind of the particular individual claiming a violation.  U.S. Const. Amend. 4.

**18. Arrest ⬅60.4(1)**

Physical force is not required to effect a seizure under the Fourth Amendment, but absent physical force, submission to the assertion of authority is necessary. U.S. Const. Amend. 4.

**19. Arrest ⬅60.4(1)**

Voluntary submissions to a show of state authority can constitute seizures for Fourth Amendment purposes.  U.S. Const. Amend. 4.

**20. Arrest ⬅60.4(2)**

Arrestee, by alleging that he voluntarily surrendered to law enforcement officers after learning that three arrest warrants had been issued, sufficiently alleged that he had been seized for Fourth Amendment purposes, in § 1983 action alleging lack of probable cause for an arrest; issuance of arrest warrants would be a show of authority, and no reasonable person would believe he was free to leave after officers accepted a surrender by exercising authority consistent with warrants.  U.S. Const. Amend. 4; 42 U.S.C.A. § 1983.

**21. Arrest ⬅63.4(2)**

Probable cause for an arrest is the sum total of layers of information and the synthesis of what police have heard, what they know, and what they observed as trained officers.  U.S. Const. Amend. 4.

**22. Arrest** ⚖ **65**

    **Civil Rights** ⚖ **1088(4)**

    Arrestee sufficiently alleged that probable cause did not exist to arrest him, pursuant to arrest warrants, for criminal defamation under Louisiana law, as required to state a Fourth Amendment claim for false arrest, in § 1983 action alleging that parish council members and officers from sheriff's office conspired to obtain arrest warrants that were not supported by probable cause; arrestee alleged that arrest warrants were based on his conduct in criticizing council members on social networking website, and that First Amendment protection of speech did not allow the criminal defamation statute to be enforced with respect to criticizing the official conduct of public officials unless actual malice was shown.  U.S. Const. Amends. 1, 4; 42 U.S.C.A. § 1983; La. Rev. Stat. Ann. § 14:47.

**23. Civil Rights** ⚖ **1376(2)**

    When considering whether a public official's alleged conduct violated clearly established law, so that the official would not be entitled to qualified immunity from civil liability, the court must ask whether the law so clearly and unambiguously prohibited the official's conduct that every reasonable official would understand that what he is doing violates the law.

**24. Civil Rights** ⚖ **1376(2)**

    To answer in the affirmative the question whether a public official's alleged conduct violated clearly established law, so that the official would not be entitled to qualified immunity from civil liability, the court must be able to point to controlling authority, or a robust consensus of persuasive authority, that defines the contours of the right in question with a high degree of particularity.

**25. Civil Rights** ⚖ **1376(2)**

    Where no controlling authority specifically prohibits a public official's conduct, and where the federal circuit courts are split on the issue, the law cannot be said to be clearly established, as would preclude the public official from receiving qualified immunity from civil liability.

**26. Civil Rights** ⚖ **1376(6)**

    It was not clearly established in August 2012 that a person who voluntarily surrendered after learning that warrants had been issued for his arrest was seized for Fourth Amendment purposes, and thus, Louisiana parish council members and officers from sheriff's office had qualified immunity from liability under § 1983 for Fourth Amendment violation arising from arrest without probable cause, based on council members' and officers' allegedly conspiring to obtain warrants for arrest under Louisiana's criminal defamation statute, which alleged conspiracy occurred despite members' and officers' knowledge that First Amendment protection of speech prohibited enforcement of statute with respect to arrestee's criticism of council members' official conduct.  U.S. Const. Amends. 1, 4; 42 U.S.C.A. § 1983; La. Rev. Stat. Ann. § 14:47.

**27. Constitutional Law** ⚖ **1490, 1553**

    The First Amendment prohibits not only direct limits on individual speech but also adverse governmental action against an individual in retaliation for the exercise of protected speech activities.  U.S. Const. Amend. 1.

**28. Constitutional Law** ⚖ **1171**

    To prevail on a § 1983 claim for First Amendment retaliation, plaintiff must show that: (1) he was engaged in constitutionally protected activity; (2) defendant's actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) defendant's adverse actions were substantially motivated by the constitu-

tionally protected conduct.  U.S. Const. Amend. 1; 42 U.S.C.A. § 1983.

**29. Constitutional Law ⟐1802**

Retaliatory criminal prosecutions in violation of First Amendment protection of speech are actionable only if a plaintiff can prove the common-law elements of malicious prosecution.  U.S. Const. Amend. 1.

**30. Constitutional Law ⟐1553**

Requiring a plaintiff, asserting a claim for retaliation for speech protected by First Amendment, to show actual injury, i.e., that plaintiff's speech actually has been chilled, does not necessarily mean that plaintiffs must cease criticizing government officials altogether in order to have a claim for retaliation; the effect on freedom of speech may be small.  U.S. Const. Amend. 1.

**31. Constitutional Law ⟐2151**
    **Counties ⟐21.5**
    **Public Employment ⟐282**
    **Sheriffs and Constables ⟐100**

Plaintiff's allegation that he suffered "great personal damage" from alleged conduct of Louisiana parish council members and officers from sheriff's office did not allow inference that the conduct actually chilled his speech, as would be required to state a claim for retaliation for speech protected by First Amendment, in § 1983 action alleging that after plaintiff criticized council members on social networking website, members and officers conspired to arrest him without probable cause and to prosecute him for criminal defamation. U.S. Const. Amend. 1; 42 U.S.C.A. § 1983.

West Codenotes

**Limitation Recognized**

La. Rev. Stat. Ann. § 14:47

―――――

Appeal from the United States District Court for the Middle District of Louisiana, Shelly Deckert Dick, U.S. District Judge

Tillman J. Breckenridge, Bailey Glasser, L.L.P., Washington, DC, John Christopher Alexander, Sr., Esq., Attorney, Alexander Law Firm, Baton Rouge, LA, for Plaintiff–Appellant.

Cullen John Dupuy, Esq., Druit George Gremillion, Jr., Esq., Attorney, Breazeale, Sachse & Wilson, L.L.P., Baton Rouge, LA, for Jason Gerald Ard, Benjamin Thomas Ballard, Jack R. Alford, Jr., Stan Carpenter, Brian P. Smith, Bonita G. Sager, and William Dorsey.

Christopher M. Moody, Moody Law Firm, Hammond, LA, for James R. Norred, Jr., Cynthia G. Wale, and Chance McGrew Parent.

Before JOLLY, SMITH, and HIGGINSON, Circuit Judges.

STEPHEN A. HIGGINSON, Circuit Judge:

Royce Denton McLin alleges that members of the Livingston Parish Council and Livingston Parish Sheriff's Office maliciously conspired to prosecute him in retaliation for McLin's online comments about certain Council members. He contends that the Defendants obtained invalid arrest warrants, to which McLin surrendered, and that, as a result, he was issued a misdemeanor summons charging him with criminal defamation. After the charges were dismissed, McLin sued the Defendants under 42 U.S.C. § 1983, alleging violations of his First, Fourth, Fifth, and Fourteenth Amendment rights. The district court dismissed all claims. McLin appeals the dismissal of his First and Fourth Amendment claims. We AFFIRM.

**I.**

We recount the facts as alleged in McLin's complaint. Sometime before April 16, 2012, the Livingston Daily Times published an opinion piece titled "Sue Happy Seven Councilmen," which discussed complaints about the Livingston Parish Coun-

cil's misuse of public funds. A URL link to the piece was posted on a separate Facebook page maintained by the Livingston Daily Times. The Facebook post was open to public comment. Using a pseudonym, someone posted "critical comments" about three Council members—James R. Norred, Jr., Cynthia G. Wale, and Chance McGrew Parent (the "Council Defendants"). McLin alleges that the statements "merely constituted criticism of official conduct of public officials."

On April 20, 2012, Parent filed a report with the Livingston Parish Sheriff's Office ("LPSO") alleging that the anonymous Facebook user had "posted a comment in regards to numerous elected counsel [sic] members." In response, LPSO Detective Benjamin Thomas Ballard obtained subpoenas to Facebook and Charter Communications. The subpoena responses linked McLin's home address to the Facebook account that posted the critical comments.

Ballard obtained a search warrant for McLin's home, and he and LPSO Detective Jack R. Alford, Jr. executed the search warrant on June 11, 2012. Ballard and Alford confiscated electronic devices and equipment, and a forensic analysis purportedly linked one of the confiscated computers to the anonymous Facebook user.

Upon receiving this information, Ballard, Alford, and other officers (together with Sheriff Jason Gerald Ard, the "Officer Defendants"), and the Council Defendants (together with the Officer Defendants, the "Defendants") met on August 16, 2012, to discuss pursuing criminal charges against McLin. Some of the officers urged that criminal defamation charges under Louisiana's criminal defamation statute—Louisi-

ana Revised Statute § 14:47—were warranted. The Council Defendants asked to pursue the charges against McLin and "swore out criminal complaints" contending that they were each subjected to criminal defamation as a result of comments McLin allegedly posted to Facebook.

McLin alleges that these "arrest warrant affidavits" [1] were "materially false." According to McLin, the "false and misleading statements" contained in the affidavits "originated, at least in part, from a self-serving and unreliable 'review' of illegally[ ]obtained evidence" by certain officers." McLin alleges that these "materially false statements were thereafter sponsored, ratified, affirmed, supported, and relied upon" the officers. McLin further alleges that the "facially[ ]invalid arrest warrants arose from the false statements made by [the Defendants]," and that "the [Officer Defendants] conspired with the [Council Defendants] to create false and materially misleading arrest warrant affidavits as the necessary predicate to securing a formal warrant for Mr. McLin's arrest."

Based on the sworn criminal complaints, three warrants for McLin's arrest were issued on August 16, 2012. McLin learned of the charges, and later that day, voluntarily surrendered at the sheriff's office and signed a misdemeanor summons pertaining to the three purported criminal defamation violations. Four months later, an assistant district attorney dismissed the charges.

## II.

On August 16, 2013, McLin sued the Defendants for money damages under 42 U.S.C. § 1983,[2] alleging First, Fourth,

---

**1.** The complaint refers to both sworn "criminal complaints" and "arrest warrant affidavits." Reading the complaint in a light most favorable to McLin, it appears that these names refer to the same three documents that

allegedly supported issuing the arrest warrants.

**2.** McLin sued all parties in both their individual and official capacities. He also brought

Fifth, and Fourteenth Amendment violations, and several Louisiana state law claims. Specifically, the complaint alleges that the Defendants maliciously investigated and conspired to prosecute McLin in retaliation for McLin's critical Facebook comments.

The Council Defendants moved to dismiss the complaint pursuant to Rule 12(b)(6), arguing that they were entitled to qualified immunity. The district court granted the motion and dismissed McLin's § 1983 First and Fourth Amendment claims against the Council Defendants. The Officer Defendants also moved to dismiss the complaint on the grounds of qualified immunity. The district court granted the Officer Defendants' motion as to McLin's First and Fourteenth Amendment claims and McLin's Fourth Amendment claim asserting an unconstitutional seizure. However, the district court denied the motion as to McLin's Fourth Amendment claim asserting an unconstitutional search. The Officer Defendants appealed the district court's partial denial of their motion to dismiss. We found that the complaint failed to allege the issuance of a search warrant and remanded for further proceedings, including an opportunity for McLin to amend his complaint. *McLin v. Ard*, 611 Fed.Appx. 806, 808–10 (5th Cir. 2015) (unpublished).

After remand, McLin filed an amended complaint. The Officer Defendants again moved to dismiss. On February 5, 2016, the district court granted the Officer Defendants' motion to dismiss, and entered final judgment for all the Defendants on all claims.

McLin appealed. He argues that that district court erred in dismissing his First and Fourth Amendment § 1983 claims against the Defendants.

§ 1983 claims against the Livingston Parish

## III.

[1–6]   We review de novo the district court's grant of a motion to dismiss. *Loupe v. O'Bannon*, 824 F.3d 534, 536 (5th Cir. 2016) (citing *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Phillips v. City of Dallas*, 781 F.3d 772, 776 (5th Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)). In reviewing the complaint, we "draw all inferences in favor of the nonmoving party, and view all facts and inferences in the light most favorable to the nonmoving party." *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009). Legal conclusions, however, are not entitled to an assumption of truth and must be supported by factual allegations. *Iqbal*, 556 U.S. at 678–79, 129 S.Ct. 1937. Thus, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (citing *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937). When the motion to dismiss raises the defense of qualified immunity, the plaintiff "must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm . . . alleged and that defeat a qualified immunity defense with equal specificity." *Zapata v. Melson*, 750 F.3d 481, 485 (5th Cir. 2014) (quoting *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012)).

[7–9]   "The doctrine of qualified immunity protects government officials from civil damages liability when their actions

Sheriff's Office.

could reasonably have been believed to be legal." *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011) (en banc). To defeat a claim of qualified-immunity, the plaintiff has the burden to demonstrate the inapplicability of the defense. *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 253 (5th Cir. 2005). The plaintiff must show "(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011)). "Courts have discretion to decide which prong of the qualified-immunity analysis to address first." *Morgan*, 659 F.3d at 371 (citing *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009)).

## IV.

McLin argues that the district court erred in dismissing his § 1983 Fourth Amendment claim. He contends that he was unreasonably "seized" when he surrendered to arrest warrants issued without probable cause. The Defendants respond that the issuance of the arrest warrants broke the causal chain, immunizing the Defendants from liability. Alternatively, the Defendants respond that McLin's voluntary surrender to the arrest warrants did not constitute a seizure, and McLin therefore failed to state a constitutional violation.

## A.

We first address whether issuance of the arrest warrants insulates the Defendants from civil liability on McLin's Fourth Amendment claim. Because McLin adequately pleads that the Defendants submitted false and misleading affidavits for the purpose of obtaining arrest warrants, we hold that issuance of the warrants does not insulate the Defendants.

**[10–12]** "It is well settled that if facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party." *Deville v. Marcantel*, 567 F.3d 156, 170 (5th Cir. 2009) (citing *Taylor v. Gregg*, 36 F.3d 453, 456 (5th Cir. 1994), *overruled on other grounds by Castellano v. Fragozo*, 352 F.3d 939, 949 (5th Cir. 2003) (en banc)). "[T]he initiating party may be liable for false arrest," however, "if the plaintiff shows that the 'deliberations of that intermediary were in some way tainted by the actions of the defendant.'" *Id.* (quoting *Hand v. Gary*, 838 F.2d 1420, 1428 (5th Cir. 1988)). But, "because the intermediary's deliberations protect even officers with malicious intent," a plaintiff must show that the official's malicious motive led the official to withhold relevant information or otherwise misdirect the independent intermediary by omission or commission. *Buehler v. City of Austin/Austin Police Dep't.*, 824 F.3d 548, 555 (5th Cir. 2016) (citing *Hand*, 838 F.2d at 1427).

**[13]** We have previously held that "mere allegations of 'taint,' without more, are insufficient to overcome summary judgment." *Cuadra v. Hous. Indep. Sch. Dist.*, 626 F.3d 808, 813 (5th Cir. 2010); *see, e.g., id.* at 813–14 (finding no "fact issue" regarding whether appellees tainted the decision of two grand juries to return indictments); *Taylor*, 36 F.3d at 456–57 (finding that plaintiffs presented no summary judgment evidence showing that the intermediary was tainted by the actions of the defendants); *Buehler*, 824 F.3d at 555–56 (finding no error in district court summary judgment ruling that appellant "failed to show a triable issue whether the grand jury's findings of probable cause were obtained by false or misleading statements by the arresting officers"). We have not, however, addressed the "taint excep-

**690**         **866 FEDERAL REPORTER, 3d SERIES**

tion" at the motion to dismiss stage where the standard is more permissive: a court must accept all factual allegations as true, and the complaint must state only a plausible claim. *Phillips*, 781 F.3d at 776. Thus, although our precedent demonstrates that "mere allegations of 'taint'" are insufficient at summary judgment, *Cuadra*, 626 F.3d at 813, such allegations may be adequate to survive a motion to dismiss where the complaint alleges other facts supporting the inference.[3]

[14] McLin alleges that three arrest warrants were issued[4] on the basis of the Council Defendants' affidavits, which were based on information and advice provided by the Officer Defendants. According to the complaint, the Defendants, at several "individual and collective meetings" convened "for the purposes of discussing the pursuit of criminal charges against [McLin]," "conspired . . . to create false and materially misleading arrest warrant affidavits as the necessary predicate to securing" arrest warrants. Ballard purportedly drafted three "fatally flawed" arrest warrants falsely alleging "misconduct" by McLin. The Council Defendants signed

"materially false" arrest warrant affidavits, which were thereafter "sponsored, ratified, affirmed, supported, and relied upon" by the Officer Defendants. More specifically, McLin alleges that the Officer Defendants knew that McLin's speech was constitutionally protected, and that none of the Council Defendants "*ever* possessed any information which would be sufficient to swear out affidavits" alleging a violation of § 14:47. Further, McLin alleges that his arrest was "effected based in whole or in part upon the material misrepresentations, errors, omissions, and other inaccuracies" made by the Officer Defendants.

Viewing these allegations in a light most favorable to McLin and drawing all appropriate inferences, the complaint pleads facts supporting the taint exception sufficient to survive a motion to dismiss. According to McLin, the Facebook comments criticized the official conduct of public officials. McLin further alleged that, with knowledge that such speech does not constitute criminal defamation, the Defendants met for the purpose of conspiring to create false and misleading affidavits in order to obtain warrants for McLin's ar-

---

**3.** District courts in this circuit have denied motions to dismiss on these grounds, finding the resolution of such factual disputes more proper for summary judgment. *See Sullivan v. Chastain*, No. Civ.A.SA04CA0803XR, 2005 WL 354032, at *3 (W.D. Tex. Jan. 4, 2005) (denying motion to dismiss on qualified immunity grounds where the plaintiff alleged that the defendant officer swore to a complaint that was without personal knowledge or probable cause); *Bustamante v. Christian*, No. 3:96-CV-2299D, 1997 WL 42530, at *5 (N.D. Tex. Jan. 29, 1997) ("Because [the plaintiff] maintains that the indictment was a product of false and misleading testimony, the court cannot say in the context of Rule 12(b)(6) that the indictment absolutely bars [plaintiff's] claim that defendants caused her false arrest."). *But see Saturn v. Barnett*, No. A–16–CA–505–LY, 2016 WL7392240, *4 (W.D. Tex. Dec. 12, 2016) (holding that the plaintiff failed to plead the taint exception

because he "failed to identify any actual material false statements in [the officer's] sworn statement, only offering his own conclusory beliefs of their falsity"); *but cf. Goodarzi v. Hartzog*, No. H-12-2870, 2013 WL 3110056, at *12, 21 (S.D. Tex. June 14, 2013) (dismissing false arrest claims *without prejudice* where there was "no evidence of precisely what was said to the [independent intermediary]," but the court found "substantial questions" about whether the defendant was insulated from liability).

**4.** Although the complaint does not specifically allege who reviewed the affidavits and issued the warrants, Louisiana law provides that a warrant of arrest may be issued by any "magistrate," which is defined to include any judge, justice of the peace, or a mayor of a mayor's court. La. Code Crim. Proc. art. 202; *id.* art. 931(4).

rest. Finally, McLin alleged that the arrest warrants were issued on the basis of the falsified affidavits. Accordingly, we hold that the arrest warrants do not insulate the Defendants from liability at this stage because McLin pleads that the Defendants' false and misleading affidavits tainted the magistrate's deliberations.

**B.**

We next consider whether McLin alleges an unreasonable seizure under the Fourth Amendment. McLin contends that he was "seized" when he voluntarily surrendered to the arrest warrants at the sheriff's office and signed a misdemeanor summons pertaining to the three purported criminal defamation violations. McLin further argues that his seizure was unreasonable—and therefore unconstitutional—because the Defendants lacked probable cause to arrest him.

**1.**

[15–18] A person is "seized" for Fourth Amendment purposes "when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *Terry v. Ohio*, 392 U.S. 1, 19, n.16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). A seizure occurs "only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that [they were] not free to leave." *Michigan v. Chesternut*, 486 U.S. 567, 573, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988) (quoting *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980)). The reasonable-person test is objective and ensures "that the scope of Fourth Amendment protection does not vary with the state of mind of the particular individual" claiming a violation. *Id.* at 574, 108 S.Ct. 1975. Physical force is not required to effect a seizure; however, absent physical force, "*submission* to the assertion of authority" is necessary. *California v. Hodari D.*, 499 U.S. 621, 626, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991).

> Thus, seizures have been found when an encounter is precipitated by a show of authority, such as when a siren was used to pull a motorist over; when a motorist stepped out of his camper, with his hands up, in response to an officer's knock on the camper door; or when under other circumstances it was 'apparent . . . that the individual was not free to ignore the officer and proceed on his way.'

*United States v. Elmore*, 595 F.2d 1036, 1041 (5th Cir. 1979) (citations omitted).

[19] Substantial authority from both the Supreme Court and our court establishes that *voluntary* submissions to a show of state authority can constitute seizures for Fourth Amendment purposes.[5] Consistent with this authority, the Su-

---

5.  *See, e.g., Brower v. County of Inyo*, 489 U.S. 593, 597–98, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989) ("If the revenue agent had shouted, 'Stop and give us those bottles, in the name of the law!' and the defendant and his accomplice had complied . . . a Fourth Amendment seizure would have occurred."); *id.* at 598–99, 109 S.Ct. 1378 ("[A] roadblock that is designed to give the oncoming driver the option of a voluntary stop" could cause a seizure because "it [is] enough for a seizure that a person be stopped by the very instrumentality set in motion or put in place in order to achieve that result."); *Evans v. Ball*, 168 F.3d 856, 861 (5th Cir. 1991) (finding the plaintiff seized when he voluntarily appeared in court in response to a summons and then was released on his own recognizance subject to pre-trial restrictions), *abrogated on other grounds by Castellano v. Fragozo*, 352 F.3d 939 (5th Cir. 2003) (en banc); *United States v. Shabazz*, 993 F.2d 431, 433–34 (5th Cir. 1993) (finding "no question" that a seizure occurred when defendants were pulled over by officers for exceeding the speed limit); *accord United States v. Nicholas*, 448 F.2d 622, 624 (8th Cir. 1971) (finding a "clear" seizure "when the officers stationed themselves on either side of Nicholas's car and flashed their badges"

692 FEDERAL REPORTER, 3d SERIES

preme Court's divided opinion in *Albright v. Oliver*, 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) suggests that voluntary surrender to an arrest warrant constitutes a seizure under the Fourth Amendment. In *Albright*, upon learning of an outstanding warrant for his arrest on drug charges, Albright surrendered to a city police detective. *Id.* at 268, 114 S.Ct. 807. Albright was released after posting bond. *Id.* After the court dismissed the criminal action, Albright brought a § 1983 suit against the police detective for violating his substantive due process rights under the Fourteenth Amendment. *Id.* at 269, 114 S.Ct. 807. Although the Court affirmed the district court's dismissal of the case on other grounds, seven Justices characterized Albright's voluntary surrender to the arrest warrant as a Fourth Amendment seizure. Chief Justice Rehnquist's plurality opinion (joined by Justices O'Connor, Scalia, and Ginsburg) observed that the plaintiff's "surrender to the State's show of authority constituted a seizure for purposes of the Fourth Amendment." *Id.* at 271, 114 S.Ct. 807 (noting that Albright did not claim a violation of the Fourth Amendment); *see also id.* at 276, 114 S.Ct. 807 (Ginsburg, J., concurring) ("Albright's submission to arrest unquestionably constituted a seizure for purposes of the Fourth Amendment."). In a concurring opinion, Justice Souter also observed the "Fourth Amendment seizure that followed when [Albright] surrendered himself into police custody." *Id.* at 289, 114 S.Ct. 807 (Souter, J., concurring in judgment). Likewise, Justice Stevens's dissenting opinion, which was joined by Justice Blackmun, recognized Albright's

"initial seizure." *Id.* at 307, 114 S.Ct. 807 (Stevens, J., dissenting).

*Albright*'s statements on the Fourth Amendment seizure issue, which were not essential to that case's outcome, are nonbinding though indicative, and our court has never decided whether voluntary surrender to an arrest warrant constitutes a seizure. Several other circuit courts, however, have relied on *Albright* to hold that a state official's acceptance of a voluntary surrender to an arrest warrant constitutes a seizure. In *Whiting v. Traylor*, the plaintiff brought a § 1983 action for malicious prosecution after he voluntarily surrendered to an arrest warrant that he claimed lacked probable cause. 85 F.3d 581, 583 (11th Cir. 1996). Upon turning himself in, the plaintiff was detained overnight and then released on bond. *Id.* In vacating the district court's dismissal of the suit, the Eleventh Circuit found that the plaintiff's "initial surrender" was a seizure because "he subjected himself physically to the force of the state in response to an arrest warrant." *Id.* at 586 & n.6.

Likewise, the Tenth Circuit recently considered the § 1983 claim of a plaintiff who, after learning of his arrest warrant, turned himself into the local jail. *Goad v. Town of Meeker*, 654 Fed.Appx. 916, 921 (10th Cir. 2016) (unpublished). On review of the district court's grant of summary judgment, the court held that the plaintiff's "surrender to the State's show of authority constituted a seizure for purposes of the Fourth Amendment." *Id.* (quoting *Albright*, 510 U.S. at 271, 114 S.Ct. 807) (plurality opinion); *see also Cummisky v. Mines*, 248 Fed.Appx. 962,

---

"[e]ven though Nicholas may have been physically free to drive away"); *United States v. Ward*, 488 F.2d 162, 168–69 (9th Cir. 1973) (finding a "clear" seizure where agents "turned on the siren in their unmarked car and motioned the [motorist] to go around the corner and stop," and the motorist "immediately complied"); *White v. Wright*, 150 Fed.

Appx. 193, 195, 197–98 (4th Cir. 2005) (unpublished) (finding the plaintiff seized where he "voluntarily turned himself in after the [criminal grand jury] indictment was returned," and was detained briefly for fingerprinting and processing before being released subject to conditions in a bond).

964, 965 n.1 (10th Cir. 2007) (unpublished) (noting that the plaintiff was seized when, after learning about the warrant issued for his arrest, he surrendered at the police station; was photographed and fingerprinted; and then allowed to leave after posting bond).[6]

[20] Here, McLin alleges that three warrants were issued for his arrest, and that he "learned of the (false) charges and voluntarily surrendered unto the Livingston Parish Sheriff's Office ... and Defendant Ballard" later that same day. At the sheriff's office, McLin signed a misdemeanor summons for the three alleged criminal charges and then left. Issuance of the arrest warrants was a "show of authority," see Terry, 392 U.S. at 19 n.16, 88 S.Ct. 1868, and McLin submitted to that authority by voluntarily surrendering at the sheriff's office. See Hodari, 499 U.S. at 626, 111 S.Ct. 1547; Whiting, 85 F.3d at

585 n.6. At the moment the officer(s) accepted McLin's surrender by exercising authority consistent with those warrants, no "reasonable person would have believed that he was ... free to leave." Mendenhall, 446 U.S. at 554, 100 S.Ct. 1870; see also United States v. Jaras, 86 F.3d 383, 390 (5th Cir. 1996) ("It is well established that a defendant's mere acquiescence to a show of lawful authority is insufficient to establish voluntary consent."); Albright, 510 U.S. at 271, 114 S.Ct. 807 (plurality opinion); Goad, 654 Fed.Appx. at 921.

The Defendants argue that McLin fails to plead a seizure because he does not allege that his pre-trial liberty was limited. In support, they point to cases where courts have ruled that the issuance and receipt of a criminal summons or citation—without the imposition of additional, pre-trial restrictions—may not implicate the Fourth Amendment.[7] If, however, the sum-

---

6.  A number of district courts have also determined that acceptance of a voluntary surrender to an arrest warrant constitutes a seizure under the Fourth Amendment. See Garrett v. Stanton, No. 08-0175-WS-M, 2009 WL 4258135, at *6 (S.D. Ala. Nov. 19, 2009) (observing the "considerable authority ... finding that self-surrender upon issuance of a warrant constitutes a Fourth Amendment seizure" and finding that that "[c]learly ... Garrett was seized for Fourth Amendment purposes when she surrendered to law enforcement authorities upon issuance of an arrest warrant"); Groom v. Fickes, 966 F.Supp. 1466, 1474–75 (S.D. Tex. 1997) (holding that the plaintiff pleaded a Fourth Amendment violation when it was "obvious that the plaintiff surrendered to the government's show of authority, i.e., in response to the criminal indictment"); see also Pomykacz v. Borough of West Wildwood, 438 F.Supp.2d 504, 512 (D.N.J. 2006) (finding a Fourth Amendment seizure when "police officers showed their authority" by going to the plaintiff's house "to advise her that a warrant for her arrest had been issued" and the plaintiff thereafter "submitted to that authority when she appeared at the police station").

7.  See, e.g., Bielanski v. Cty. of Kane, 550 F.3d 632, 642 (7th Cir. 2008) ("No court has held that a summons alone constitutes a seizure, and we conclude that a summons alone does not equal a seizure for Fourth Amendment purposes."); Martinez v. Carr, 479 F.3d 1292, 1299 (10th Cir. 2007) ("[T]he mere issuance of a citation requiring presence at future legal proceedings does not qualify as a constitutional 'seizure'...."); DiBella v. Borough, 407 F.3d 599, 603 (3rd Cir. 2005) (finding no seizure where plaintiffs were issued summonses, but never were arrested, never posted bail, and never were subject to any travel restrictions or pre-trial reporting requirements); Karam v. City of Burbank, 352 F.3d 1188, 1191, 1194 (9th Cir. 2003) (finding no seizure where no arrest warrant issued and "all [plaintiff] had to do was show up for court appearances and obtain permission from the court if she wanted to leave the state"); Britton v. Maloney, 196 F.3d 24, 30 (1st Cir. 1999) ("Absent any evidence that Britton was arrested, detained, restricted in his travel, or otherwise subject to a deprivation of liberty before the charges against him were dismissed, the fact that he was given a date to appear in court is insufficient to a

mons or citation is accompanied by more burdensome restrictions—such as restrictions on out-of-state travel and pre-trial reporting requirements—some courts, including this one, have recognized that a seizure may occur incident to a pre-trial release. *See Karam*, 352 F.3d at 1193–94. In *Evans v. Ball*, this court held that issuing a summons, "coupled with the requirements that [the plaintiff] obtain permission before leaving the state, report regularly to pretrial services, sign a personal recognizance bond, and provide federal officers with financial and identifying information, diminished his liberty enough to render him seized under the Fourth Amendment." 168 F.3d at 861.

The Defendants' reliance on cases concerning seizures incident to pretrial release is misplaced. McLin's Fourth Amendment claim does not stem from any conditions imposed on him once he was issued the summons. Indeed, McLin does not plead any pre-trial restrictions at all. Rather, McLin's seizure occurred when he surrendered to the arrest warrants and LPSO exercised authority consistent with the warrants—even if McLin thereafter signed his summons and was allowed to leave. The existence or non-existence of any pre-trial restrictions does not impact the analysis of this seizure.[8] The Defendants have not pointed to a case in which a court found that a person surrendering to an arrest warrant was *not* seized for Fourth Amendment purposes. Moreover, in other voluntary surrender contexts—traffic stops, for example—it makes no

difference whether further restrictions follow the initial moment of seizure. *See, e.g. Delaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979) ("[S]topping an automobile and detaining its occupants constitute a 'seizure' ... even though the purpose of the stop is limited and the resulting detention quite brief."). We therefore hold that McLin pleads that he was seized under the Fourth Amendment.

### 2.

[21] Having held that McLin pleads a Fourth Amendment seizure, we must next determine whether such seizure was unreasonable and thus a constitutional violation. *See Elkins v. United States*, 364 U.S. 206, 222, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960) ("[W]hat the Constitution forbids is not all searches and seizures, but unreasonable searches and seizures."). McLin's seizure occurred when he surrendered to an arrest warrant, the issuance of which required probable cause. Thus, for McLin to allege an unreasonable seizure, his allegations must make plausible that the Defendants lacked probable cause to arrest him. "[P]robable cause is the 'sum total of layers of information and the synthesis of what police have heard, what they know, and what they observed as trained officers.'" *United States v. Shaw*, 701 F.2d 367, 376 (5th Cir. 1983) (quoting *United States v. Edwards*, 577 F.2d 883, 895 (5th Cir. 1978) (en banc)).

establish a seizure within the meaning of the Fourth Amendment.").

**8.** *See, e.g., Whiting*, 85 F.3d at 585 n.6 (focusing on the plaintiff's "initial surrender" as the moment of seizure because "he subjected himself physically to the force of the state in response to an arrest warrant"); *Goad*, 654 Fed.Appx. at 921 (finding a seizure where the plaintiff surrendered to an arrest warrant and was immediately booked and released, with

no mention of pre-trial restrictions); *Garrett*, 2009 WL 4258135 at *4, 6 (finding a seizure where the plaintiff was subject to no pre-trial restrictions after surrendering and immediately bonding out); *see also Albright*, 510 U.S. at 271, 114 S.Ct. 807 (plurality opinion) ("[Plaintiff's] surrender to the State's show of authority [the arrest warrant] constituted a seizure for purposes of the Fourth Amendment").

In *Garrison v. Louisiana*, the Supreme Court held that the Louisiana criminal defamation statute, La. Stat. 14:47, is unconstitutional "in the context of criticism of the official conduct of public officials." 379 U.S. 64, 77, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964). The court explained that only "false statement[s] 'made with actual malice—that is, with knowledge that it was false or with reckless disregard of whether it was false or not' "—are unprotected under the First Amendment and validly subject to criminal prosecution. *Id.* at 67, 85 S.Ct. 209 (quoting *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279–80, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964)). The Louisiana statute runs afoul of this limitation because it "punishes false statements without regard to that test if made with ill-will; even if ill-will is not established, a false statement concerning public officials can be punished if not made in the reasonable belief of its truth." *Id.* at 78, 85 S.Ct. 209. Following *Garrison*, the Louisiana Supreme Court also recognized the unconstitutionality of the statute when it circumscribes speech about public officials. *See State v. Defley*, 395 So.2d 759, 761 (La. 1981) ("LSA–R.S. 14:47 is unconstitutional insofar as it punishes public expression about public officials."); *State v. Snyder*, 277 So.2d 660, 665 (La. 1972) ("[A] charge of defamation is well founded as to these [public officials] only when the statement was made with actual malice, that is, with knowledge that it was false or with reckless disregard of whether it was false or not.").

[22] The factual allegations in McLin's complaint sufficiently plead that the Defendants lacked probable cause to prosecute McLin for violating the Louisiana criminal defamation statute. McLin alleges that the anonymous Facebook comments—posted to a news story about Council members and the Council's misuse of public funds—did not amount to criminal defamation but rather "merely constituted criticism of official conduct of public officials."

Speech criticizing the official conduct of public officials is protected by the First Amendment and does not constitute criminal defamation. *See Defley*, 395 So.2d at 761; *Snyder*, 277 So.2d at 665. McLin further alleges that, upon linking the comments to him, and with knowledge that McLin's comments were protected by the First Amendment, the Defendants met and conspired to create falsified affidavits for the purpose of obtaining arrest warrants on charges of criminal defamation. *See Rykers v. Alford*, 832 F.2d 895, 898 (5th Cir. 1987) ("[A]n officer charged with enforcing Louisiana law[ ] can be presumed to know that law."). On these facts, which must be taken as true, we conclude that McLin's complaint adequately alleges an unreasonable seizure because the Defendants could not have believed they had probable cause to arrest him. *See Spiller v. City of Tex. City Police Dep't*, 130 F.3d 162, 165–66 (5th Cir. 1997) (holding that the plaintiff pleaded a Fourth Amendment claim where "the events alleged in [her] complaint did not provide [the officer] with probable cause to believe that [her speech] was likely to incite an immediate breach of the peace," and so "her arrest for disorderly conduct was not supported by probable cause").

**C.**

[23–25] Although we hold that McLin pleads a Fourth Amendment violation, the Defendants are still entitled to qualified immunity unless the particular constitutional right at issue was "clearly established." "When considering a defendant's entitlement to qualified immunity, we must ask whether the law so clearly and unambiguously prohibited his conduct that 'every reasonable official would understand that what he is doing violates [the law].' " *Morgan*, 659 F.3d at 371 (quoting *al-Kidd*, 563 U.S. at 741, 131 S.Ct. 2074); *see also Lane v. Franks*, —— U.S. ——, 134 S.Ct.

2369, 2381, 189 L.Ed.2d 312 (2014) (noting that the right must be clearly established "at the time of the challenged conduct"). "To answer that question in the affirmative, we must be able to point to controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity." *Morgan*, 659 F.3d at 371–72 (internal quotation marks omitted) (quoting *al-Kidd*, 563 U.S. at 742, 131 S.Ct. 2074); *see also Mullenix v. Luna*, —— U.S. ——, 136 S.Ct. 305, 308, 193 L.Ed.2d 255 (2015) ("The dispositive question is whether the violative nature of *particular* conduct is clearly established." (internal citation and quotation omitted)). "Where no controlling authority specifically prohibits a defendant's conduct, and when the federal circuit courts are split on the issue, the law cannot be said to be clearly established." *Morgan*, 659 F.3d at 372.

[26]   Here, we cannot say that *every* reasonable officer would understand that McLin was seized for purposes of the Fourth Amendment. To date, neither the Supreme Court nor the Fifth Circuit has decided that an officer's acceptance of a voluntary surrender to an arrest warrant constitutes a Fourth Amendment seizure. And there is no a "robust consensus of persuasive authority": only one circuit—the Eleventh—has found a seizure in these circumstances in a published opinion, and a majority of circuit courts have not yet weighed in. Although we now hold that McLin was seized, reasonable officers might not have understood that accepting McLin's surrender to the arrest warrants, without imposing further pre-trial restrictions, constituted a seizure.

We therefore hold that McLin fails to plead a violation of a "clearly established" constitutional right, and we affirm the dis-

trict court's grant of qualified immunity to the Defendants and dismissal of McLin's Fourth Amendment claim on that basis.

## V.

McLin also argues that the district court erred in dismissing his First Amendment retaliation claim. He alleges that the Defendants violated his First Amendment rights by retaliating against him for making critical public comments about Council members. The district court determined that McLin failed to state a claim because he failed to allege an injury that would chill a person of ordinary firmness from continuing to engage in protected speech. **ROA.70–73.** We offer no opinion on the correctness of the district court's determination because we find that the complaint is deficient for another reason: McLin fails to plead that the Defendants' retaliatory conduct actually curtailed his speech.

[27–30]   "The First Amendment prohibits not only direct limits on individual speech but also adverse governmental action against an individual in retaliation for the exercise of protected speech activities." *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002). To prevail on a § 1983 claim for First Amendment retaliation, McLin must show that "(1) [he] was engaged in constitutionally protected activity[;] (2) the defendant's actions caused [him] to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity[;] and (3) the defendant's adverse actions were substantially motivated [by] the constitutionally protected conduct." *Id.*[9] The second element "requires some showing that the plaintiff's exercise of free speech has been curtailed." *Id.* at 259 (citing *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 686 (4th Cir. 2000); *Spear v.*

---

**9.**   Additionally, "retaliatory criminal prosecutions in violation of the First Amendment are actionable only if a plaintiff can also prove the common-law elements of malicious prosecution...." *Keenan*, 290 F.3d at 260.

*Town of West Hartford*, 954 F.2d 63, 67 (2d Cir. 1992); *Sullivan v. Carrick*, 888 F.2d 1, 4 (1st Cir. 1989)).[10] "A required showing of actual injury does not necessarily mean that plaintiffs must cease criticizing the government officials altogether in order to have a claim for retaliation." *Id.* at 260. "The effect on freedom of speech may be small, but since there is no justification for harassing people for exercising their constitutional rights it need not be great in order to be actionable." *Id.* at 259 (quoting *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982)).[11] In *Keenan*, the court found that the plaintiffs demonstrated curtailment when they asserted that they "backed off from direct involvement in helping expose unlawful practices in the constable's office," even though at least one plaintiff continued to investigate and file complaints about such practices. *Id.* at 260 (internal quotations omitted).

[31]   Here, McLin argues that he satisfied the curtailment requirement by pleading that "he suffered 'great personal damage' from the Defendants' actions, including a violations [sic] of his First Amendment rights." From these minimal allegations, McLin urges the court to infer that he "actually suffered a curtailment of his speech."

Even drawing all appropriate inferences in favor of McLin, these allegations are insufficient to allege curtailment of McLin's speech. The assertion that McLin suffered "violations of his First Amendment rights" is a legal conclusion and is not entitled to an assumption of truth. *See Iqbal*, 556 U.S. at 678–79, 129 S.Ct. 1937. McLin is left with an allegation of "great personal damage," which does not demonstrate that he reduced or changed his exercise of free speech in any way. *See Spear*, 954 F.2d at 67 (finding that a plaintiff's allegation of a chill "was conclusory and speculative" when "[t]he complaint offered nothing beyond a bare assertion that the lawsuit cause[d] a chilling effect upon his First Amendment rights"); *Mills v. Bogalusa*, No. 13-5477, 2014 WL 2993426, at *4 (E.D. La. Jul. 2, 2014) (dismissing retaliation claim where plaintiff failed to plead "specific facts showing actual curtailment in response to defendants' allegedly retaliatory activity"). Notably, McLin's complaint appears to be carefully drafted to avoid explicitly admitting that he was the anonymous commentator, and accordingly, he never alleges that the Defendants' conduct stopped him from speaking further.[12] Thus, the district court did not err by dismissing McLin's First Amendment claim.

---

10.   In *Linzy v. Cedar Hill Independent School District*, issued only a few weeks after *Keenan*, the court noted that "[o]ur precedent does not appear to expressly require a showing that a plaintiff's speech has been actually inhibited by the retaliation." No. 01-11145, 2002 WL 1021883, at *1 n.7 (5th Cir. May 9, 2002) (unpublished). The *Linzy* opinion fails to mention *Keenan*, and is unpublished and thus not binding. *See* 5th Cir. R. 47.5.

11.   The requirement that a retaliation claim show some curtailment of the plaintiff's speech has been criticized by some circuit courts because it punishes the brave plaintiff. *Mendocino Envtl. Ctr. v. Mendocino Cty.*, 192

F.3d 1283, 1300 (9th Cir. 1999) ("[I]t would be unjust to allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity."); *Smith v. Plati*, 258 F.3d 1167, 1177 (10th Cir. 2001) (citing *Mendocino* approvingly).

12.   The complaint repeatedly refers to "certain comments and statements *alleged* to have been posted … by Mr. McLin," and states that "Defendants … *alleged* Mr. McLin created an anonymous Facebook profile / account and used the said account to post disparaging comments…."

## VI.

For the foregoing reasons, we AFFIRM the judgment of the district court.



Eric C. DARDEN, as Administrator of the Estate of Jermaine Darden and on behalf of the statutory beneficiaries of the Estate of Jermaine Darden (which are Donneika Goodacre-Darden, surviving mother of Jermaine Darden, Charles H. Darden, surviving father of Jermaine Darden), Plaintiff–Appellant,

v.

CITY OF FORT WORTH, TEXAS; W. F. Snow; J. Romero, Defendants–Appellees.

No. 16-11244

United States Court of Appeals,
Fifth Circuit.

FILED August 9, 2017

**Background:** Estate of suspect who suffered a heart attack and died during his arrest filed a § 1983 action against the two arresting officers, and the city, alleging use of excessive force. The United States District Court for the Northern District of Texas, John McBride, J., 2016 WL 4257469, granted summary judgment in favor of defendants. Estate appealed.

**Holdings:** The Court of Appeals, Edward C. Prado, Circuit Judge, held that:

(1) fact issues barred summary judgment in favor of officers, and

(2) officers were not entitled to qualified immunity.

Reversed in part, vacated in part, and remanded.

King, Circuit Judge, filed specially concurring opinion.

**1. Federal Courts ⇐3604(4)**

The Court of Appeals reviews the grant of a summary judgment motion de novo, using the same standard as that employed by the district court. Fed. R. Civ. P. 56(a).

**2. Civil Rights ⇐1376(1, 2)**

In evaluating a qualified immunity defense, the court must determine (1) whether the facts that a plaintiff has alleged make out a violation of a constitutional right and (2) whether the right at issue was clearly established at the time of defendant's alleged misconduct.

**3. Civil Rights ⇐1376(2)**

For qualified immunity purposes, a right may be "clearly established" without a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate.

See publication Words and Phrases for other judicial constructions and definitions.

**4. Civil Rights ⇐1376(1)**

Courts are permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand; however, deciding the two prongs in order is often beneficial.

**5. Federal Civil Procedure ⇐2491.5**

Once an official pleads qualified immunity, the burden then shifts to the plaintiff, who must rebut the defense, in order to defeat summary judgment, by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law.

**6. Federal Civil Procedure ⇐2543**

At the summary judgment stage, a court must view the facts in the light most favorable to the nonmoving party; the evidence of the non-movant is to be believed,