## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **JERRY ROGERS, JR.,** | * | **CIVIL ACTION** |
| **Plaintiff** | * | |
| | * | **NO. 20-517** |
| **VERSUS** | * | |
| | * | **JUDGE MILAZZO** |
| | * | |
| **RANDY SMITH, INDIVIDUALLY** | * | **MAG. JUDGE DOUGLAS** |
| **And IN HIS OFFICIAL CAPACITY** | * | |
| **AS THE SHERIFF OF ST. TAMMANY** | * | **JURY DEMAND** |
| **PARISH, DANNY CULPEPER, AND** | * | |
| **KEITH CANIZARRO** | * | |
| **Defendants** | * | |

**************************************************************************

### MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

**MAY IT PLEASE THE COURT:**

NOW COME, Defendants, St. Tammany Parish Sheriff Randy Smith ("Sheriff Smith"), Danny Culpeper and Keith Canizaro, each in their official and individual capacities, who respectfully submit this memorandum in support of their motion for summary judgment, and respectfully aver as follows:

## I.   BRIEF FACTUAL BACKGROUND

Plaintiff filed the instant action on February 13, 2020, alleging violations of his civil rights under the laws of the United States and Louisiana.[1] Thereafter, Plaintiff Jerry Rogers, Jr. filed an amended Complaint, more specifically alleging the same violations of his civil rights.[2] The facts of this case start with the death of Nanette Krentel on July 14, 2017, in St. Tammany Parish. The St. Tammany Parish Sheriff's Office promptly began an investigation into Ms. Krentel's death. During the course of that investigation, Plaintiff, a Federal agent with the U.S. Department of

---

[1] R. Doc. 1.
[2] R. Doc. 14.

Housing and Urban Development (HUD),[3] created an anonymous email account and began sending suspicious emails to the sister of the murder victim, Kim Watson.[4]

In response to those emails, one of the victim's (Nanette Krentel) family members reached out to the lead investigator, Detective Daniel Buckner, and reported the anonymous emails, as they were causing problems within the victim's family.[5] The emails contained information about the ongoing Krentel investigation and included derogatory statements regarding the lead investigator, Detective Buckner, and others involved in that case. Specifically, the emails claimed that Detective Buckner was "clueless" and accused him of being a "stone cold rookie," further suggesting that "anything is better than" Detective Buckner and that he had "no experience."[6]

In reality, Detective Buckner is certified by the State of Louisiana as a Homicide Investigator.[7] At the time of the Krentel investigation, he had been a certified law enforcement officer for nineteen (19) years and a detective for eight (8) years.[8] He is a seasoned homicide investigator who has both led and assisted on many homicide investigations, several of which resulted in successful conclusions. Regardless of Detective Buckner's true credentials, however, Plaintiff's emails succeeded in alarming Nannette Krentel's family and caused her family members to distrust the Sheriff's Office and impaired the Detective's ability to investigate Ms. Krentel's homicide.

While investigating the source of these emails, as they were sent anonymously and involved an open homicide investigation, the Criminal Investigation Division, led by Danny

---

[3] *See* page 27 of Daniel Buckner's deposition attached hereto as **Exhibit "A."**
[4] R. Doc. 14, ¶ 15; *see* also Affidavit of Detective Daniel Buckner at ¶ 5-6 attached hereto as **Exhibit "B**."
[5] *See* Affidavit of Detective Daniel Buckner at ¶ 6 attached hereto as **Exhibit "B**."
[6] *Id.* at ¶ 8, *see* also Affidavit for Arrest Warrant of Jerry Rogers attached hereto as **Exhibit "C"**; *See also* the attached anonymous emails from Jerry Rogers, attached hereto as "1" to the Affidavit of Captain Keith Canizaro attached hereto as **Exhibit "E"**
[7] *Id.* at ¶ 9.
[8] *See* Affidavit for Arrest Warrant of Jerry Rogers, p. 2 attached hereto as **Exhibit "C**."

Culpeper, was able to link a Federal Government IP address used to send portions of the emails with Plaintiff, Jerry Rogers.[9] On August 13, 2019, Lieutenant Alvin Hotard and Detective Daniel Buckner traveled to Plaintiff's workplace, the HUD's Office of Inspector General's office in the Hale Boggs building in New Orleans, Louisiana, to interview him about the anonymous emails sent to Ms. Krentel's family.[10] During this interview, Plaintiff admitted to sending the emails and further admitted that he obtained information about the investigation from a (then) current STPSO employee.[11]

On August 15, 2019, Defendant, Sergeant Keith Canizaro, assigned to the Major Crimes Unit of the St. Tammany Parish Sheriff's Office, was tasked with the investigation regarding possible obstruction of justice relating to Nannette Krentel's open homicide investigation.[12] That investigation uncovered insufficient facts to charge Plaintiff with obstruction of justice, but it did reveal sufficient evidence to charge Plaintiff with criminal Defamation under LSA – R.S. § 14:47.[13] Accordingly, on September 16, 2019, Sergeant Canizaro submitted an affidavit requesting an arrest warrant for Plaintiff for the charge of Defamation, LSA – R.S. § 14:47.[14] The affidavit contained entirely factual information supporting probable cause to arrest Jerry Rogers, Jr.,[15] and the warrant was granted and signed by a judge on the same day.[16] Later that day, Plaintiff was arrested by the St. Tammany Parish Sheriff's Office, and then released a few hours later.[17] Plaintiff's Complaint alleges harm and violations of his civil rights as a result of this arrest.

---

[9] *See* Affidavit of Danny Culpeper attached hereto as **Exhibit "D**."
[10] R. Doc. 14, ¶ 18.
[11] *See* Affidavit of Detective Daniel Buckner at ¶ 11 attached hereto as **Exhibit "B**."
[12] *See* Affidavit for Arrest Warrant of Jerry Rogers, p. 1 attached hereto as **Exhibit "C**."
[13] *See* the attached St. Tammany Parish Sheriff's Office Investigative Report regarding Jerry Rogers, attached hereto as "2" to the Affidavit of Captain Keith Canizaro attached hereto as **Exhibit "E**."
[14] *See* page 31 of Captain Canizaro's deposition attached hereto as **Exhibit "F**." This statute was repealed by Acts 2021, No. 60, §1.
[15] *See* Affidavit of Captain Keith Canizaro at ¶ 16 attached hereto as **Exhibit "E**."
[16] See Warrant of Arrest # 417325 signed by the Honorable Raymond Childress on September 16, 2019, attached hereto as **Exhibit "G**."
[17] R. Doc. 14, ¶ 24.

Plaintiff's claims, however, are wholly unsupported by the facts of this case and should be dismissed in their entirety as a matter of law.

## II.      LAW AND ARGUMENT

### A.      Standard for Granting Summary Judgment

Federal Rule of Civil Procedure 56 governs the motion for summary judgment in federal court, mandating that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[18] The moving party generally has the initial burden to establish that there are no issues of material fact, and that therefore the mover is entitled to judgment in its favor as a matter of law.[19] Summary judgement will only be precluded if there is a genuine issue of material fact which might affect the outcome of the lawsuit under governing law.[20]

### a.   There is no genuine dispute as to any material fact.

The mere existence of some alleged factual dispute will not defeat an otherwise properly supported motion for summary judgment. Further, there can be no genuine issue of material fact if the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party.[21] At summary judgment, the Fifth Circuit requires the nonmoving party to tender "significant" and "probative" evidence to rebut a properly supported summary judgment motion.[22] This is a heavy burden of countervailing evidence for the non-mover to carry.

Here, there are no genuine issues of material fact, and Defendants, Smith, Culpeper, and Canizaro, are entitled to summary judgment as a matter of law. The Defendants, in carrying out

---

[18] Fed. R. Civ. P. 56(a); *See also, Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986); *Poole v City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012).
[19] *Breen v. Texas A&M University*, 485 F.3d 325, 331 (5th Cir. 2007); *Rivera v. Houston Independent School District*, 349 F.3d 244, 246-47 (5th Cir. 2003).
[20] *Condiff v. R.D. Werner Co.*, 2003 U.S. Dist. LEXIS 14288, at *3 (E.D. La. Aug. 15, 2003).
[21] *New Orleans Assets v. Woodward*, 278 F. Supp. 2d 776, 780 (E.D. La 2003).
[22] *Whitt v. Stephens County*, 529 F.3d 278, 283 n. 8 (5th Cir. 2008).

their usual duties and responsibilities as law enforcement officers, followed the letter of the law that was on the books at the time of Plaintiff's arrest. Though it has since been repealed,[23] at the time of the incident, Louisiana's criminal Defamation statute LSA – R.S. § 14:47 provided that, "Defamation is the malicious publication or expression in any manner, to anyone other than the defamed, of anything which tends to expose any person to hatred, contempt, or ridicule, or to deprive him of the benefit of public confidence, or to injure any person or association of persons in his or their business or occupation."[24]

The Defendants applied the facts as established in the investigation of Jerry Rogers to the elements of the criminal Defamation statute, and upon finding that the elements of the statute were sufficiently satisfied, Defendants sought and were granted an authorized arrest warrant from a neutral magistrate.[25] In obtaining the arrest warrant for Plaintiff Rogers, Defendant Canizaro submitted a sworn affidavit to the judge,[26] containing entirely factual information, which the judge then reviewed and signed after finding that probable cause existed to arrest Plaintiff. By this action, Defendant Canizaro fulfilled his legal and professional obligations.

Plaintiff has failed to allege any fact or state any claim which would lend itself to a finding in Plaintiff's favor. Plaintiff Rogers contends that his arrest was based on his criticism of the St. Tammany Parish Sheriff's Office,[27] when truthfully, he was arrested under an authorized warrant for committing the crime of Defamation, by which, in so committing, he was purposely interfering with an ongoing homicide investigation. More egregious is the fact that, in his communications with the victim's family, Plaintiff attempted to use his status as a law enforcement officer to build

---

[23] Acts 2021, No. 60, § 1 of Louisiana session 2021.
[24] LSA – R.S. § 14:47 (repealed 2021).
[25] See Warrant of Arrest # 417325 signed by the Honorable Raymond Childress on September 16, 2019, attached hereto as **Exhibit "G."**
[26] *See* Affidavit of Captain Keith Canizaro at ¶ 16 attached hereto as **Exhibit "E."**
[27] R. Doc. 14, ¶ 1.

trust and to attach nonexistent authority to the claims that he was making. He stated his own baseless opinions as matters of fact and made several false statements under this false persona.

Further, Plaintiff, in his Complaint and other pleadings, attempts to build credibility based on his prior experience with the St. Tammany Parish Sheriff's Office. He used this experience to support his motives for following Nanette Krentel's case so closely and to support the "sympathy he felt" for Krentel's family members.[28]  In stark contrast to his alleged compassion, due to his career in law enforcement, Plaintiff, more than most, was well aware of the serious implications of his actions. His history in law enforcement should garnish him no more sympathy than that which would be afforded to any other citizen of any other profession who takes it upon himself to interfere with an ongoing homicide investigation under the guise of an anonymous email account.

Despite Plaintiff's unsupported claims, he was not sought out for arrest or "targeted" by the St. Tammany Parish Sheriff's Office.[29] His actions were uncovered during the ongoing homicide investigation of Ms. Krentel and were reported to an employee of the Sheriff's Office by a member of Ms. Krentel's own family,[30] and because this was a high-profile homicide investigation, the Defendants had a duty to follow up on every lead, which is what led them to Jerry Rogers and his anonymous email account. In addition, contrary to another of Plaintiff's claims, Sheriff Smith did not "use public resources to retaliate against one of his critics,"[31] since Sheriff Smith did not know that Jerry Rogers was a critic until long after this investigation was well underway. Aside from the fact that Sheriff Smith was merely doing his job, the charges brought against Plaintiff were for defamatory statements made about the lead detective in the

---

[28] R. Doc. 14, ¶ 14.
[29] R. Doc. 14, p. 3 (heading).
[30] *See* Affidavit of Detective Daniel Buckner at ¶ 6 attached hereto as **Exhibit "B."**
[31] R. Doc. 14, ¶ 4.

Krentel case, Daniel Buckner, not about Sheriff Smith, and thus this accusation by Plaintiff is completely unfounded.

Even construing the summary judgment evidence in the light most favorable to Plaintiff, no reasonable jury could conclude that Defendants acted unreasonably as to violate Plaintiff's civil rights under the laws of the United States or Louisiana. Plaintiff can present no evidence to suggest a violation of these rights. Therefore, summary judgment is proper under the Federal Rules of Civil Procedure.

### B.      Standard for Granting Summary Judgment for Qualified Immunity

The general rules regarding summary judgment are further manifest when dealing with claims asserted under 42 U.S.C. § 1983 where the defendant raises qualified immunity as a defense. Qualified immunity is an affirmative defense that protects public officials who are sued in their individual capacities for purported violations of constitutional rights.[32] The qualified immunity defense carries a different burden of proof than summary judgment. A government official asserting qualified immunity does not have the burden to establish it.[33] He must only show that the conduct occurred while he was acting in his official capacity and within the scope of his discretionary authority.[34]

Once it is raised, it is the plaintiff's burden to negate the assertion of qualified immunity[35] by establishing (1) that the official violated a statutory or constitutional right, and (2) that the right was ***clearly established*** at the time of the challenged conduct. [36] The plaintiff, bearing the burden of negating the defense, cannot rest on conclusory allegations and assertions, but must demonstrate

---

[32] *Harlow v. Fitzgerald*, 102 S.Ct. 2727, 2738 (1982).
[33] *Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 419 (5th Cir. 2008).
[34] *Beltran v. City of El Paso*, 367 F.3d 299, 303 (5th Cir. 2004).
[35] *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009) (emphasis added).
[36] *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (emphasis added) (citation omitted).

genuine issues of material fact regarding the reasonableness of the official's conduct.[37] On the other hand, the movant can support its motion by relying solely on the pleadings.[38]

Here, Defendants, Smith, Culpeper, and Canizaro, are public officials, sued in their individual and official capacities for purported violations of Plaintiff's First and Fourth Amendment rights. Defendants acted in their official capacities and within each Defendant's scope of discretionary authority with respect to Plaintiff's arrest. In the events that led to the present lawsuit, Defendants acted in good faith based on their training and experience in gathering necessary evidence, obtaining a valid arrest warrant, and lawfully executing that warrant against Plaintiff, Jerry Rogers. There is also no evidence that Defendants – at any time – acted unreasonably. Defendants have therefore satisfied their burden of proving that the qualified immunity defense applies to each of them.

### a. Qualified immunity shields officials who do not violate a clearly established right.

Under the qualified immunity defense, government agents are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[39] This defense *further* serves to shield an officer "from suit when [the officer] makes a decision that, even if constitutionally deficient, <u>reasonably</u> misapprehends the law governing the circumstances [the officer] confronted."[40] Referencing these two assertions, and for three key reasons, Defendants here should be squarely protected by the qualified immunity defense.

---

[37] *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005).
[38] *Disraeli v. Rotunda*, 489 F.3d 628, 631 (5th Cir. 2007).
[39] *Dolan v. Parish of St. Tammany*, 2014 U.S. Dist. LEXIS 26200, at *7-8 (E.D. La. Feb. 28, 2014) *citing Behrens v. Pelletier*, 516 U.S. 299, 305 (1996).
[40] *Kokesh v. Curlee,* 2021 U.S. App. LEXIS 28607 at *19 (5th Cir. Sep. 21, 2021) *citing Brosseau v. Haugen*, 543 U.S. 194, 205 (2004).

First, qualified immunity protects officials who do not violate "clearly established" statutory or constitutional rights.[41] This is not a case where it is obvious that there was a violation of clearly established law. It has never been "clearly established" that Defendants were prohibited from making an arrest under a lawfully obtained and lawfully executed arrest warrant. Defendants arrested the Plaintiff under Louisiana's criminal Defamation statute, LSA – R.S. § 14:47, which was a valid and enforceable statute from 1950 to 2021. Although LSA – R.S. § 14:47 was repealed in 2021, it was part of Louisiana's law during the entire Rogers investigation and arrest.

Plaintiff cites three cases which he alleges cast doubt on the applicability of LSA – R.S. § 14:47 to speech concerning public officials.[42] While the cases provided do hold LSA – R.S. § 14:47 to be unconstitutional in each respective setting, not a single case cited by Plaintiff holds the statute to be uniformly unconstitutional.[43] In addition, the defamed party in this case is a detective, while the defendants in all of the cases cited by the Plaintiff were judges, councilmen, and a mayoral candidate – all elected officials. Defendants would respectfully suggest that this is a huge factual distinction which renders Plaintiff's cases largely irrelevant in this matter.

Many courts, including the *Defley* case cited by Plaintiff, have agreed that a person who accepts the responsibilities of a public official relinquishes some protection from defamation.[44] This case further stated that "a candidate for public office is in the same category as a public official for defamation purposes."[45] Detectives like Buckner, however, do not accept such public responsibilities as they do not run for office, and as such, do not relinquish such protections. Also,

---

[41] *Dolan,* 2014 U.S. Dist. at *8.

[42] R. Doc. 14, ¶¶ 32-35.

[43] It is worth noting that the alleged unconstitutionality of the statute as applied to this case was not placed squarely before the Defendants until two days <u>after</u> the arrest of Plaintiff. Specifically, District Attorney Chief Collin Sims submitted a letter to the Sheriff's Office recusing the District Attorney from the case and suggesting, for the first time in writing, that there was a potential constitutional defect in the statute. It is also notable that Plaintiff's wife is employed by this same DA's office, which Defendants suggest is why DA's office was forced to recuse itself.

[44] *State v. Defley,* 395 So. 2d 759, 761 (La. 1981).

[45] *Id.*

the three Defamation cases cited by the Plaintiff occurred in the context of a press conference, a public meeting, and a mayoral campaign (respectively) – all highly public forums. These cases are entirely distinguishable from the case at hand, in which Plaintiff sent anonymous emails to the victim's family in the midst of a homicide investigation. With such ambiguity between the status of LSA – R.S. § 14:47 at the time of Plaintiff's arrest and the inapplicable case law, Defendants cannot be said to have violated any "clearly established" right.

Second, qualified immunity protects officials who do not violate constitutional rights *which a reasonable person would have known*.[46] Reasonable people, including reasonable police officers, are justified in believing that a law they know exists is in fact valid when that statute remains the law of record after over sixty years in effect and there is no case law squarely on point as to its unconstitutionality. The fact that some Louisiana courts narrowed the state's Defamation statute to afford certain citizens greater freedom of speech is not a "right" which a reasonable person would have known. Reasonable police officers are not held to the same standard of knowledge as experienced lawyers and judges whose job it is to be certain of the law.

Defendant Canizaro, in investigating the matter, utilized the *2018-2019 Edition of the Louisiana Criminal Law and Motor Vehicle Handbook* and found LSA – R.S. § 14:47.[47] This statute book, in common usage in law enforcement, was subsequently requested in discovery, and the pertinent pages were produced. The statute was not yet repealed at the time of Plaintiff's arrest, and its elements were satisfied by facts and evidence available. The statute, as written in the very book utilized by Canizaro, contains no exception, no limitation, and no comments suggesting its

---

[46] *Dolan*, 2014 U.S. Dist. at *8.
[47] *See* Defendants' Responses to Plaintiff's Sixth Requests for Production attached hereto as **Exhibit "H"**; *see also* pages 38-39 of Canizaro's deposition transcript attached hereto as **Exhibit "I"** (In his deposition testimony, Canizaro refers to the book Defendants referenced as a "Westlaw book." Upon producing the exact book Defendants utilized, it turned out to be a Blue360 Media publication, not Westlaw.)

inapplicability to public officials nor to anyone who is paid a salary by the government. Thus, Defendants requested a warrant based on what they knew to be true. Their actions were objectively reasonable in light of the circumstances. To that end, the Fifth Circuit has held that an official's conduct is not "objectively unreasonable" unless <u>all</u> reasonable officials in that position would have known at that time that their conduct violated the plaintiff's rights.[48] Such a claim will not hold here.

Third, qualified immunity *further* protects officials who make an unconstitutional but *<u>reasonable</u>* mistake about the law governing a given situation.[49] Plainly stated, qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments about open legal questions."[50] This rule is directly applicable to the Defendants in this case. Though the constitutionality of LSA – R.S. § 14:47 at the time of Plaintiff's arrest remains debatable, this rule provides that *even if* Plaintiff's arrest was unconstitutional, Defendant's actions are here again protected under qualified immunity by their reasonable mistake of law for reasons already provided.

### b. Qualified immunity can only be denied if the Plaintiff demonstrates exceedingly convincing, consistent authority that defines the right in question with a high degree of particularity.

As noted by the United States Supreme Court, while qualified immunity "does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question <u>beyond debate</u>."[51] The Court continued that, "'clearly established law' should not be defined 'at a high level of generality.'…[T]he clearly established law must be "particularized" to the facts of the case. Otherwise, '[p]laintiffs would be able to

---

[48] *Carroll v. Ellington*, 800 F.3d 154, 169 (5th Cir. 2015).
[49] *Kokesh,* 2021 U.S. App. LEXIS 28607, at *19 (emphasis added).
[50] *Id.*
[51] *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (emphasis added).

convert the rule of qualified immunity…into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights.'"[52]

This case presents a unique set of facts and circumstances. Here, the breadth of First Amendment rights afforded to citizens which are potentially infringed by LSA – R.S. § 14:47 (Defamation) at the time of Plaintiff's arrest was certainly not "beyond debate." Plaintiff's claim to the contrary is general and abstract, which is not permitted under this rule. Plaintiff fails to acknowledge the law of record at the time of his arrest, fails to acknowledge the specific class of cases under which this law has been ruled unconstitutional, and fails to adequately equate the vastly different facts of the cases he cited to his own situation. There is simply no particularity element to Plaintiff's argument, and thus, once again, this case in unique in its context of anonymous emails sent during an ongoing homicide investigation, not some public outcry at a community engagement, like a public meeting (a common theme in cases granting increased freedom of speech).

Importantly, the United States Supreme Court has recently ruled that "**[s]pecificity is especially important in the Fourth Amendment context**, where…it is sometimes difficult for an officer to determine how the relevant legal doctrine…will apply to the factual situation the officer confronts."[53] This high burden requires Plaintiff to identify a "case where an officer acting under similar circumstances as [each of the defendants] was held to have violated [a person's constitutional rights]."[54] Again, Plaintiff here has failed to allege such specificity or to identify a case establishing the standard for how the Defendants, in Plaintiff's opinion, *should have* acted

---

[52] *Id*. at 552.
[53] *Rivas-Villegas v. Cortesluna,* 142 S.Ct. 4, *8 (2021), *citing Mullenix,* 577 U.S. at 12 (emphasis added); *City of Tahlequah v. Bond*, 2021 U.S. LEXIS 5310 at *5 (Oct. 18, 2021) *citing Mullenix,* 577 U.S. at 12 (emphasis added).
[54] *White*, 137 S. Ct. 548, 552 (2017).

given the factual situation that they confronted. Given this Fourth Amendment context, Plaintiff

has also failed to provide a factually similar case to adequately establish some violated right.

      **c.  Qualified immunity is appropriate where officials are not given fair and adequate <u>notice</u> that the right in question may have existed at the time of the incident.**

      The United States Supreme Court has held that "a court can often avoid ruling on the

plaintiff's claim that a particular right exists. If prior case law has not clearly settled the right, and

so given officials fair **notice** of it, the court can simply dismiss the claim for money damages."[55]

This notice is paramount, and the Supreme Court has in the past questioned a party for not

submitting applicable Supreme Court cases that address the specific facts at bar and has even

openly mused about the value of Circuit precedent in clearly establishing law.[56] In *Ashcroft*, the

Court concluded that without case precedent containing materially similar facts, sufficient to put

**every** reasonable officer on notice of some clearly established right, officers cannot be held liable

for their reasonable actions and are thereby entitled to qualified immunity.[57]

      Here, because Louisiana's Defamation law was not clearly held to be unconstitutional in

all circumstances at the time of Plaintiff's arrest, Defendants did not violate any clearly established

right, and because the case law on the matter was not yet settled, Defendants did not have fair

notice that such a right may have even existed. Plaintiff's Complaint thoughtlessly suggests that

the St. Tammany Parish Sheriff's Department was on notice of the change in law due to a local

newspaper article published in 2014.[58] The law grants no authority to the writings of the local

newspaper, and the information quoted therein is inapplicable to the facts in this case, and thus

this argument is without merit.

---

[55] *Camreta v. Greene,* 563 U.S. 692, 705 (2011) *citing Anderson v. Creighton*, 483 U.S. 635, 638 (1987).
[56] *Rivas-Villegas,* 142 S. Ct. 4, *7.
[57] *Ashcroft v. al-Kidd*, 563 U.S. 731, 741, 131 S. Ct. 2074, 2083 (2011).
[58] R. Doc. 14, ¶ 38.

Defendants would note to this Honorable Court that in 2018, the 22nd Judicial District Attorney's Office accepted a guilty plea from a woman (Amy Baudot) who was charged under LSA – R.S. § 14:47 for Defamatory statements made against Colonel John Plunkett, an active member of the Army National Guard.[59] The facts and timeline of Baudot's case and the case at hand align almost seamlessly. The Complaint against Amy Baudot was first documented in September 2017,[60] while Jerry Rogers's conduct began in December 2017.[61] Baudot, like Rogers, was charged with defaming arguably a public official. National Guardsmen (like Colonel Plunket) are military officers sworn to protect the United States and are paid a salary using public funds. Following Plaintiff's argument, if Detective Buckner is a "public official," then so too is Colonel Plunket.

When the 22nd Judicial District Court DA's office accepted Amy Baudot's adjudication of guilt for criminal Defamation under LSA – R.S. § 14:47, no argument was made concerning the statute's constitutionality.[62] In fact, Baudot's plea was reviewed and offered to the court by her attorney, it was accepted by the DA's office, and it was signed by a judge, yet *no one* raised the constitutionality of the statute as it was being applied to an arguably public official, in this case an active duty Colonel in the National Guard. Even more significant is the fact that the supervising officer who oversaw the investigation of Amy Baudot's criminal Defamation case was – uncoincidentally – Defendant Keith Canizaro.[63] It is therefore absurd to allege that Defendants in

---

[59] *See* the attached St. Tammany Parish Sheriff's Office Investigative Report regarding Amy Baudot, attached hereto as "3" to the Affidavit of Captain Keith Canizaro attached hereto as **Exhibit "E."**
[60] *Id.*
[61] R. Doc. 14, ¶ 15.
[62] *See* Certified Copy of Amy Baudot's Bill of Information is attached hereto as **Exhibit "J,"** and a Certified Copy of Ms. Baudot's Adjudication of Guilt is attached hereto as **Exhibit "K."**
[63] *See* the attached St. Tammany Parish Sheriff's Office Investigative Report regarding Amy Baudot, attached hereto as "3" to the Affidavit of Captain Keith Canizaro attached hereto as **Exhibit "E."**

the present matter were on "notice" that the "right in question" existed at the time of Plaintiff Rogers's arrest.

Continuing this pattern of criminal Defamation cases in St. Tammany Parish, in another case also beginning in 2017, Scott Sewell was arrested and charged under LSA – R.S. § 14:47 for a series of defamatory online comments made about former STPSO narcotics detective, Shane Wilkinson.[64] Though the DA eventually enhanced Scott Sewell's LSA – R.S. § 14:47 Defamation charge to R.S. 14:285 Telephone Harassment and obtained a conviction, no one questioned the Defamation charge against Sewell as being "unconstitutional" when he was charged for speaking out against a former "public official."[65] The supervising officer in that case was once again Defendant Keith Canizaro. [66] Accordingly, this continuous, local pattern of uncontested Defamation charges in recent years destroys Plaintiff Rogers's case based on the "clearly on notice" predicate of qualified immunity. The court, therefore, should grant Defendant's summary judgment on the basis of qualified immunity.

### d. Qualified immunity protects competent officials from unjust burdens of litigation and from fear of carrying out their duties.

Finally, qualified immunity is intended to protect "all but the plainly incompetent or those who knowingly violate the law,"[67] and it exists to ensure that "fear of liability will not unduly inhibit officials in the discharge of their duties."[68] This case brought by Plaintiff is the precise type of case to which qualified immunity is intended to apply, and the Defendants here are the precise class of defendants that the qualified immunity defense is intended to protect. The Fourth

---

[64] *See* the attached St. Tammany Parish Sheriff's Office Investigative Report regarding Scott Sewell, attached hereto as "4" to the Affidavit of Captain Keith Canizaro attached hereto as **Exhibit "E."**
[65] *See* Certified Copy of Scott Sewell's Bill of Information is attached hereto as **Exhibit "L,"** and a Certified Copy of Mr. Sewell's Adjudication of Guilt is attached hereto as **Exhibit "M**."
[66] *Id*.
[67] *Whitney v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (citations omitted).
[68] *Camreta*, 563 U.S. at 705.

Amendment does not require officers to second-guess criminal statutes in search of conflicting case law governing the particular set of facts with which the officer is confronted.

Defendants acted under a warrant issued by a judge "upon probable cause, supported by Oath or affirmation, particularly describing the person to be seized."[69] As such, Defendants were competent in the discharge of their duties and should not be held liable for doing so. Plaintiff fails to identify a violation of any clearly established, protected right, and therefore, Defendants are entitled to summary judgment on the basis of qualified immunity.

### C.   Qualified Immunity Should be Determined on Summary Judgment

The issue of qualified immunity is uniquely ripe for disposition via summary judgment. The U.S. Supreme Court has reversed several federal court opinions in recent years based on qualified immunity, because, the Court says, "qualified immunity is important to 'society as a whole,'[70] and because as an 'immunity from suit' (rather than a mere defense to liability),[71] qualified immunity 'is effectively lost if a case is erroneously permitted to go to trial.'"[72]

Because the qualified immunity doctrine is driven by the desire to quickly resolve claims against government officials, the Court stresses the significance of "resolving immunity questions at the earliest possible stage in litigation."[73] By dismissing these cases quickly, courts avoid '[subjecting] government officials either to the costs of trial or to the burdens of broad-reaching discovery' in cases where the legal norms the officials are alleged to have violated were not clearly established at the time."[74] Further, qualified immunity balances two societal interests: the need to hold public officials accountable when they exercise power irresponsibly and the

---

[69] U.S. Const. amend IV.
[70] *White v. Pauly*, 137 S. Ct. at 551.
[71] *Pearson v. Callahan*, 555 U.S. 223, 231 S. Ct. 808 (2009).
[72] *White v. Pauly*, 137 S. Ct. at 551.
[73] *Pearson*, 555 U.S. at 231-232.
[74] *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806, 2815 (1985) (emphasis added).

need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.[75]

There is no evidence in this case that any of the Defendants acted irresponsibly. In fact, there is overwhelming evidence that Defendants handled the situation with the utmost care. Defendants took action in accordance with their official duties to serve and protect the public, and they should not be subject to meritless litigation for acting properly and proceeding reasonably.

When the qualified immunity defense is raised in a Motion for Summary Judgment, as it is here, "it is the defendant's conduct as alleged in the complaint that is scrutinized for 'objective legal reasonableness.'"[76] The court must look at the plaintiff's complaint to determine if the allegations set forth are pleaded with "sufficient precision and factual specificity to raise a genuine issue as to the illegality of defendant's conduct at the time of the alleged acts."[77]

Here, Plaintiff's Complaint fails to demonstrate sufficient facts to support any of his claims. Without any basis to believe (1) that Defendants actions were retaliatory, (2) that Defendants lacked probable cause to arrest Plaintiff, (3) that Plaintiff's arrest constituted some abuse of process, or (4) that Plaintiff's emails were protected by free speech, the criminal defamation action under LSA – R.S. § 14:47 against Plaintiff was proper. The facts and circumstances shown prove that Defendants acted prudently in the administration of their duties, and an objectively reasonable police officer in the same situation would have acted accordingly. Summary judgement based on qualified immunity should therefore be granted.

---

[75] *Pearson*, 555 U.S. at 231.
[76] *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002).
[77] *Clayton v. Columbia Cas. Co.*, 2012 U.S. Dist. LEXIS 100395, at *8 (M.D. La. July 17, 2012).

### D.      Plaintiff Fails to State a Violation of a Clearly Established, Protected Right

### a.   Plaintiff's Claim Under the Fourth Amendment Fails

Plaintiff alleges that Defendants each individually caused an "illegal seizure" and a "false arrest" when they seized him on September 16, 2019.[78] The Fourth Amendment ensures that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause…"[79] The claims for illegal seizure and false arrest, therefore, require a showing that there was no probable cause. The Supreme Court of the United States has defined probable cause as the "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable causation, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense."[80]

A police officer is "entitled to qualified immunity for an arrest 'if a reasonable person in [his] position could have believed he had probable cause to arrest.'"[81] In addition, and most importantly, the Fifth Circuit Court of Appeals has held that, "The constitution does not guarantee that only the guilty will be arrested…**Where an arrest is made under authority of a properly issued warrant, the arrest is simply not a false arrest. Such an arrest is not unconstitutional, and a complaint based on such an arrest is subject to dismissal for failure to state a claim**."[82]

Defendants Smith and Culpeper, acting in a supervisory role only, were briefed on the investigation and the evidence obtained, and ultimately authorized Canizaro to submit an affidavit for an arrest warrant from a neutral magistrate based on true facts, and thus all three

---

[78] R. Doc. 14, ¶ 47.

[79] U.S. Const. amend IV.

[80] *Piazza v. Mayne*, 217 F.3d 239, 245-46 (5th Cir. 2000) (quoting *Michigan v. DeFillippo*, 99 S.Ct. 2627, 2632 (1979)).

[81] *Glenn v. City of Tyler*, 242 F.3d 307, 313 (5th Cir. 2001).

[82] *Smith v. Gonzales*, 670 F.2d 522, 526 (5th Cir. 1982) (emphasis added)

Defendants acted legally. Plaintiff's arrest was based on probable cause, as determined by the judge, and was thus not a false arrest. Plaintiff's Fourth Amendment claims fail to meet the high threshold for the narrow exception to the protections afforded to officers who obtain a warrant.

In Fourth Amendment cases that involve a warrant, such as this case, "the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner or, as we have sometimes put it, in 'objective good faith.'"[83] The only exception to this statement is when "it is obvious that no reasonably competent officer would have concluded that a warrant should issue,"[84] and there are no facts in this case to support this exception. The threshold for this exception is high, as "an officer cannot be expected to question the magistrate's probable-cause determination because it is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant…"[85]

This is because of the sound presumption that "**the magistrate is more qualified than the police officer to make a probable cause determination**…"[86] This is a commonsense presumption, as the magistrate has a legal education, years of experience, and, in Louisiana, is accountable to the public. Indeed, in the context of a warrant, the opinion of the magistrate is the only opinion that matters.

> The purpose of the complaint, then, is to enable the appropriate magistrate… to determine whether the probable cause required to support a warrant exists. **The [magistrate] must judge for himself the persuasiveness of the facts relied on by a complaining officer to show probable cause**. He should not accept without question the complainant's mere conclusion that the person whose arrest is sought has committed a crime.[87]

---

[83] *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) *citing United States v. Leon,* 468 U.S. 897, 922-923 (1984).
[84] *Id.* at 547 (citation omitted).
[85] *Id. citing Leon,* 468 U.S. at 921 (quotation marks omitted).
[86] *Id. citing Malley v. Briggs,* 475 U.S. 335, 346 (1986) (emphasis added).
[87] *Giordenello v. United States,* 357 U.S. 480, 486 (1958) (emphasis added) (quotation marks omitted).

It is well settled in the Fifth Circuit that the magistrate's review of the affidavit submitted by an officer and judicial determination for a warrant serve as a shield for that officer. In *Deville*, the Fifth Circuit held that "[i]t is well settled that if facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulting the initiating party."[88] The officer who submitted an affidavit may only be liable if the plaintiff can show that "the deliberations of that intermediary were in some way tainted by the actions of the defendant."[89] In addition, the officer's state of mind in requesting the arrest warrant is irrelevant provided the warrant is supported by probable cause.[90]

In the instant matter, Defendant, Keith Canizaro, presented the relevant facts to the magistrate who made a judicial determination that that there was probable cause to arrest the Plaintiff. The chain of causation was broken by these actions, and Defendants are thus shielded from liability under the arrest warrant. There are no facts to suggest that the deliberations of the neutral magistrate who signed the warrant were in some way tainted by Defendant's actions. Therefore, the judicial determination for that arrest warrant serves to protect Defendants from any liability in this matter.

Plaintiff argues that he was arrested under an unconstitutional statute, and that Defendants are therefore liable to him for damages. This position is in direct contradiction with the law. The statute under which Plaintiff was arrested has been narrowed in scope by the courts over the years, however, the courts have never addressed the specific and novel situation in the case at bar. Specifically, Plaintiff only cited cases where the courts have protected the criticism

---

[88] *Deville v. Marcantel,* 567 F.3d 156, 170 (5th Cir. 2009) *citing Taylor v. Gregg,* 36 F.3d 453, 456 (5th Cir. 2005).
[89] *Id. citing Hand,* 838 F.2d at 1428.
[90] *Smith v. Gonzales,* 670 F.2d 522, 527 (5th Cir. 1982).

of "public officials, public figures, and private individuals engaged in public affairs."[91] In short, *Garrison* protected a district attorney's criticism of judges at a press conference,[92] *Defley* protected a citizen's criticism of Plaquemines Parish School Commission councilors at a public meeting,[93] and *Snyder* protected a defeated mayoralty candidate's criticism of other candidates.[94] All of these cases deal with the criticism of individuals who were elected to office and were at some point directly accountable to the voters. None of these cases deal with comments made about a public employee, like the detective in this case, who was outside of a policy-making role.

Further, no case has ever ruled that LSA – R.S. § 14:47 was unconstitutional in its entirety, rather, courts have merely limited its scope in certain areas. Indeed, the Western District of Louisiana has stated, "[w]e find that the Louisiana statutory provisions in question [LSA – R.S. § 14:47, *et seq.*] are not unconstitutional per se, but that they may be susceptible of a limiting construction…"[95] Recently, the Louisiana Third Circuit upheld a conviction under LSA – R.S. § 14:47, and the decision contained no discussion related to the constitutionality of the statute.[96] Rather, the main question for that court was whether all the elements of the crime had been shown.[97]

Importantly for this case, *State ex. rel. G.J.G.* dealt with Defamation by a student of a public high school teacher. A high school teacher, like a detective, does not serve in a policy-making or political role, and the court drew a distinction between a school superintendent and a teacher and found that a public-school teacher was not a public figure for purposes of limited

---

[91] *Anderson v. Larpenter*, 2017 U.S. Dist. LEXIS 111907 (E.D. La. 07/18/2017).
[92] *Garrison v. La*., 379 U.S. 64 (1964).
[93] *State v. Defley*, 395 So.2d 759, 762.
[94] *State v. Snyder*, 277 So.2d 660, 666 (La. 1972).
[95] *Snyder v. Ware*, 314 F.Supp. 335, 336 (W.D. La. 1970); *see also Payton v. Town of Maringouin,* 2021 U.S. Dist. LEXIS 115260 at *52 (M.D. La. 06/21/21).
[96] *State ex. rel. G.J.G.,* 19-768 (La. App. 3 Cir. 03/04/20); 297 So.3d 120.
[97] *Id.*

Defamation construction.[98] Rather, both teachers and detectives are mere functionaries carrying out the decisions made by others. Accordingly, the application of LSA – R.S. § 14:47 in the instant matter was constitutional.

A false arrest claim under § 1983 can further be rebutted by the defense of good faith and probable cause.[99] Under the law, a "police officer is not charged with predicting the future course of constitutional law."[100] Thus, even *assuming* that the statute under which Plaintiff was arrested was unconstitutional, Plaintiff's claim still fails. An officer may not be held liable "under section 1983 for false arrest because of an unconstitutional statute if he acted with probable cause and with a good faith belief in the validity of the statute."[101]

Defendants were never put on notice about the applicability of any limitations in the scope of the protections of LSA – R.S. § 14:47 regarding police officers, as *no* prior case specifically held this limitation. Furthermore, Defendants have made arrests in the past under LSA – R.S. § 14:47, and no question of constitutionality was ever raised in those cases.[102] The Defendant's good faith in actions taken against Plaintiff Rogers has been well established. Plaintiff was not unlawfully seized, nor was he falsely arrested. Accordingly, Defendants are entitled to qualified immunity and summary judgment.

### b.  Plaintiff's Claim Under the First Amendment is Unfounded

Plaintiff asserts a claim for First Amendment retaliation.[103] According to the Fifth Circuit, citing to the Supreme Court, "When asserting a claim for retaliatory arrest, a plaintiff must first establish the absence of probable cause, and then demonstrate that the retaliation was

---

[98] *Id. See also Huxen v. Villasenor,* 01-288 (La. App. 5 Cir. 9/25/01); 798 So. 2d 20 (where a conviction for Defamation was upheld where the victim was a public school teacher with the Jefferson Parish School system).
[99] *Pierson v. Ray*, 386 U.S. 547, 557 (1967).
[100] *Id.*
[101] *Anderson v. Nosser,* 438 F.2d 183, 194 (5th Cir. 1971).
[102] *See* Affidavit of Keith Canizaro verifying arrest records attached hereto as **Exhibit "E."**
[103] R. Doc. 14, ¶ 42.

a substantial or motivating factor behind the arrest."[104] As provided in detail, Defendants had

probable cause to arrest Plaintiff, and that probable cause was judicially reviewed and

determined. Further, as demonstrated by the deposition testimony, there is simply *no* evidence

of retaliation.

Plaintiff asserts that "some government actions that would be otherwise lawful become

prohibited if in response to protected speech or petition." While true, Plaintiff's secret emails

sent to the victim's family during an ongoing homicide investigation do not constitute "protected

speech or petition,"[105] as Plaintiff claims. These alarming communications trudged past the

bounds of free speech. Plaintiff also asserts that, "The First Amendment bars officials' actions

where they 'cause the speaker to suffer an injury that would chill a person of ordinary firmness

from continuing to engage in that activity' and were 'substantially motivated against the

plaintiffs' exercise of constitutionally protected conduct.'"[106] Again, though usually true,

Plaintiff Roger's actions leading to his arrest *were not* "constitutionally protected conduct," and

therefore his arrest was not by definition intended to "chill" him from continuing to engage in

that alarming activity. Further, the only evidence of any alleged retaliatory intent is Plaintiff's

own subjective belief, which is insufficient to withstand a motion for summary judgment.

Finally, Plaintiff asserts that Defendant Smith's actions were intended to "deter and chill

Jerry Rogers' exercise of his First Amendment right to express his opinion about STPSO."[107]

This claim by the Plaintiff is wholly lacking in support.  Indeed, it is nothing more that

unsupported conjecture on his part, and thus it must be rejected by this Honorable Court. The

evidence in this case shows that Sheriff Smith did not arrest Plaintiff for expressing his opinion.

---

[104] *Kokesh*, 2021 U.S. App. LEXIS 28607, at *28.
[105] R. Doc. 14, ¶ 43.
[106] *Id*.
[107] R. Doc. 14, ¶ 45.

Plaintiff was arrested, however, for making defamatory comments via anonymous emails to the family member of a murder victim, wherein Plaintiff used his experience in law enforcement to establish false credibility and to assert his opinions as matters of fact. Plaintiff's "other damage"[108] stemming from these events was caused by his own actions, not by Defendant Smith or either of the other Defendants. Accordingly, as probable cause existed for Plaintiff's arrest due to his own unlawful conduct, there simply is no evidence that the arrest was executed in retaliation for any other conduct, and thus Plaintiff's claim for First Amendment retaliation is unfounded.

### c.  Plaintiff's Reliance on *Anderson* is Misplaced

Plaintiff cites *Anderson v. Sheriff Larpenter* in alleging a violation of his First Amendment rights.[109] Specifically, Plaintiff suggests that *Anderson*, a 2017 case from the Eastern District of Louisiana, serves to put Defendants on notice that LSA – R.S. § 14:47 was unconstitutional at the time of Rogers's arrest.[110] This is not true for two main reasons – the rendering court's authority to make new law and the dissimilar facts of the case.

First, it is unsettled whether a district court ruling such as in *Anderson, supra,* in which the district court merely denies a defendant's motion to dismiss under Rule 12(b)(6) provides adequate notice to Defendants for purposes of qualified immunity. Defendants aver the overarching structure and precedents interpreting qualified immunity would suggest otherwise. The essence of qualified immunity is that the existence of a right must be established beyond debate. Here, however, the question of whether any district court precedent has established the existence of a constitutional right has not been established "beyond debate." Therefore,

---

[108] R. Doc. 14, ¶ 46.
[109] R. Doc. 14, ¶¶ 34, 40.
[110] *Anderson v. Larpenter*, 2017 U.S. Dist. LEXIS 111907 (E.D. La. 07/18/2017).

Defendants respectfully suggest that until the United States Supreme Court, the Louisiana Supreme Court, or the United States Court of Appeals for Fifth Circuit offers clear guidance on this issue, Defendants cannot be said to be "clearly on notice" of the unconstitutionality of LSA – R.S. § 14:47 as applied to the facts in this case, and thus qualified immunity must apply.

More importantly, however, assuming in *arguendo* that *Anderson* may be relied upon for purposes of qualified immunity, which Defendants deny, it does not apply to the case at bar. *Anderson* involved the prosecution of an individual under LSA – R.S. § 14:47 for Facebook posts criticizing the sheriff and the president of the Levee and Conservation District Board of Commissioners and questioning the use of public funds. The sheriff holds an elected position, and the president is appointed by the Governor of Louisiana. Both allegedly defamed parties in *Anderson* are clearly political officials engaged in high level policy-making functions. Contrary to the assertions made by Plaintiff, Jerry Rogers, in this case, *Anderson, supra,* is not a "nearly-identical case" to this matter.

The defamed detective in the present case, Daniel Buckner, did not acquire his position through an election, nor through a gubernatorial appointment.  Further, as simply a detective, he has *no* policy-making role.  Indeed, his role is much closer to that of the defamed parties in the cases of *State ex. rel. G.J.G.,*[111] and *Huxen,*[112] *supra*, than the individuals involved in *Anderson*. Additionally, the individual accused of defamation in *Anderson* made her comments and concerns publicly available, and the court found that her speech amounted to an "expression on public issues – namely, the expenditure of public funds on a public entity's insurance contracts."[113] Her comments did not anonymously target the sister of a murder victim and they did not interrupt that

---

[111] *State ex. rel. G.J.G.,* 19-768 (La. App. 3 Cir. 03/04/20);
[112] *Huxen v. Villasenor,* 01-288 (La. App. 5 Cir. 9/25/01); 798 So. 2d 20
[113] *Anderson,* 2017 U.S. Dist. at *19.

same victim's homicide investigation, the severity of which must not be overlooked.  The facts in *Anderson* in fact stand in fairly stark contrast to those in this case.

In sum, the ruling in *Anderson* did not create any newly protected right under LSA – R.S. § 14:47. Even if *Anderson* would have created a new right, the district court's holding was not sufficient to put Defendants on notice that such a right existed, and the *Anderson* case itself is not factually similar enough to govern the present matter. Accordingly, any reliance on *Anderson* is misplaced.

### E.   Both the Official Capacity and Individual Capacity Claims Against Sheriff Randy Smith Should be Dismissed

#### a.   Official Capacity Claims Against Sheriff Smith Should be Dismissed

As mentioned *supra*, Sheriff Smith is sued in both his individual and official capacities.[114] A suit against a government official in his official capacity "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent."[115]  "It is *not* a suit against the official personally, for the real party in interest is the entity."[116] "[A] plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself."[117]

"[E]very sheriff in Louisiana is a political subdivision unto himself, and there is no such thing as a 'Parish Sheriff's Department' or 'Parish Sheriff's Office.'"[118]  Sheriff Smith is, for all intents and purposes, the "political subdivision.'  Thus, "official capacity claims" against Sheriff

---

[114] R. Doc. 14, ¶ 9.
[115] *Ky. v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n. 5).
[116] *Id*. at 166.
[117] *Id*.
[118] *Powe v. May*, 2003 U.S. App. LEXIS 28628, pp. 2–3 (5th Cir. 2003) (citations omitted); *see also Cozzo v. Tangipahoa Parish Council-President Gov't*, 279 F. 3d 273, 283 (5th Cir. 2002) (same proposition).

Smith are really claims against the St. Tammany Parish Sheriff—a political subdivision of the State of Louisiana.[119]

Here, in order to recover, Plaintiff would have to demonstrate facts sufficient to hold the entire entity – by agency of Sheriff Smith – liable. Plaintiff's Complaint does not prove, nor does it even allege, facts sufficient to recover against the government entity itself (i.e. St. Tammany Parish Sheriff Randy Smith in his official capacity). Plaintiff merely states that, "Sheriff Smith is the decision maker and highest authority as Sheriff of the St. Tammany Parish Sheriff's Office."[120] This does not make him officially liable. Plaintiff then states that Jerry Rogers was arrested "at the direction of Sheriff Randy Smith" and that "Sheriff Smith ordered Chief Danny Culpeper to have Jerry Rogers arrested."[121] As already explained, both herein and in Sheriff Smith's sworn affidavit, these statements are simply untrue, and Plaintiff has no evidence to support these conclusory allegations.

The United States Supreme Court has said that "official policy must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983."[122] In other words, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."[123]

The Fifth Circuit has defined official policy or custom as:

1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

---

[119] *See* La. Const. art V, § 27; LSA – R.S. § 13:5102.B.
[120] R. Doc. 14, ¶ 9.
[121] R. Doc. 14, ¶ 23.
[122] *Polk County v. Dodson*, 454 U.S. 312, 326 (1981) (quoting *Monell*, 436 U.S. at 694).
[123] *Monell*, 436 U.S. at 694.

2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.

Johnson, 958 F. 2d at 94 (citation omitted).

Contrary to the law in *Polk* and *Monell*, here, "official policy or custom" was not the "moving force of the [alleged] constitutional violation," because no such policy or custom exists, nor was it even factually alleged. Plaintiff presents no evidence of "a persistent, widespread practice of…officials or employees, which is so common and well settled as to constitute a custom that fairly represents [official] policy."[124] Plaintiff simply states that "Sheriff Smith's treatment of Jerry Rogers is not unique; the Sheriff has exhibited a pattern of antipathy for First Amendment rights."[125] This is nothing more than a baseless and conclusory statement, and Plaintiff's supporting comments to this allegation are utterly immaterial. The pleading of "labels and conclusions" as to *Monell* liability are insufficient to survive a motion for summary judgement under *Twombly*.[126] Plaintiff has therefore failed to establish liability of a government body under § 1983, summary judgment on this matter should thus be granted, and all official capacity claims against Sheriff Smith should be dismissed with prejudice.

### b. Individual Capacity Claims Against Sheriff Smith Should be Dismissed

In order to survive summary judgment, Plaintiff's factual allegations must also sufficiently evidence the alleged federal and state civil rights violations against by Sheriff Smith in his individual capacity. In fact, Plaintiff must satisfy a *heightened* pleading standard to state a claim

---

[124] *Johnson*, 958 F. 2d at 94.
[125] R. Doc. 14, ¶ 41.
[126] *See* **Error! Main Document Only.***Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("…a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do….")

against Sheriff Smith in his individual capacity.[127] Plaintiff, however, can provide no evidence to demonstrate Sheriff Smith's personal involvement in bringing about his alleged injuries. Sheriff Smith's only involvement in this case was his supervisory role as Sheriff of St. Tammany Parish – he had no hands-on involvement in the events giving rise to Plaintiff's claims. He took no part in the investigation of Jerry Rogers, he took no part in the drafting or submission of the affidavit for an arrest warrant, and he took no part in Plaintiff's actual arrest.[128] Thus, the individual capacity claims filed against Sheriff Smith, in his individual capacity, should also be dismissed.

Sheriff Smith, like Defendants Culpeper and Canizaro, had no knowledge that there were potential constitutionality issues with the statute (LSA – R.S. § 14:47) as it applied to the facts of the Jerry Rogers investigation. Sheriff Smith relied solely on his qualified subordinate officers to conduct this investigation.[129] When the facts of Plaintiff's case were presented to Sheriff Smith by Culpeper, Sheriff Smith relied on the experience and expertise of his criminal investigators and stated, "if there is evidence of a crime, put it before a judge."[130] Plaintiff's claim that Sheriff Smith "directed" that Rogers be arrested for criminal defamation is wholly unsupported by any evidence in this case.[131] Sheriff Smith merely supported the decision of his subordinate officers to put the matter before a judge if they believed the Plaintiff had violated the law.

In addition to Plaintiff's failure to state a plausible claim against Sheriff Smith for purposes of liability under 42 U.S.C. § 1983, the Sheriff cannot be held vicariously liable under § 1983 for alleged civil rights violations committed by his subordinates.[132] Therefore, even if, in *arguendo*, the other two Defendants are found to have violated some alleged right of the Plaintiff, Sheriff

---

[127] *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002).
[128] *See* Affidavit of Sheriff Randy Smith at ¶ 20 attached hereto as **Exhibit "N."**
[129] *Id*. at ¶ 21.
[130] *See* pages 51-52 of Captain Keith Canizaro deposition transcript attached hereto as **Exhibit "O."**
[131] R. Doc. 14, ¶ 20.
[132] *Taylor v. Nelson Coleman Corr. Ctr.*, 2010 U.S. Dist. LEXIS 48117, at *7 (E.D. La. Apr. 22, 2010).

Smith cannot be held vicariously liable for those actions. For these reasons, summary judgment should be granted dismissing Sheriff Smith in his individual capacity.

### F.   Plaintiff's Official Capacity Claims Against Dany Culpeper and Keith Canizaro Must be Dismissed as Redundant

Plaintiff has sued Sheriff Smith in his official capacity, as well as having sued Defendant Culpeper and Defendant Canizaro in their official capacities.[133] When the Sheriff is a defendant in litigation, as in this case, "claims against specific individuals in their official capacities are redundant, and it is appropriate to dismiss them."[134] Because a parish sheriff's office cannot be sued under Louisiana law, the Sheriff, in his official capacity, assumes liability for alleged constitutional violations committed by his office.[135]  Therefore, all claims against Danny Culpeper and Keith Canizaro in their official capacities must be dismissed.

### G.   Plaintiff's State Law Claims Fail

Plaintiff alleges claims for violations of the Article 1, § 7 of the Louisiana Constitution, specifically, malicious prosecution, unlawful seizing, detaining, and arresting, and abuse of process. Plaintiff's malicious prosecution claim has already been dismissed by this Court.[136] Plaintiff's claim under Article 1, § 7 of the Louisiana Constitution is duplicative of his claim under the Fourth Amendment, which, for the reasons set forth above, lack any substance.

With respect to Louisiana state-law claims for false arrest, the Fifth Circuit has stated that "[b]ecause Fourth Amendment principles underpin Louisiana law relating to false arrests, the Fourth Amendment inquiry is applicable to both [plaintiff's] federal and state law claims."[137]

---

[133] R. Doc. 14, ¶ 9-11.
[134] *Donahue v. Strain*, 2017 U.S. Dist. LEXIS 122069, *41 (E.D. La. 2017) (Morgan, J.) *citing Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001).
[135] *Id* at 40.
[136] R. Doc. 19.
[137] *O'Dwyer v. Nelson*, 310 Fed. Appx. 741, 745 n. 4 (5th Cir. 2009).

Thus, for the same reasons provided in Defendant's Fourth Amendment analysis above, Plaintiff's state false arrest claim must be dismissed.

With respect to Louisiana state-law claims for abuse of process, there are two elements: "an ulterior purpose" and "a willful act in the use of the process not proper in the regular conduct of the proceeding."[138] It involves "the misuse of a process already legally issued whereby a party attempts to obtain some result not proper under law."[139] Plaintiff's allegations of abuse of process fail on both prongs of the test.

First, Plaintiff has failed to show *any* ulterior motive. The deposition testimony clearly contradicts Plaintiff's unsupported claims of personal animus against him. While Plaintiff points out that "ulterior motive is presumed when there is a finding of an irregular use of process,"[140] the process of this case was standard, not irregular, and Plaintiff can present no evidence to the contrary. Plaintiff's actions imperiled an ongoing murder investigation, which sparked the subsequent investigation that resulted in his arrest. The procedures followed by the St. Tammany Parish Sheriff's Office in response to Plaintiff's intentional attempts to insert himself into an open murder investigation represent the exact response that people expect in this type of situation. It goes without saying that the integrity of an ongoing murder investigation must be protected, and the efforts to protect this investigation by the Sheriff's Office in this case is an obvious duty which presents no ulterior motive.

Further, "[a]n ulterior motive or bad intention in using the process is not alone sufficient, the bad intent must have culminated in the abuse, *for it is the latter which is the gist of the action.*"[141] Even <u>assuming</u> that Plaintiff is able to show an ulterior motive, he cannot demonstrate

---

[138] *Stark v. Eunice Superette, Inc.,* 457 So.2d 291, 295 (La. App. 3 Cir. 1984).
[139] *Id.*
[140] R. Doc. 14, ¶ 61.
[141] *Weldon v. Republic Bank,* 414 So.2d 1361, 1365 (La. App 2 Cir. 1982).

any evidence of actual abuse. It is "well-settled" that a "valid arrest warrant is a shield against police liability."[142]

Finally, Plaintiff claims that Defendant Canizaro also committed abuse of process when he testified that one of Krentel's family members sought police help in identifying the unknown author of the emails. Plaintiff offers absolutely no evidence in support of this claim beyond his own "information and belief."[143] Stating that one has information and belief in something does not make it so. Contrary to Plaintiff's claim, Detective Buckner has testified that the victim's relative, Gina Watson, brought the emails to his attention out of concern for the email's content and that they were sent anonymously by the Plaintiff.[144] Buckner further testified that Gina Watson "thought it was ridiculous that [Jerry Rogers] was inserting himself into [Nannette Krentel's] investigation" and that he (Rogers) was establishing himself as a law enforcement officer.[145]

Though basing a probable cause affidavit on false information is certainly abuse of process, such a claim is wildly unsupported in this case. At every step in their investigation, Defendants followed proper procedure. Accordingly, as *no* irregular process was employed by Defendants and there was no ulterior motive, Plaintiff's abuse of process claims therefore must be dismissed.

### H.   This Court Should Decline to Exercise Jurisdiction Over Any Remaining State Law Claims

As noted above, in addition to the numerous § 1983 claims filed by Plaintiff, Plaintiff has also asserted various claims under Louisiana State law, including claims of a violation of the

---

[142] *Deville v. Jefferson Parish Sheriff's Dep't*, 99-1629 (La. App. 3 Cir. 05/03/00); 762 So. 2d 641, 642.
[143] R. Doc. 14, ¶ 65.
[144] Affidavit of Detective Daniel Buckner at ¶ 6 attached hereto as **Exhibit "B**;" *see also* page 20 Detective Buckner deposition transcript attached hereto as **Exhibit "P."**
[145] Affidavit of Detective Daniel Buckner at ¶ 6 attached hereto as **Exhibit "B**;" *see also* page 21 Detective Buckner deposition transcript attached hereto as **Exhibit "Q."**

Louisiana Constitution.[146]  Defendants respectfully suggest that they are entitled to summary judgment to dismiss ***all*** of Plaintiff's claims, including Plaintiffs' § 1983 and state law claims.  In the event, however, that this Honorable Court dismisses Plaintiffs' § 1983 claims, but not all of Plaintiff's state law claims, Defendants respectfully request that this Court decline to exercise supplemental jurisdiction over any of the remaining state law claims. Defendants' request is based on 28 U.S.C. § 1367(c), which permits a court, in its discretion, to decline to exercise supplemental jurisdiction over a claim when the court has dismissed all claims over which it has original jurisdiction.

## III.   <u>CONCLUSION</u>

For those reasons set forth above, and as evidenced in the accompanying statement of uncontested material facts and the cited materials, no genuine issue of material fact exists, qualified immunity should be applied to Defendants, and Plaintiff's entire case should be dismissed as a matter of law. Plaintiff has failed to show the violation any protected right that is beyond debate. Defendants properly sought and procured an arrest warrant, the supporting facts of which Plaintiff does not dispute. Plaintiff has produced no evidence of any ulterior motive or other improper motivating factor for his arrest, and Defendants' actions were taken to protect an ongoing murder investigation that Plaintiff was attempting to disrupt. Accordingly, Defendants are entitled to qualified immunity, and Plaintiff's case should be dismissed as a matter of law.

---

[146] R. Doc. 14, ¶¶ 51-65.

Respectfully submitted,

MILLING BENSON WOODWARD L.L.P.

*s/ Chadwick W. Collings*
_____
**CHADWICK W. COLLINGS, T.A.**      **# 25373**
**68031 Capital Trace Row**
**Mandeville, Louisiana 70471**
**Telephone:      (985) 292-2000**
**Facsimile:      (985) 292-2001**
ccollings@millinglaw.com
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana on February 8, 2022, by using the CM/ECF system, which system will send a notice of electronic filing to appearing parties in accordance with the procedures established.

*s/ Chadwick W. Collings*
_____
**Chadwick W. Collings**