UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JERRY ROGERS, JR., <br> Plaintiff | * <br> * <br> * | CIVIL ACTION <br><br> NO. 20-517 |
| VERSUS | * <br> * <br> * | <br> JUDGE MILAZZO |
| RANDY SMITH, INDIVIDUALLY <br> And IN HIS OFFICIAL CAPACITY <br> AS THE SHERIFF OF ST. TAMMANY <br> PARISH, DANNY CULPEPER, AND <br> KEITH CANIZARRO <br> Defendants | * <br> * <br> * <br> * <br> * <br> * | MAG. JUDGE DOUGLAS <br><br> JURY DEMAND |

****************************************************************************

## AFFIDAVIT

STATE OF LOUISIANA

PARISH OF ST. TAMMANY

    **BEFORE ME,** the undersigned notary public, personally came and appeared:

### CAPTAIN KEITH A. CANIZARO

who being duly sworn, did depose and state:

1. I am of the age of majority and a resident of St. Tammany Parish and a citizen of the State of Louisiana.

2. In 2006 I began my employment with the St. Tammany Parish Sheriff's Office in Criminal Investigations Division as a Detective.

3. In 2016, I was promoted to Sergeant in the in Criminal Investigations Division in the St. Tammany Parish Sheriff's Office.

EXHIBIT E

4. In September of 2020, I was promoted to Lieutenant in the Criminal Investigations Division in the St. Tammany Parish Sheriff's Office.

5. I am currently employed as a Captain over Criminal Records by St. Tammany Parish Sheriff Randy Smith, a position I have held since March 9, 2021.

6. At some point in 2019, during the course of the homicide investigation into the death of Nanette Krentel, I was made aware that suspicious emails were being sent to the victim's sister, Kim Watson.[1]

7. To the best of my knowledge and understanding, information about the anonymous emails came to the Sheriff's Office through one of the victim's family members, asking that the Sheriff's Office help locate the source of the emails.

8. As these emails involved an ongoing homicide investigation, the St. Tammany Parish Sheriffs' Office's Criminal Investigations Division began investigating the source of the emails.

9. To the best of my knowledge and understanding, the investigation ultimately determined that the IP address of the anonymous emails was linked to the account belonging to the Plaintiff, Jerry Rogers.

10. To the best of my knowledge and understanding, on August 13, 2019, Lieutenant Alvin Hotard and Detective Daniel Buckner traveled to Plaintiff's workplace in the Hale Boggs Building in New Orleans, Louisiana, to interview Plaintiff about the anonymous emails sent to Ms. Krentel's family.

---

[1] A copy of these emails sent by Jerry Rogers is attached hereto as Exhibit 1 *in globo*.

11. To the best of my knowledge and understanding, during that interview, Plaintiff Rogers admitted to sending the emails and further admitted that he obtained information about the investigation from a (then) current STPSO employee.

12. On August 15, 2019, I was assigned to the Major Crimes Unit of the St. Tammany Parish Sheriff's Office, and was tasked with the investigation regarding possible obstruction of justice relating to Nannette Krentel's open homicide investigation. That investigation uncovered insufficient facts to charge Plaintiff with obstruction of justice, but it did reveal sufficient evidence to charge Plaintiff with criminal Defamation under LSA – R.S. § 14:47.[2]

13. In applying the facts of Plaintiff's case to the criminal elements provided by LSA – R.S. § 14:47, I determined that there was enough probable cause to request an arrest warrant. Specifically, plaintiff alleged in these emails, among other things, that the lead detective in the Krentel homicide investigation, Daniel Buckner, was a "stone cold rookie," and that "Buckner is CLUELESS! No experience."

14. Several days prior to submitting the affidavit for the warrant of arrest for Jerry Rogers to the Court, I along with other investigative supervisors attended a meeting with Assistant District Attorney Colin Sims and other staff members of the District Attorney's Office for 22nd Judicial District Court, in which he stated he had some concerns about the possible unconstitutionality of the LSA – R.S. 14:47 and that he believed a police officer may be a public official. At no time did he state that LSA – R.S. 14:47 was definitively unconstitutional, only that he was concerned. We shared with him our view that there was no case directly on point saying it was

---

[2] See the attached St. Tammany Parish Sheriff's Office Investigative Report regarding Jerry Rogers, attached hereto as Exhibit 2

unconstitutional under these circumstances, and he did not disagree with me on this point. Mr. Sims stated that his office would look into it further and get back us.

15. After several days had passed following this meeting, my superior officer at the time, Major Daniel Culpeper, authorized me to submit an affidavit for an arrest warrant through the common procedures to the one of the judges in the 22nd Judicial District Court for the Parish St. Tammany.

16. On September 16, 2019, believing LSA – R.S. § 14:47 to be valid and enforceable, I authored an affidavit in support of an arrest warrant for Plaintiff. The affidavit contained entirely factual information supporting probable cause to arrest Jerry Rogers, Jr.

17. In submission of that affidavit, I acted under a reasonable belief based on prior knowledge and experience that LSA – R.S. § 14:47 was constitutional in this context.

18. Indeed, I had experience with the application of LSA – R.S. § 14:47 in other cases. Specifically, I was the reviewing officer in a 2017-2018 incident in which the defaming party, Amy Baudot, plead guilty to criminal Defamation charges under LSA – R.S. § 14:47 for defamatory comments against John Plunkett an active-duty Colonel in the Army National Guard.[3]

19. To the best of my knowledge and understanding, the constitutionality of LSA – R.S. § 14:47 was never raised by District Attorney's Office for 22nd Judicial District Court, and that no contest plea was ultimately accepted by the Court in that matter.

---

[3] See the attached St. Tammany Parish Sheriff's Office Investigative Report regarding Amy Baudot, attached hereto as Exhibit 3

20. I was also the reviewing officer in a 2017-2019 case in which the defaming party (Scott Sewell) was charged with criminal Defamation under LSA – R.S. § 14:47 for defamatory comments against a former St. Tammany Parish Sheriff's Office employee, Shane Wilkinson.

21. The reporting officer whom I supervised in the Sewell/Wilkinson incident was Officer Justin W. Parker.[4]

22. To the best of my knowledge and understanding, the constitutionality of LSA – R.S. § 14:47 was not raised by anyone in the Sewell/Wilkinson case.

23. To the best of my knowledge and belief, all of the allegations of fact contained in my affidavit of arrest were accurate.

24. Other than the "concerns" raised by Mr. Sims, I had no actual knowledge that LSA – R.S. 14:47 as applied to the facts of the Jerry Rogers investigation was unconstitutional.

**SWORN TO AND SUBSCRIBED ON THIS 1ST DAY OF FEBRUARY, 2022.**

Witnesses:

_Victory Cochran_
Print Name: VICTORY COCHRAN

_[signature]_
Print Name: Michaela C. Boudreaux

**CAPTAIN KEITH A. CANIZARO**

_[signature]_
**NOTARY PUBLIC**

Chadwick W. Collings
Notary Public, State of Louisiana
My Commission is for Life
Bar Roll # 25373

---

[4] See the attached St. Tammany Parish Sheriff's Office Investigative Report regarding Scott Sewell, attached hereto as Exhibit 4