# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **JERRY ROGERS, JR.,** | * | **CIVIL ACTION** |
|     **Plaintiff** | * | |
| | * | **NO. 20-517** |
| **VERSUS** | * | |
| | * | **JUDGE MILAZZO** |
| | * | |
| **RANDY SMITH, INDIVIDUALLY** | * | **MAG. JUDGE DOUGLAS** |
| **And IN HIS OFFICIAL CAPACITY** | * | |
| **AS THE SHERIFF OF ST. TAMMANY** | * | **JURY DEMAND** |
| **PARISH, DANNY CULPEPER, AND** | * | |
| **KEITH CANIZARRO** | * | |
|     **Defendants** | * | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

**MAY IT PLEASE THE COURT:**

    **NOW COME**, Defendants, St. Tammany Parish Sheriff Randy Smith ("Sheriff Smith"), Danny Culpeper and Keith Canizaro, each in their official and individual capacities, who respectfully submit this memorandum in opposition to Plaintiff's motion for partial summary judgment.

    A lie of omission is still a lie, and Plaintiff's numerous mischaracterizations of testimony, often very clearly taken out of context in support of his motion for partial summary judgment, is nothing more than a collection of lies of omission.  They do a disservice to this Honorable Court and to our search for the truth.  Defendants will now expose and fully set out each of these lies of omission as follows:

## I. BRIEF FACTUAL BACKGROUND

Plaintiff filed the instant action on February 13, 2020, alleging violations of his civil rights under the laws of the United States and Louisiana.[1] The facts of this case start with the death of Nanette Krentel on July 14, 2017, in St. Tammany Parish. In the wake of that homicide investigation, detectives were made aware that anonymous emails were being sent to the victim's family. Thereafter, a subsequent investigation was opened to look into the potential obstruction of justice caused by these emails. The emails were obtained by the Sheriff's Department under a search warrant citing violation 14:0000, which is a common placeholder used by law enforcement officers when the particular crime at hand does not have an official title associated with it.[2] The emails claimed that the lead detective on the homicide investigation, Detective Buckner, was "clueless" and accused him of being a "stone cold rookie," further suggesting that "anything is better than" Detective Buckner and that he had "no experience."[3]

While investigating the source of these emails, the Criminal Investigation Division, led by Danny Culpeper, was able to link a Federal Government IP address used to send portions of the emails with Plaintiff, Jerry Rogers.[4] The anonymous emails sent by Jerry Rogers to the grieving family of a murder victim were not an attempt to engage in public debate about a public official. During an interview at Plaintiff's workplace on August 13, 2019, Plaintiff admitted to sending the emails and further admitted that he obtained information about the investigation from a (then) current STPSO employee.[5]

---

[1] R. Doc. 1.
[2] See Buckner Dep. p. 23:7-16, attached hereto as **Exhibit Y**.
[3] *Id.* at ¶ 8, *see also* Affidavit for Arrest Warrant of Jerry Rogers attached as **Exhibit A**; *See also* the attached anonymous emails from Jerry Rogers, attached as "1" to the Affidavit of Canizaro attached hereto as **Exhibit B.**
[4] *See* Affidavit of Culpeper attached hereto as **Exhibit C**.
[5] *See* Affidavit of Detective Daniel Buckner at ¶ 11 attached hereto as **Exhibit D**.

Defendant, Sergeant Keith Canizaro, assigned to the Major Crimes Unit of the St. Tammany Parish Sheriff's Office, was tasked with investigating the emails, which revealed sufficient evidence to charge Plaintiff with criminal Defamation under LSA – R.S. § 14:47.[6] On September 3, 2019, Defendant Canizaro and Lt. Alvin Hotard received an email from a fellow STPSO officer, Grey Thurman.[7] This email contained the *McLin v. Ard* case, in which the Fifth Circuit held LSA – R.S. § 14:47 to be unconstitutional in some circumstances. Canizaro understood that some of these unconstitutional circumstances included use of the statute against public officials, but what remained unclear was whether the facts of the *McLin v. Ard* case applied to the facts of the Jerry Rogers investigation, and whether Detective Buckner was, for all intents and purposes, deemed a public official. *McLin v. Ard* was again discussed during the September 13, 2019, meeting with the DA's office, but the same ambiguities remained at the conclusion of that meeting – no definite answers were provided.

On the morning of September 16, 2019, Defendant Culpeper called ADA Collin Sims to follow up regarding the potential arrest of Jerry Rogers.[8] Sims told Culpeper that the DA's office still had not met to discuss the Rogers matter.[9] After still receiving no official position from the DA's office, the Jerry Rogers investigation was effectively concluded, and Defendants decided to put the matter before a judge.[10] Later that morning, Sims and Culpeper had another quick conversation in which they tossed around the facts of Jerry Rogers's case and the application of the criminal defamation statute.[11] When Culpeper informed Sim's of the STPSO's decision to submit an affidavit for an arrest warrant to a judge, Sims cautioned Culpeper that he still thought the arrest

---

[6] *See* the attached St. Tammany Parish Sheriff's Office Investigative Report regarding Jerry Rogers, attached hereto as "2" to the Affidavit of Canizaro attached hereto as **Exhibit B.**
[7] R. Doc. 158-8, Email from Detective Grey Thurman dated September 3, 2019.
[8] *See* Culpeper Dep. p. 47:11-17, attached hereto as **Exhibit E**.
[9] *Id*.
[10] *Id.* at lines 18-22.
[11] *See* Culpeper's Dep. p. 48:2-10, attached hereto as **Exhibit F**.

would be unconstitutional, but he did not instruct Defendants not to make the arrest, nor could he provide any law on point.[12]

Later that day, Sergeant Canizaro submitted an affidavit requesting an arrest warrant for Plaintiff for the charge of Defamation, LSA – R.S. § 14:47.[13] The warrant was signed by a judge on the same day.[14] Plaintiff was arrested by the St. Tammany Parish Sheriff's Office and then released a few hours later.[15] Though that statute has since been repealed, there is lingering debate about whether the statute was constitutional at the time of Plaintiff's arrest. No case has ever ruled LSA – R.S. § 14:47 unconstitutional in its entirety, rather, courts have merely limited its scope in certain areas. Plaintiff's motion contains numerous issues of contested material fact, and thus, Plaintiff's motion for partial summary judgment on his false arrest and false imprisonment claims should be denied.

## II. DISCUSSION

### A. Standard on Motion for Summary Judgment

Summary judgment is proper only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[16] When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[17] All reasonable inferences are drawn in favor of the non-moving party.[18] In order to grant summary

---

[12] *Id.*
[13] *See* Canizaro's Dep., p. 31, attached hereto as **Exhibit G.** This statute was repealed by Acts 2021, No. 60, §1.
[14] *See* Warrant of Arrest # 417325 signed by the Honorable Raymond Childress on September 16, 2019, attached hereto as **Exhibit H.**
[15] R. Doc. 14, ¶ 24.
[16] Fed.R.Civ.P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).
[17] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir.2008); *Courteaux v. Federal Emergency Management Agency*, 2014 WL 273146 (E.D. La. 2014).
[18] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

judgment, the Court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party."[19]

When a qualified immunity defense is raised as part of a summary judgment motion, the Plaintiff bears the burden of proof of showing that defendants are not entitled to the defense.[20] Qualified immunity is an affirmative defense that protects public officials who are sued in their individual capacities for purported violations of constitutional rights.[21] A government official asserting qualified immunity must only show that the alleged wrongful conduct occurred while he was acting in his official capacity and within the scope of his discretionary authority,[22] which shifts the burden of proof to the Plaintiff to put forth sufficient evidence to negate the assertion of qualified immunity.[23] The Plaintiff, bearing the burden of negating the defense, cannot rest on conclusory allegations and assertions, but must demonstrate genuine issues of material fact regarding the reasonableness of the official's conduct.[24]

### B. Insufficient Notice

#### a. The Meeting with the DA on September 13, 2019, did Not Produce a Definitive Answer, Nor Did it Serve to Put Defendants on Notice

Plaintiff agues various points in which he claims it was established that Defendants were sufficiently on notice of the alleged unconstitutionality of LSA – R.S. 14:47. Plaintiff points out that at the September 13, 2019, meeting with the DA's office regarding the potential arrest of Jerry Rogers, the officers were warned that an arrest under LSA – R.S. 14:47 <u>could</u> be unconstitutional. At this meeting, the *McLin v. Ard* case was discussed in weighing the potential unconstitutionality of the defamation statute. At no time, however, were Culpeper or Canizaro

---

[19] *Delta*, 530 F.3d at 399.
[20] *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013).
[21] *Harlow v. Fitzgerald*, 102 S.Ct. 2727, 2738 (1982).
[22] *Beltran v. City of El Paso*, 367 F.3d 299, 303 (5th Cir. 2004).
[23] *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009) (emphasis added).
[24] *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005).

unequivocally informed that under the facts and evidence established in the Jerry Roger's investigation, that his arrest would be unconstitutional, nor were the officers ever instructed not to make an arrest. Every opinion about the matter was stated in general terms about other cases and holdings, and Culpeper and Canizaro repeatedly clarified that the assistant district attorneys' comments were strictly in regard to prior decided cases – with distinguishable facts than those of the Jerry Rogers investigation.

Plaintiff notes that the DA's office specifically "*advised*" that they "*felt*" that a police officer is a public official and for this reason, there could be "*potential*" constitutional problems with arresting Jerry Rogers.[25] These statements are not definitive and simply relay passive and subjective sentiments. The DA's office did not provide the Defendants with a written position on the matter until <u>after</u> the arrest was made.[26] After leaving that meeting, Defendants took the comments from the DA's employees for what they were, opinions at best. But, having a more thorough grasp of the facts at hand, and having received no definite instruction otherwise, Defendant's nevertheless used their judgment and discretion and presented the matter to a neutral magistrate as is their common procedure.[27]

Moreover, Defendants respectfully suggest to this Honorable Court that *even if* ADA Sims had furnished the officers with a more authoritative opinion on the matter in writing – which he did not do until after the arrest warrant was issued – such an opinion would still fail to be binding on the officer's in carrying out their obligations as law enforcement officers. A word of caution offered during an informal meeting is not binding legal authority, and the informed, educated decision of the Defendants to act contrary to the ADA's mere word of caution is not enough to

---

[25] *See* Plaintiff Memorandum in Support of Partial Summary Judgment, p. 5.
[26] *See* Culpeper Dep. p. 53:8-11, attached hereto as **Exhibit I**.
[27] *See* Affidavit of Canizaro, ¶ 15, attached hereto as **Exhibit B**.

establish or conclude that the officers acted unreasonably. The Defendants, furthermore, were never under an obligation to consult with the DA's office at all. The fact that they did so is evidence of their good faith in trying to gather as much information as possible prior to submitting this matter to a judge.

Plaintiff also notes that the Defendants did not consult with other lawyers outside of the DA's office regarding this matter. The Defendants were under no obligation to do so, and the fact that they did not consult with other lawyers on the matter is of no moment and does not serve to hold their actions unreasonable.

Plaintiff's Memorandum in Support of Partial Summary Judgment contains an important factual inconsistency. In an attempt to negate the testimony of Defendant Canizaro, who stated that the DA's office never gave a "definitive answer,"[28] Plaintiff's Memorandum claims that Captain Gaudet's recollection was slightly different.[29] Plaintiff states that, "[Captain Gaudet] **recalled** that 'St. Tammany District Attorney's Office, Chief of Trials, Collin Sims, indicated that La. R.S. 14:47 was declared unconstitutional as applied to the investigation and that charges based upon that statute should not be pursued." Captain Gaudet's Affidavit, however, states that he was, "**informed** that St. Tammany District Attorney's Office, Chief of Trials, Colin Sims, indicated that La. R.S. 14:47 was declared unconstitutional as applied to the investigation and that charges based upon that statute should not be pursued."[30] In addition to Plaintiff's claim regarding Captain Gaudet's statement being inconsistent with Gaudet's own affidavit, it is also inconsistent with the affidavits of Defendants Canizaro and Culpeper, who have each testified that the DA's office did not give a definitive answer during the September 13, 2019, meeting.

---

[28] *See* Plaintiff Memorandum in Support of Partial Summary Judgment, p. 6, *see* also Canizaro Dep. at 94:14-19, attached hereto as **Exhibit J**.
[29] *See* Plaintiff Memorandum in Support of Partial Summary Judgment, p. 6.
[30] *See* Affidavit of Captain Gaudet ¶ 4, attached hereto as **Exhibit K**.

This alone creates an issue of material fact which Defendants respectfully aver should serve to defeat Plaintiff's motion for partial summary judgment.

Finally, Plaintiff's Memorandum in Support of Partial Summary Judgment contains another blatant misrepresentation of the facts. Specifically, Plaintiff states, *"Sims said explicitly that he 'he thought it would be unconstitutional to arrest Jerry Rogers.' Sims' statement was so clear that Culpeper later told Sims that he wished Sims 'would have kept [his] opinions to [him]self.'"*[31] This is a blatant misrepresentation. The actual transcript of Defendant Culpeper's deposition, from which Plaintiff cites as having taken this testimony, is as follows:

> "Q: In a conversation with Collin Sims, did you at any point say anything to the effect of, if you were going to recuse yourself, I wish you would have kept your opinions to yourself?
>
> A: Yeah. That did come up, but it did not come up on that same day. That came up two days later. I believe it was three days later where Collin Sims had sent a letter to the sheriff's department. It was well ***after*** the fact of the arrest of Jerry Rogers… He was basically recusing himself and giving an opinion all on the same letter… I said, 'You are recusing yourself on a letter, but yet you are giving your opinion on the same letter… I thought if you recuse yourself, you don't put an opinion down.'"[32]

Both the inconsistency created by Plaintiff's recitation of Gaudet's alleged statements, and Plaintiff's misconstrued testimony of Defendant Culpeper create issues of material fact in this matter. Plaintiff seeks to tarnish the Defendants' good faith actions by altering the course and content of statements made. For this reason, Defendants, again, respectfully aver that Plaintiff's motion for partial summary judgment should be denied.

---

[31] *See* Plaintiff Memorandum in Support of Partial Summary Judgment, p. 8.
[32] *See* Culpeper Dep. p. 53:1-20, attached hereto as **Exhibit I**.

### b. Case Law Does Not Provide a Definitive Answer, Nor Did it Serve to Put Defendants on Notice

At the outset, the first case that Plaintiff cites, *New York Times v. Sullivan*,[33] is a <u>civil</u> defamation case, which is completely misleading in this context. In the second case that Plaintiff cites, *Garrison v. Louisiana*,[34] the U.S. Supreme Court held that the government is constitutionally <u>*limited*</u> in its power to impose criminal sanctions for criticism of public officials,[35] <u>not</u> that the government is *prohibited from* imposing criminal sanctions in all cases.

In the next case cited, *State v. Snyder*,[36] the Louisiana Supreme Court concluded that it is for the Legislature to correct the "constitutional infirmity," or "overbroad application," of LSA – R.S. 14:47, further "holding §§ 14:47-49 to be unconstitutional insofar as they attempt to punish **public expression and publication** concerning public officials, public figures, and private individuals engaged in public affairs"[37] (as opposed to anonymous emails). This holding is once again another limiting construction of the statute at issue, but it does not render the statute entirely unconstitutional under all circumstances. Rather, this holding shifts the application of the statute to a case-by-case determination, the responsibility for which should be borne by lawyers and judges, not police officers.

Though the criminal defamation statute's partial unconstitutionality was no secret at the time of Jerry Rogers's arrest, its unconstitutionality as to the facts in this case was, and remains, debatable. Plaintiff submits a screenshot in his motion for summary judgment which includes a Note on the State Legislature's website suggesting that R.S. 14:47 is unconstitutional, but 1.) there is no indication of when this Note was posted to the Legislature's website, 2.) the Note does

---

[33] *New York Times v. Sullivan*, 376 U.S. 254 (1964).
[34] *Garrison v. Louisiana*, 379 U.S. 64 (1964).
[35] *See* Plaintiff Memorandum in Support of Partial Summary Judgment, p. 15.
[36] *State v. Snyder*, 304 So.2d 334 (La. 1974).
[37] *See* Plaintiff Memorandum in Support of Partial Summary Judgment, p. 16 (emphasis added).

not explain the circumstances under which the statute is unconstitutional, and 3.) Defendants have already testified that they utilized the *Louisiana Criminal Law and Motor Vehicle Handbook* in referencing the statute (as opposed to searching the web for an answer), therefore, this screenshot is far from dispositive.[38]

Plaintiff goes on to reference additional cases from various jurisdictions which purport to establish the criminal defamation statute's unconstitutionality. Aside from the fact that Defendants do not contest the statute's unconstitutionality in some instances, Plaintiff continues to miss the point that none of these cases hold the statute so widely unconstitutional as to render "beyond debate" that it was unconstitutional as to the Defendants' actions, making them clearly unreasonable and rendering Defendants liable to Plaintiff in this case. The defense does not need to prove that the Defendants made the right decision, only that the Defendants, at every step of Jerry Roger's investigation, made *reasonable* decisions.

In further support of their defense, Defendants would direct the court's attention to *State ex. rel. G.J.G.*,[39] the matter of Colonel Plunkett,[40] and the matter of Shane Wilkinson,[41] each of which proves that LSA – R.S. 14:47 has not been held unconstitutional in recent years, in similar cases, in this same judicial district, with Defendant Canizaro of the present matter serving in two of these other named instances.[42]

Finally, in order to succeed in his claim for false arrest, Plaintiff attempts to discredit Defendant's probable cause for arresting Jerry Rogers. False arrest is decided on an objective reasonableness standard, and the probable cause determination likewise depends on the viewpoint

---

[38] *See* Defendant's responses to Plaintiff's Sixth RFP, attached hereto as **Exhibit L**, which clearly indicates that under LSA – R.S. 14:47, there is no mention of the statute being unconstitutional, which again is evidence of this issue being far from "clearly established."
[39] *State ex. rel. G.J.G.*, 19-768 (La. App. 3 Cir. 03/04/20); 297 So.3d 120.
[40] *See* Attachment "3" to Canizaro's Affidavit, attached hereto as **Exhibit B**.
[41] *See* Attachment "4" to Canizaro's Affidavit, attached hereto as **Exhibit B**.
[42] *See* Affidavit of Canizaro ¶¶ 18, 20 attached as **Exhibit B.**

of an objectively reasonable officer. The defense has already put forth abundant evidence to establish the reasonableness of each of the three Defendants actions in this case. Even though Plaintiff was not ultimately prosecuted for criminal Defamation, Defendants broke the chain of causation for false arrest when they presented the relevant facts to the Honorable Judge Raymond Childress who made a judicial determination that that there was probable cause to arrest Jerry Rogers.[43] This was only after Defendants conducted a standard, thorough, investigation into Jerry Rogers, who we would remind this Honorable Court willfully inserted himself into an open homicide investigation. At the time of the arrest, Defendants had probable cause to charge Plaintiff with criminal Defamation, and therefore Plaintiff's motion for partial summary judgment on his false arrest claim should be denied.

### C. Canizaro's Affidavit to the Judge Was Legally Sufficient

Plaintiff points out that in the affidavit for an arrest warrant, Defendant Canizaro did not include information about the DA's warning that the arrest might be unconstitutional.[44] Plaintiff also points out that the judge who signed Jerry Rogers's arrest warrant, Judge Raymond Childress, later expressed his belief that he should have been made aware of such a warning.[45] Defendants respectfully contend, however, that the affidavit submitted by Defendant Canizaro contained true and accurate information sufficient to enable the judge make a probable cause determination.[46] The judge was free to inquire further if the affidavit contained any ambiguities or left any cause for doubt, which Defendant Canizaro testified judges often do,[47] but the judge made no such inquiry. Defendant Canizaro was under no obligation to provide a legal opinion or to inform the

---

[43] *Deville v. Marcantel*, 567 F.3d 156, 170 (5th Cir. 2009) citing *Taylor v. Gregg*, 36 F.3d 453, 456 (5th Cir. 2005).
[44] *See* Plaintiff Memorandum in Support of Partial Summary Judgment, p. 9.
[45] *See* Plaintiff Memorandum in Support of Partial Summary Judgment, p. 10.
[46] *See* Affidavit of Canizaro ¶ 16 attached hereto as **Exhibit B.**
[47] *See* Canizaro Dep. p. 107:24-25, 108:1-7, attached hereto as **Exhibit M**.

judge of ADA Sims's opinion regarding any uncertainties surrounding the status of Louisiana's criminal defamation statute. In short, to hold Defendants liable for not submitting legal opinions in their affidavit for an arrest warrant would represent a seismic shift in the law.

Plaintiff alleges that "the judge who signed the warrant" has stated that he "assumed law enforcement officers requested arrest warrants in good faith and would bring attention to all known facts, including if the officer suspected a law was unconstitutional."[48] The United States Supreme Court has held that an officer cannot be expected to question the magistrate's probable-cause determination because it is the <u>magistrate's</u> responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant.[49] The fact that a neutral magistrate issued a warrant is the clearest indication that the officers acted in objective good faith.[50] As correctly stated by Defendant Canizaro in his deposition testimony, police officers are not responsible for making the judge aware of the law or making legal decisions for the judge[51] – police officers are responsible for providing the facts.

Further, in referencing alleged statements and beliefs of "the judge who signed the warrant" following Jerry Rogers's arrest, Plaintiff cites to the redacted version of an FBI report ostensibly made roughly one year after the events in question actually occurred. In fact, Plaintiff cites to this same report many times throughout his motion for summary judgment in order to call out instances where one individual called another individual an "idiot" or "crazy," or to insert other miscellaneous comments that were allegedly exchanged by non-parties to other non-parties in the course of Jerry Rogers's investigation.

---

[48] *See* Plaintiff Memorandum in Support of Partial Summary Judgment, p. 10, *see also* FBI Investigatory File at p. 53, attached hereto as **Exhibit N**.
[49] *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) citing *United States v. Leon*, 468 U.S. 897, 922-923 (1984).
[50] *Id*.
[51] *See* Canizaro Dep. p. 109, attached hereto as **Exhibit O**.

This entire redacted report is nothing more than hearsay, it is certainly not undisputed material fact, and it is immaterial to the matter at hand. In addition, once this FBI Investigatory Report was concluded, the reporting agent presented this file to his supervisors requesting that the investigation be pursued further and his request was denied[52], which obviously shows that reasonable minds can disagree on the facts and law at issue. In reviewing this report, FBI supervisors did not agree that there was any material wrongdoing worth pursing, nor do we. Finally, Defendants would simply point out that Plaintiff has only to put forth only redacted sections that fit Plaintiff's narrative. For these reasons, Plaintiff's motion for partial summary judgment should be denied.

### D. Unfounded Attacks Against Sheriff Randy Smith

In pressing liability against Sheriff Smith, Plaintiff claims that despite the September 13 meeting with the DA's office, Sheriff Smith instructed the officers to "move forward" with the arrest, because "arresting Jerry Rogers for criminal defamation was very important to him."[53] Here again, we have a blatant misrepresentation of facts.

First, Sheriff Smith did not instruct the officers to "move forward" with an arrest. The Sheriff merely supported the decision of his subordinate officers to put the matter before a judge if they believed the Plaintiff had violated the law.[54] His direction to "move forward," therefore, was an instruction to submit an affidavit requesting an arrest warrant to a neutral judge – not, as Plaintiff contends, a unilateral instruction to move forward with an unconstitutional arrest. Though it obviously fell on deaf ears, Defendant Culpeper solidified this point in his deposition

---

[52] R. Doc. 116-3, FBI Investigatory File, at p. 88, attached hereto as **Exhibit P**.
[53] *See* Plaintiff Memorandum in Support of Partial Summary Judgment, p. 7.
[54] *See* Affidavit of Sheriff Smith ¶ 14 attached hereto as **Exhibit Q.**

when asked, "So the sheriff approved the decision to move forward with the application for arrest of Jerry Rogers?" to which Culpeper precisely replied, "[With] the affidavit, yes sir."[55]

Second, Plaintiff's claim that his arrest for criminal defamation was "very important" to the Sheriff is once again taken out of context and piecemealed to serve Plaintiff's interest. The actual transcript of Sheriff Smith's deposition, from which Plaintiff cites as having taken this testimony, is as follows:

> Q: Did you ever tell anyone that the arrest of Jerry Rogers was very important to you?
>
> A: I don't recall or remember, no.
>
> Q: Do you recall or remember saying anything, words to that effect, even if it's not those words exactly?
>
> A: Well, it was – it was very important to me as the Sheriff in dealing with the Krentel [homicide] case. Absolutely, it was very important.
>
> Q: Okay. The Krentel case was very important to you?
>
> A: Yes, sir.
>
> Q: Okay. Was arresting Jerry Rogers for criminal defamation very important to you?
>
> A: As well, yes.[56]

As Sheriff, Defendant Smith was understandably concerned about an open homicide investigation and was further understandably concerned about every lead that arose in the course of that investigation. Plaintiff's out of context statement, however, attempts to villainize Sheriff Smith for doing his job, and as already stated, once again lifts the Defendant's testimony out of context and piecemeals it together to serve Plaintiff's narrative. Aside from Plaintiff's baseless assertions,

---

[55] *See* Culpeper Dep. p. 63:15-18 attached hereto as **Exhibit R**.
[56] *See* Sheriff Smith Dep. p. 49-50, attached hereto as **Exhibit S**.

there are no facts which suggest that the Sheriff's actions were at any point motivated by politics or personal animosity. Sheriff Randy Smith was simply doing his job.

### E. Plaintiff's Physical Arrest for a Misdemeanor Offense Was a Justified Judgment Call

Plaintiff notes, in regard to his arrest, that because criminal defamation was a misdemeanor, he could have either been physically arrested and booked into jail or issued a summons. Plaintiff further notes that Defendant Canizaro "decided to send people to arrest Rogers."[57] Defendants respectfully assert, first, that such a decision is well within an officer's discretion, and there is nothing abnormal about the decision to make an arrest as opposed to issuing a summons.

Furthermore, as already carefully explained by both Defendant Canizaro and Culpeper, the decision to arrest Jerry Rogers instead of issuing him a summons was largely based on an incident in West Monroe Parish two weeks prior to Jerry Rogers's arrest in which he attempted suicide by police.[58] It is not unreasonable, considering a recent suicide attempt, for Defendants to believe that for the safety of the officers and the Plaintiff himself that a physical arrest was the best option. The physical arrest was a judgment call based on education and experience, and it has no bearing on the reasonableness of Defendants' actions.

### F. The Fact That Jerry Rogers Was Not Prosecuted Does <u>Not</u> Make Defendants Civilly Liable

Plaintiff's motion leans heavily into the fact that after his arrest, Jerry Rogers was not prosecuted for criminal Defamation. Despite this outcome, however, the District Attorney's decision to recuse itself from prosecution and the Attorney General's subsequent declination of

---

[57] *See* Plaintiff Memorandum in Support of Partial Summary Judgment, p. 11.
[58] *See* Canizaro Dep. p. 72, attached hereto as **Exhibit T**, *see also* Culpeper Dep. p. 55, attached hereto as **Exhibit U**, *see also* the West Monroe Report, attached hereto as **Exhibit V**.

charges do not magically give rise to civil liability against the Defendants. Further, in regard to the DA's recusal, the FBI Investigatory File states, "[] told [] the DA's office was going to recuse themselves from the case due to ROGERS' wife, [], working as a secretary in the DA's office."[59] This reason for recusal, then, was entirely self-serving and has no bearing on the Defendants' actions.

### G. The Fact That Defendants "Would Do It Again" Does <u>Not</u> Make Them Civilly Liable

Plaintiff states that, "Even though the District Attorney, the Attorney General, and Judge Gardner advised that the arrest of Jerry Rogers was unconstitutional, each Defendant nonetheless testified that they would do it again." First, the DA's office did not advise that the arrest of Jerry Rogers was unconstitutional, it merely cautioned of the <u>potential unconstitutionality</u> of the defamation statute in some contexts. No firm answer was provided until days after the arrest. Second, the Attorney General decided not to pursue formal charges on this matter, but in so doing stated that the constitutionality of the statute as it applies to public figures "**requires a case-by-case, fact specific analysis**."[60] Third, there is no indication in the record or elsewhere that Judge Gardner "advised" of anything, and he never spoke to the constitutionality of the statute when releasing Plaintiff from his bond. This is another blatant misrepresentation of fact made by the Plaintiff.

Regardless, however, Plaintiff is attempting to hold Defendants accountable for 20/20 hindsight. At the time of Jerry Rogers investigation and subsequent arrest, Defendants made reasonable decisions based on experience and information at hand. The fact that each Defendant has now testified that he would not do anything differently is further evidence of each Defendant's

---

[59] R. Doc. 116-3, FBI Investigatory File, at p. 6, attached hereto as **Exhibit W**.
[60] R. Doc. 1-5, Declination of Charges in the Investigation of Jerry Rogers.

good faith in handling the situation with the utmost care. The fact that LSA – R.S. 14:47 was repealed in 2021 cannot serve to hold the Defendants liable for making reasonable judgments of fact in Jerry Rogers 2017-2019 investigation and arrest.

Finally, in addition to the foregoing, Defendants respectfully aver that they have a Motion for Summary Judgment (Rec. Doc. 166) pending before this Honorable Court, and thus they respectfully adopt *in extenso* all of the arguments raised in support of their motion for summary judgment in opposition to Plaintiff's motion for partial summary judgment herein.

### III. CONCLUSION

For the reasons set forth above, Defendants herein respectfully suggest that Plaintiff's motion for partial summary judgment should be denied.

**Respectfully submitted,**

**MILLING BENSON WOODWARD L.L.P.**

*s/ Chadwick W. Collings*
_____
**CHADWICK W. COLLINGS, T.A.       # 25373**
**SARAH A. FISHER                  # 39881**
**68031 Capital Trace Row**
**Mandeville, Louisiana 70471**
**Telephone:   (985) 292-2000**
**Facsimile:   (985) 292-2001**
ccollings@millinglaw.com
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

      I hereby certify that the above and foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana on February 15, 2022, by using the CM/ECF system, which system will send a notice of electronic filing to appearing parties in accordance with the procedures established.

                                                         */s/ Chadwick W. Collings*
                                                     **Chadwick W. Collings**