UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **JERRY ROGERS, JR.,** | * | **CIVIL ACTION** |
| **Plaintiff** | * | |
| | * | **NO. 20-517** |
| **VERSUS** | * | |
| | * | **JUDGE MILAZZO** |
| **RANDY SMITH, INDIVIDUALLY** | * | |
| **And IN HIS OFFICIAL CAPACITY** | * | **MAG. JUDGE DOUGLAS** |
| **AS THE SHERIFF OF ST. TAMMANY** | * | |
| **PARISH, DANNY CULPEPER, AND** | * | **JURY DEMAND** |
| **KEITH CANIZARRO** | * | |
| **Defendants** | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**MEMORANDUM IN SUPPORT OF DEFENDANTS' RULE 54(b)
MOTION FOR "RECONSIDERATION" OF THE COURT'S
ORDER AND REASONS (R. DOC. 195)**

**NOW COME,** through undersigned counsel, Defendants, St. Tammany Parish Sheriff Randy Smith, Danny Culpeper and Keith Canizaro, who respectfully submit this Memorandum in Support of Defendants' Rule 54(b) Motion for Reconsideration of the Court's May 13, 2022 *Order and Reasons* (R. Doc. 195) in which Defendants were denied qualified immunity protections under 42 U.S.C. § 1983, among other things.

Defendants respectfully aver that the Court's decision to deny them qualified immunity was improper for a number of reasons. Many of Defendants key arguments were wholly unacknowledged by the Court in its decision to deny qualified immunity, and Defendants further suggest that the Court erred in finding that no probable cause existed to arrest Jerry Rogers, Jr. ("Plaintiff"). Defendants would also note that in denying their Motion for Summary Judgment and contemporaneously granting Plaintiff's Motion for Partial Summary Judgment, the Court

carefully declines to take a position and state a rule upon which to deny Defendants' qualified immunity and probable cause.

I.  **BACKGROUND**

Plaintiff filed the instant action on February 13, 2020, alleging violations of his civil rights under the laws of the United States and Louisiana.[1] Thereafter, Plaintiff filed an amended Complaint, more specifically alleging the same violations of his civil rights.[2] In short, Plaintiff was arrested for criminal Defamation following an investigation concerning anonymous emails which were being sent to the family of a homicide victim after the victim's family reached out to St. Tammany Parish Sheriff's Office ("STPSO") for support.[3] On September 16, 2019, Sergeant Canizaro submitted an affidavit requesting a warrant for Plaintiff's arrest for the charge of Defamation, LSA – R.S. § 14:47. Finding that there was probable cause, the warrant was signed by the Honorable Judge Raymond Childress that same day. Plaintiff was arrested by STPSO and then released a few hours later.[4] Though that statute has since been repealed, there is lingering debate about whether the statute was constitutional at the time of Plaintiff's arrest. No case has ever ruled LSA – R.S. § 14:47 unconstitutional in its entirety, rather, courts have merely limited its scope in certain areas.

Plaintiff filed a Motion for Partial Summary Judgment on January 10, 2022, on his false arrest and false imprisonment claims.[5] On February 10, 2022, Defendants filed a Motion for

---

[1] R. Doc. 1.

[2] R. Doc. 14.

[3] *See* 30(b)(6) Deposition of Canizaro, page 27:3-25, 29:14-19, attached as **Exhibit A**; *see* also a copy of emails sent from Gina Watson to Detective Daniel Buckner, attached as **Exhibit B**.

[4] R. Doc. 14, ¶ 24.

[5] R. Doc. 158.

Summary Judgment requesting dismissal of all of Plaintiff's claims.[6] On May 13, 2022, this Court issued its *Order and Reasons*,[7] by which the Court denied Defendants' Motion for Summary Judgment and granted Plaintiff's Motion for Partial Summary Judgment for his § 1983 false arrest and state law false arrest and false imprisonment against Defendants Canizaro and Culpeper in their individual capacities. By so doing, the Court ultimately declined to grant Defendants qualified immunity protections afforded to them under 42 U.S.C. § 1983, which Defendants herein urge the Court to reconsider for the reasons set forth below.

## II.  LEGAL STANDARD

As the Court's *Order and Reasons* at issue dispensed with less than all of the claims at bar, Defendants' request for "reconsideration" is appropriate under Federal Rule of Civil Procedure ("FRCP") 54(b). This rule states:

> [A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

The Court's *Order and Reasons* issued on May 13, 2022, denied summary judgment to the Defendants based on the Court's decision that the Defendants lacked probable cause to arrest Plaintiff and therefore that Defendants were not entitled to qualified immunity for their actions.

Qualified immunity is an affirmative defense that protects public officials who are sued in their individual capacities for purported violations of constitutional rights.[8] The qualified immunity defense carries a different burden of proof than summary judgment. A government

---

[6] R. Doc. 166.
[7] R. Doc. 195.
[8] *Harlow v. Fitzgerald*, 102 S.Ct. 2727, 2738 (1982).

official asserting qualified immunity does not have the burden to establish it.[9] He must only show that the conduct occurred while he was acting in his official capacity and within the scope of his discretionary authority.[10] Once it is raised, it is the plaintiff's burden to negate the assertion of qualified immunity[11] by establishing (1) that the official violated a statutory or constitutional right, and (2) that the right was *clearly established* at the time of the challenged conduct.[12] For the reasons set forth more fully below, Defendants re-allege that the actions at issue were within the scope of their discretionary authority, and that the law at issue was not *clearly established* at the time of the challenged conduct.[13]

## III. DISCUSSION

### a. Qualified Immunity

In its *Order and Reasons*, the Court states, "First, Defendants argue that they are entitled to qualified immunity from Plaintiff's claims. The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of <u>which a reasonable person would have known</u>."[14] Though the correct and entire rule is cited, the Court skips half of the appropriate qualified immunity standard and analysis in its reasons for denying Defendants' qualified

---

[9] *Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 419 (5th Cir. 2008).

[10] *Beltran v. City of El Paso*, 367 F.3d 299, 303 (5th Cir. 2004).

[11] *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009).

[12] *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (emphasis added) (citation omitted).

[13] *See* 30(b)(6) Deposition of Canizaro, pages 34-35:9, attached as **Exhibit C** (Q. Is there any case where there is a statute on the books that you have instructed officers not to enforce even though it has not been repealed yet? A. If it's unconstitutional, been ruled unconstitutional across the board, then they won't enforce it. Q: What happens when it is only unconstitutional in certain cases?... A: That would be at the *discretion* of the officer to see that if his case fits the application. If the particular case is so similar to the other case and is the same as the other case that has been ruled unconstitutional, again, he would seek counsel from our in-house counsel).

[14] R. Doc. 195, p. 5.

immunity defense. Specifically, the Court focuses only on the "clearly established" portion and ignores the notice requirement/knowledge standard, which is the crux of Defendants' defense. In their Memorandum in Support of Summary Judgment,[15] Defendants cited *Dolan v. Parish of St. Tammany*, stating that "under the qualified immunity defense, government agents are 'shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' This defense *further* serves to shield an officer 'from suit when [the officer] makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances [the officer] confronted.'"[16]

Reasonable police officers are not held to the same standard of knowledge as experienced lawyers and judges whose job it is to be certain of the law.[17] "A police officer is entitled to qualified immunity for an arrest 'if a reasonable person in [his] position could have believed he had probable cause to arrest.'"[18]

In Opposition to Plaintiff's Motion for Partial Summary Judgment, the defense argued that it "does not need to prove that the Defendants made the right decision, only that the Defendants, at every step of Jerry Roger's investigation, made *reasonable* decisions."[19] Finally, Defendants pointed out that "False arrest is decided on an objective reasonableness standard, and the probable cause determination likewise depends on the viewpoint of an objectively reasonable officer."[20]

---

[15] R. Doc. 166-1.

[16] R. Doc. 166-1, p. 8.

[17] R. Doc. 166-1, p. 10.

[18] R. Doc. 166-1, p. 18, citing *Glenn v. City of Tyler*, 242 F.3d 307, 313 (5th Cir. 2001).

[19] R. Doc. 178, p. 10.

[20] R. Doc. 178, p. 11.

In its *Order and Reasons* regarding qualified immunity, respectfully, the Court misstates Defendants' position as follows:

> Defendants argue that they are entitled to qualified immunity...They make three main arguments: (1) Plaintiff's arrest was made pursuant to a valid warrant issued by a neutral magistrate, (2) the law under which Plaintiff was arrested was still on the books and had not been declared entirely unconstitutional by any court, and (3) the cases declaring the law unconstitutional were distinguishable from the facts here such that the arrest was constitutional and/or the right had not been clearly established. R. Doc. 195, p. 5.

This wanting, conclusory statement ignores the reasonable person standard set forth by the Defendants (above) and the scope of discretionary authority argument. The "clearly established right" rule is only part of the standard, however, it is the only part to which the Court affords any attention.

The Court states, "[Defendants] argue, however, that because the defamed party in this case was STPSO Detective Buckner—who they argue is not a public official—the case law declaring the statute unconstitutional is inapplicable and the right was not clearly established."[21] This is incorrect, as Defendants instead argue four distinct points. First, Defendants argue that Detective Buckner was not "clearly" a public official as applied to the criminal Defamation statute. Second, Defendants argue that Plaintiff rests on the seminal *New York Times* case, which was a civil defamation/libel case, whereas Jerry Rogers was arrested for *criminal* Defamation.[22] Third, the Defendants argue that the loosely related cases concerning criminal Defamation involve elected officials, not detectives. Fourth, Defendants argue that St. Tammany Parish's own recent history has permitted criminal Defamation prosecutions by the same DA's office against others

---

[21] R. Doc. 195, p. 6.

[22] *New York Times v. Sullivan*, 376 U.S. 254 (1964); s*ee* also Canizaro Deposition at p. 62-63, 88-90, 94, 101-103, attached as **Exhibit D** (in which Canizaro repeatedly testified that, to his knowledge, police officers had been held to be "public officials" in civil cases but not in criminal defamation cases).

who were arguably "public officials," so the Defendants, here, cannot reasonably be said to have been on notice of the alleged unconstitutionality of LSA – R.S. § 14:47 at the time of Plaintiff's arrest.

Continuing, the Court criticizes Defendants for not citing to any authority for the proposition that a police officer is not a public official.[23] This is not the Defendants' burden – it is the plaintiff's burden to first prove that a police officer *is* a public official (*as applied to the criminal Defamation statute*). Once Plaintiff meets his burden, which he never did, the burden then shifts to the defendant to produce evidence to the contrary. In the present matter, the Court mistakenly concluded that it was "clearly established" that a police officer is a public official under the criminal Defamation statute, notwithstanding the fact that there are zero cases that support that conclusion.

Indeed, in order to determine that the Defendants are considered public officials, the Court cites *Thompson v. St. Amant*, 196 So. 2d 255, 260 (1967) (citing *New York Times* Case), in which the Court stated, "[w]e must decide whether Thompson, a deputy sheriff, is a 'public official' within the meaning of the rule announced in the *New York Times Case*. We hold that he is."[24] This was a case from 1967, prior to several changes in this area of the law and back when the focus of criminal defamation cases against public officials was *actual malice*. *Thompson* also rested on civil law jurisprudence and adjudicated different facts than the one's present in the matter at hand. Moreover, *Thompson* was overturned by the Louisiana Supreme Court just two years later in *Bienvenu v. Angelle*, 254 La. 182, 223 So.2d 140 (1969) (albeit on other grounds) and has been followed by inconsistent and *unclear* court decisions for the past fifty-five years.

---

[23] R. Doc. 195, p. 6.
[24] R. Doc 195, p. 6, n. 14.

Page **7** of **16**

Furthermore, the *Bienvenu* Court made two interesting statements in its decision regarding one's "public official" status, including: "The public official designation applies at the very least to those among the hierarchy of government employees who have, or who appear to the public to have, substantial responsibility for or control over the conduct of governmental affairs," and "it is one's status and one's power to manage affairs affecting the public which subject one to the federal rule." A detective for the police department, like Detective Buckner, holds no such power and exercises no such control over the affairs of the public.

In considering the Defendants' here to be public officials, the Court also cites *Collins v. Ainsworth*, 382 F.3d 529, 541 (5th Cir. 2004).[25] Contrary to the Court's suggestion, however, *Collins* did not hold that police officers are "public officials" for purposes of criminal Defamation, rather, the Court merely treated them as such without further explanation. That is not a holding on the issue. The *Collins* court's only statement concerning public official status was, "[t]here is no evidence put forth by Plaintiffs as to any of these deputy Defendants having, using, or abusing their public official discretion to deny use of a forum for First Amendment-protected expression as a prior restraint, nor to any specific mistreatment by these deputy Defendants regarding Plaintiffs' ability to make bond or crowded jail conditions."[26]

More importantly, the defense would note that the *Collins* court ruled in favor of the deputy Defendants, finding that the evidence did not show that the specific actions of the deputy Defendants violated any clearly established constitutional rights of the plaintiffs. Specifically, the court held that "the district court erred in assessing the legal significance of the conduct that the court deemed sufficiently supported for purposes of denying summary judgment based on

---

[25] R. Doc 195, page 6, n. 14.
[26] *Collins*, 382 F.3d 529, 541 (5th Cir. 2004).

qualified immunity. Therefore, these Defendants are entitled to qualified immunity as a matter of law on all claims."[27]  Defendants respectfully aver that the exact same conclusion applies to the matter at bar regarding Defendants Smith, Canizaro, and Culpeper.

The Court next cites Fifth Circuit precedent in *McLin v. Ard*, stating "[s]peech criticizing the official conduct of public officials is protected by the First Amendment and does not constitute criminal defamation.  Accordingly, the issue is beyond debate."[28]  Respectfully, this conclusion completely ignores the fact, and the distinction drawn by the Defendants, that *McLin v. Ard* dealt with Facebook posts, not private emails sent in the midst of an open homicide investigation. Moreover, in making this determination, this Honorable Court does not rule that Facebook posts and private emails sent during a homicide investigation are treated the same – the Court simply ignores the distinction entirely.  Further, concerning the previous quote, Defendants suggest that stating that criticism of public officials' official conduct "does not constitute criminal defamation" implies that criminal defamation still exists in some form/contexts.  Defendants again question how they can be expected to have known that the law was "clearly established to be unconstitutional under all circumstances as applied to an unelected detective" when, even here, the Court cannot provide clear language to that effect.

Next, the Court gives considerable weight to the Defendants' discussions with the DA's office prior to Jerry Rogers' arrest.  It says, "[i]n addition, Plaintiff also presents evidence that the DA specifically told Defendants that a police officer is a public official and that Plaintiff's arrest would be unconstitutional.  In his deposition, Defendant Culpeper admitted that he was specifically told by the DA's office that it would be unconstitutional to arrest Plaintiff.  STPSO Captain Gaudet

---

[27] *Id.*

[28] *See*, R. Doc. 195, page 7.

likewise testified that the decision to arrest Plaintiff was made after being informed that the criminal defamation statute was unconstitutional by the DA's office."[29] This supposition first affords too much weight to the unofficial opinions of the DA's office and is also factually incorrect. A review of the record and of Defendant Culpeper's deposition transcript confirms that he never admitted to being "specifically told" by the DA's office that the arrest would be unconstitutional. Additionally, the Court's reference to the testimony of Steve Gaudet is misplaced because the defense has already pointed out instances of Gaudet being untruthful/inconsistent in his testimony. His inconsistency not only makes him unreliable, but Gaudet's statement regarding the DA's office is plainly hearsay.[30]

Thus, Defendants respectfully re-urge the Court to reconsider its *Order and Reasons* and thereby afford Defendants the qualified immunity to which they are entitled.

### b. Probable Cause

Based on the Court's reasoning set forth above denying the Defendants qualified immunity, it further concluded that "no reasonable officer could have believed that probable cause existed where the unconstitutionality of Louisiana's criminal defamation statute as applied to public officials has long been <u>clearly established</u> and where the officers had been <u>specifically warned</u> that the arrest would be unconstitutional."[31]  First, a "specific warning" is not authoritative, nor is it binding.  Second, the Court starts by saying "no reasonable officer" but then completely ignores the *reasonableness* standard in its analysis, and it did not reference any of Defendants' reasonableness arguments or jurisprudence in its *Order and Reasons*.  Third, Defendants again question how it can be "clearly" established that an officer (specifically a detective) is a public

---

[29] R. Doc. 195, p. 7.

[30] R. Doc. 178, p. 7.

[31] R. Doc. 195, p. 8.

official when, in addition to all of the reasons provided above, St. Tammany Parish's own District Attorney's office less than two years earlier concluded that a National Guardsman and a former-narcotics detective are *not* public officials.

In their Motion for Summary Judgment, Defendants made the following argument regarding United States National Guardsman, Colonel John Plunkett:

> "Defendants would note to this Honorable Court that in 2018, the 22nd Judicial District Attorney's Office accepted a guilty plea from a woman (Amy Baudot) who was charged under LSA – R.S. § 14:47 for Defamatory statements made against Colonel John Plunkett, an active member of the Army National Guard. The facts and timeline of Baudot's case and the case at hand align almost seamlessly. The Complaint against Amy Baudot was first documented in September 2017, while Jerry Rogers's conduct began in December 2017. Baudot, like Rogers, was charged with defaming arguably a public official. National Guardsmen (like Colonel Plunket) are military officers sworn to protect the United States and are paid a salary using public funds. Following Plaintiff's argument, if Detective Buckner is a "public official," then so too is Colonel Plunket." When the 22nd Judicial District Court DA's office accepted Amy Baudot's adjudication of guilt for criminal Defamation under LSA – R.S. § 14:47, no argument was made concerning the statute's constitutionality. In fact, Baudot's plea was reviewed and offered to the court by her attorney, it was accepted by the DA's office, and it was signed by a judge, yet no one raised the constitutionality of the statute as it was being applied to an arguably public official, in this case an active-duty Colonel in the National Guard. Even more significant is the fact that the supervising officer who oversaw the investigation of Amy Baudot's criminal Defamation case was – uncoincidentally – Defendant Keith Canizaro. It is therefore absurd to allege that Defendants in the present matter were on "notice" that the "right in question" existed at the time of Plaintiff Rogers's arrest." R. Doc. 166-1, p. 14.

In denying Defendants' Motion for Summary Judgment, Defendants respectfully note that the Court ignores this argument completely, which Defendants respectfully suggest warrants reconsideration and reversal of this Court's *Order and Reasons* denying Defendants' qualified immunity defense. Despite Plaintiff's contention in his *Reply Memorandum to Defendants' Motion for Summary Judgment* that, "[t]he fact that STPSO has violated other persons' constitutional rights does not exculpate their behavior here,"[32] Plaintiff misses the point. The

---

[32] R. Doc. 176, p. 9

question is not whether there was a violation of someone else's rights when it was determined that Colonel Plunket could be a victim of criminal Defamation. The issue is, with those facts at hand, how can it be said that it was clearly established that public employees like Colonel Plunket and Detective Buckner cannot be victims of criminal Defamation.

The Court also cites *Rykers v. Alford*, stating that "an officer charged with enforcing Louisiana law [] can be presumed to know that law."[33] Defendants would note that the *Rykers'* Court <u>also</u> stated, "[t]his Court has repeatedly held that a claim for false arrest or analogous torts is subject to dismissal for failure to state a claim when the arrest is made under a properly issued, facially valid warrant," which is precisely the same thing that occurred in the case at bar. Second, after stating that officers are presumed to know the law, the *Rykers* Court actually went on to <u>affirm</u> qualified immunity for the deputy-Defendant, Officer Fuqua. Although Officer Fuqua omitted key facts from the affidavit for an arrest warrant, the Court held that there were "several difficulties in the law and facts as they appeared to Officer Fuqua on the day he signed the affidavit. These facts lead us to agree with the district court that Rykers' (plaintiff) rights were not 'clearly established' on that date." *Rykers v. Alford*, 832 F.2d 895, 898 (5th Cir. 1987).

The Court noted that if the Louisiana courts themselves could interpret the statute in question multiple ways, "then Officer Fuqua can be forgiven for doing the same." This is the exact point which Defendants have argued repeatedly in the present matter. Officer Fuqua was granted qualified immunity because he had sufficient information to justify his reasonable belief that the plaintiff *could be* arrested under the statute in question, regardless of Fuqua's omission of certain facts from the affidavit, because the court reasoned that the facts of the case were not clear on the day of the affidavit. Moreover, the court noted that the emergency situation in that case precluded

---

[33] *See* R. Doc. 195, p. 8.

the officer's need from conducting further investigation and further entitled the officer to qualified immunity for his actions during extraordinary circumstances under *Harlow v. Fitzgerald*.[34] Due to the non-uniform application of the law and the gaps in the facts of that case, Officer Fuqua <u>was</u> ultimately granted qualified immunity.

Similarly, Defendant Deputy Keith Canizaro was likewise justified in his reasonable belief that Jerry Rogers could be arrested for criminal Defamation under the statute that remained on the books at the time of Plaintiff's arrest. His omission of the vague and unofficial opinion of the DA's office from the affidavit of arrest was irrelevant, and under the *Rykers'* holding, even if it were relevant, this omission would nonetheless be immaterial because the facts were not clear on the day that Canizaro signed the affidavit.[35] In addition, like the emergency situation faced in *Rykers*, the St. Tammany Parish Sheriff's Office was dealing with Jerry Rogers, a man who attempted suicide by police just weeks prior to the arrest in question and was actively and knowingly spreading false information to the family of a homicide victim in the wake of an open investigation.[36] Thus, Defendants here are clearly and unequivocally entitled to the same protections under the qualified immunity doctrine that the U.S. Fifth Circuit afforded to Officer Fuqua in *Rykers,* and for strikingly similar reasons.

Concerning the affidavit for an arrest warrant, in reasoning that no probable cause existed to arrest Plaintiff, the Court states that "[t]he judge…testified that the information provided by the DA <u>should have been</u> included in the affidavit in support of the arrest warrant."[37] This is factually

---

[34] *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982).

[35] *See* 30(b)(6) Deposition of Canizaro, pages 13-18, 26-27:1-2, attached as **Exhibit E** (in which he explains STPSO's policies and procedures for obtaining an arrest warrant, and noting that the district attorney's interpretation of a law or statute is not information that is typically disclosed in an affidavit of sworn facts).

[36] *See* 30(b)(6) Deposition of Canizaro, pages 18-21, attached as **Exhibit F** (in which he explains STPSO's policies and procedures for arresting someone for a misdemeanor).

[37] R. Doc. 195, p. 8.

Page **13** of **16**

incorrect, as the judge who signed the warrant, the Honorable Raymond Childress, gave no such testimony.  In referencing the judge's alleged statement, Plaintiff (and the Court) cite only to the redacted version of an FBI report ostensibly made roughly one year after the events in question actually occurred.  This entire redacted report is hearsay, it is certainly not undisputed material fact, and it is immaterial to the matter at hand.  For all of these reasons, Defendants urge the Court to reconsider its determination that Defendants lacked probable cause to arrest Plaintiff.

### c. *Monell* Protection for Defendant, Sheriff Randy Smith

In denying Defendants' Motion for Summary Judgment, the Court denied *Monell* protection to Sheriff Smith because it rejected Defendants' argument that there was no official policy or custom in place which violated one's constitutional right (a *Monell* requirement).  In so doing, the Court rests on Plaintiff's "evidence" that Sheriff Smith directed the arrest of Jerry Rogers, using two examples that are completely unsupported by the record.  The Court states, "Defendants argue that Plaintiff cannot show an official policy or custom.  Plaintiffs respond with evidence—the testimony of Canizaro and Captain Gaudet—that Smith directed his subordinates to arrest Plaintiff."[38]  Again, this is factually incorrect, as Defendant Canizaro repeatedly testified that Sheriff Smith told him only to *submit an affidavit for a warrant*.[39]  Plaintiff has provided no evidence that Sheriff Smith <u>ever</u> directed anyone to arrest Jerry Rogers.[40]

Likewise, Steve Gaudet, whom the defense has already pointed out as being unreliable and inconsistent, testified only that he was present when Defendant Culpeper allegedly informed the

---

[38] R. Doc. 195, p. 10.

[39] *See* Canizaro Deposition at pages 51, 53-54, 112-113, attached as **Exhibit G**.

[40] *See* 30(b)(6) Deposition of Canizaro at page 30:18-33:10, 44:17-25, attached as **Exhibit H** (in which Canizaro testified that he as the arresting officer – not Sheriff Smith – sought an arrest warrant for Plaintiff.  Canizaro further confirmed that Sheriff Smith was not even present for the conference in which the decision was made to arrest Plaintiff – the Sheriff was merely briefed afterwards and supported the decision of his subordinate officers to put the matter before a judge.)

group at the Sheriff's Office that Sheriff Smith wanted Plaintiff in jail. Gaudet never claimed to have heard these words from Sheriff Smith, himself. Moreover, Gaudet's affidavit actually states, "[h]e was present when Chief Danny Culpeper informed the unit that Sheriff Randy Smith wanted Mr. Jerry Rogers in jail for La. R.S. § 14:47; Criminal Defamation." When Defendant Culpeper was asked about this same statement in his own deposition, Culpeper was very clear that his prior statement to the group was that Sheriff Smith wanted the matter looked into and he wanted his deputies to keep investigating.[41] Culpeper specifically stated, "[n]ot put Jerry Rogers in jail like that is worded there. No, sir. But, yes, to continue the investigation, yes."[42]

Continuing on this point, the Court cites *Burge v. Par. Of St. Tammany* for the premise that the "official policy" requirement under *Monell* can be satisfied if "the action of the policymaker itself violated a constitutional right." However, there is no indication of any action taken by Sheriff Smith which violated an individual's constitutional right. The only (irrelevant) evidence includes testimony that Sheriff Smith instructed his subordinate officer to draft an affidavit for an arrest warrant and put it before a judge, which is not a constitutional violation on Sheriff Smith's part. Defendants respectfully re-urge that Sheriff Smith is entitled to *Monell* protections and, thus, all claims against him should have been dismissed.

## IV. CONCLUSION

There is significant jurisprudence and evidence in this case which support the granting of Defendants' Motion for Summary Judgment, and, specifically, their right to qualified immunity protections. As such, Defendants now respectfully urge the Court to reconsider its May 13, 2022 *Order and Reasons*.

---

[41] *See* Culpeper Deposition, pp. 66-67, **Exhibit I**.
[42] *Id*.

**Respectfully submitted,**

**MILLING BENSON WOODWARD L.L.P.**

*s/ Chadwick W. Collings*_____
**CHADWICK W. COLLINGS, T.A.**  **# 25373**
**SARAH A. FISHER**  **# 39881**
**68031 Capital Trace Row**
**Mandeville, Louisiana 70471**
**Telephone:   (985) 292-2000**
**Facsimile:    (985) 292-2001**
ccollings@millinglaw.com
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana on June 9, 2022, by using the CM/ECF system, which system will send a notice of electronic filing to appearing parties in accordance with the procedures established.

__*s/ Chadwick W. Collings*__
**Chadwick W. Collings**