UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JERRY ROGERS, JR. | * | CIVIL ACTION NO. 20-517 |
| | * | |
| | * | SECTION: "H"(1) |
| VERSUS | * | |
| | * | JUDGE JANE TRICHE MILAZZO |
| | * | |
| SHERIFF RANDY SMITH, DANNY | * | MAGISTRATE JUDGE |
| CULPEPER, AND KEITH CANIZARO | * | JANIS VAN MEERVELD |
| ************************************ | * | |

ORDER AND REASONS

This is a civil rights action under 42 U.S.C. § 1983. Before the Court is plaintiff's Motion to Compel Production of Documents Relevant to Punitive Damages. (Rec. Doc. 260). Defendants object to production on the grounds that plaintiff did not plead punitive damages and, in any event, argue that such discovery of financial information must await a final judgment. But a plaintiff is not required to specifically plead punitive damages. Punitive damages may be implicated here and, accordingly, financial information of the defendants is relevant and discoverable. The Motion to Compel is GRANTED; defendants shall produce substantive responses to the discovery requests at issue. Oral argument set for November 8, 2023, is CANCELLED.

Background

Plaintiff Jerry Rogers alleges that his civil rights were violated when he was arrested for criminal defamation by the St. Tammany Parish Sheriff's Office ("STPSO") for criticizing an unsolved murder investigation by the STPSO. Rogers alleges that Sheriff Randy Smith directed the arrest, even though Smith has publicly acknowledged that some courts have ruled the criminal defamation statute unconstitutional as applied to speech about public officials. Rogers points out that "some courts" include the Louisiana Supreme Court and the United States Supreme Court. He alleges that prior to the arrest, the STPSO consulted with the St. Tammany Parish District

Attorney's Office, which advised that charges could not be pursued on the basis of criminal defamation because the statute had been ruled unconstitutional as to public officials.

Nonetheless, on September 16, 2019, Sergeant Keith Canizaro signed an affidavit in support of a request for an arrest warrant pursuant to the criminal defamation statute. Canizaro cited Rogers' emails to a family member of the murder victim, which shared purportedly false information regarding the lead investigator's experience and ability to investigate homicides. According to Rogers, Canizaro falsely attested that the family members had requested that the lead investigator determine the identity of the author of the emails. Rogers alleges that Sheriff Smith ordered Chief Danny Culpepper to have Rogers arrested despite knowing that the arrest was unconstitutional. Rogers was arrested the same day.

Afterwards, the STPSO issued a press release regarding the arrest. About a month thereafter, Sheriff Smith published his own press release re-announcing the arrest, acknowledging the statute had been held unconstitutional by some courts, and asserting that Rogers was aligned with Smith's political opponents.

On November 8, 2019, the state court judge assigned to Rogers' criminal case found there was no probable cause for Rogers' arrest and released him on $3,500 bond. The St. Tammany Parish District Attorney's Office recused itself, and the Louisiana Department of Justice declined the criminal charge.

Rogers filed this lawsuit alleging claims for First Amendment retaliation, unlawful seizure, false arrest, violation of the Louisiana Constitution, malicious prosecution under state law, and abuse of process under state law against Smith, Canizaro, and Culpepper. On May 13, 2022, the District Court granted partial summary judgment in favor of Rogers on his false arrest and false imprisonment claims. (Rec. Doc. 195). The court also denied defendants' motion for partial

summary judgment on Rogers' First Amendment retaliation claim, his abuse of rights claim, and his individual and official capacity claims against Sheriff Smith, finding material issues of fact. The court also held that defendants were not entitled to qualified immunity. Defendants filed an interlocutory appeal, and the Fifth Circuit affirmed the District Court's summary judgment determinations.

Trial on the remaining issues is set to begin on February 20, 2024. The deadline to complete discovery passed on October 7, 2023. The issue presently before the Court is Rogers' written discovery requests to all three defendants seeking information regarding their financial condition and assets. He argues this discovery is relevant to punitive damages. Defendants argue that punitive damages are irrelevant because Rogers did not plead punitive damages. They argue further that financial information is typically not discoverable until after judgment. They note that they are fully insured well in excess of any possible judgment in this case.

Law and Analysis

1. *Scope of Discovery*

The Federal Rules of Civil Procedure provide that "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. Proc. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." Id. The Rule requires consideration of the following factors in assessing proportionality: "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Id.

2. *Discovery of Defendants' Financial Condition*

As Magistrate Judge Currault recently observed:

> Although facts about the financial status of a party are generally not discoverable before obtaining a judgment against the party, such discovery is allowed when relevant to any claim or defense and proportionate to the needs of the case. For instance, pre-judgment discovery of a party's assets is commonly allowed as relevant where there is *a claim for punitive damages*, alter ego, or pre-judgment attachment.

United States v. SLH2021 S.A., No. 23-2305, 2023 U.S. Dist. LEXIS 139385, *16-17 (E.D. La. Aug. 10, 2023) (emphasis added). Here, Rogers does not seek information about defendants' financial condition to determine their ability to pay a judgment. He submits the information is relevant to his claim for punitive damages.

Punitive damages are available in a § 1983 case "when an official's conduct is motivated by evil intent or demonstrates reckless or callous indifference to a person's constitutional rights." Cowart v. Erwin, 837 F.3d 444, 455 (5th Cir. 2016) (quoting Sockwell v. Phelps, 20 F.3d 187, 192 (5th Cir. 1994)) (cleaned up). Defendants correctly observe that Rogers has not explicitly asserted a claim for punitive damages (i.e., he has not requested punitive damages in his prayer for relief and he has not described defendants' actions as "callous" or motivated by an "evil intent").

Importantly though, courts have held that "a plaintiff is not required to specifically plead punitive damages." In re Peterson, 452 B.R. 203, 224 (Bankr. S.D. Tex. 2011); see Schexnayder v. Bonfiglio, 167 F. App'x 364, 367 (5th Cir. 2006). Here, it is clear from the facts alleged in Rogers' complaint that punitive damages may be available. He alleges that defendants arrested Rogers despite knowing that doing so was unconstitutional. Moreover, as Rogers points out in reply, he identified his claim for punitive damages in his initial disclosures on June 4, 2020, November 17, 2021, and January 31, 2022. Because punitive damages are at issue in this case, the Court finds that discovery regarding defendants' financial condition is relevant and discoverable.

4

Conclusion

For the foregoing reasons, Rogers' Motion to Compel (Rec. Doc. 260) is GRANTED. Defendants shall produce substantive responses to Rogers' Discovery Requests Regarding Financial Information and Assets.[1] The Court declines to award sanctions.

New Orleans, Louisiana, this 6th day of November, 2023.

*[signature]*
Janis van Meerveld
United States Magistrate Judge

---

[1] The Court observes that some of the discovery requests appear to be overbroad. The parties shall meet and confer in person or by phone to discuss narrowing the requests to ensure they are proportional with the needs of the case. If the parties reach an impasse, they may contact the chambers of the undersigned to request a status conference to discuss the issue.